# EXHIBIT F

# Proposed Rules

**Federal Register**

Vol. 84, No. 244

Thursday, December 19, 2019

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

## DEPARTMENT OF HOMELAND SECURITY

## U.S. Citizenship and Immigration Services

## 8 CFR Part 208

**RIN 1615–AC41**

## DEPARTMENT OF JUSTICE

## Executive Office for Immigration Review

## 8 CFR Part 1208

**[EOIR Docket No. 18–0002; A.G. Order No. 4592–2019]**

**RIN 1125–AA87**

## Procedures for Asylum and Bars to Asylum Eligibility

**AGENCY:** Executive Office for Immigration Review, Department of Justice; U.S. Citizenship and Immigration Services, Department of Homeland Security.

**ACTION:** Joint notice of proposed rulemaking.

**SUMMARY:** The Department of Justice and the Department of Homeland Security (collectively, "the Departments") propose to amend their respective regulations governing the bars to asylum eligibility. The Departments also propose to clarify the effect of criminal convictions and to remove their respective regulations governing the automatic reconsideration of discretionary denials of asylum applications.

**DATES:** Written or electronic comments must be submitted on or before January 21, 2020. Written comments postmarked on or before that date will be considered timely. The electronic Federal Docket Management System will accept comments prior to midnight eastern time at the end of that day.

**ADDRESSES:** You may submit comments, identified by EOIR Docket No. 18–0002, by one of the following methods:

• *Federal eRulemaking Portal: http://www.regulations.gov.* Follow the instructions for submitting comments.
• *Mail:* Lauren Alder Reid, Assistant Director, Office of Policy, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2616, Falls Church, VA 22041. To ensure proper handling, please reference EOIR Docket No. 18–0002 on your correspondence. This mailing address may be used for paper, disk, or CD–ROM submissions.
• *Hand Delivery/Courier:* Lauren Alder Reid, Assistant Director, Office of Policy, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2616, Falls Church, VA 22041. Contact Telephone Number (703) 305–0289 (not a toll-free call).

**FOR FURTHER INFORMATION CONTACT:**

Lauren Alder Reid, Assistant Director, Office of Policy, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2616, Falls Church, VA 22041, Contact Telephone Number (703) 305–0289 (not a toll-free call).

Maureen Dunn, Chief, Division of Humanitarian Affairs, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, U.S. Citizenship and Immigration Services (USCIS), DHS, 20 Massachusetts NW, Washington, DC 20529–2140; Contact Telephone Number (202) 272–8377 (not a toll-free call).

**SUPPLEMENTARY INFORMATION:**

## I. Public Participation

Interested persons are invited to participate in this rulemaking by submitting written data, views, or arguments on all aspects of this rule. The Departments also invite comments that relate to the economic, environmental, or federalism effects that might result from this rule. Comments must be submitted in English, or an English translation must be provided. To provide the most assistance to the Departments, comments should reference a specific portion of the rule; explain the reason for any recommended change; and include data, information, or authority that support the recommended change.

All comments submitted for this rulemaking should include the agency name and EOIR Docket No. 18–0002. Please note that all comments received are considered part of the public record and made available for public inspection at *www.regulations.gov.* Such

information includes personally identifiable information (such as a person's name, address, or any other data that might personally identify that individual) that the commenter voluntarily submits. You may wish to consider limiting the amount of personal information that you provide in any voluntary public comment submission you make to the Departments. The Departments may withhold information provided in comments from public viewing that they determine may impact the privacy of an individual or is offensive. For additional information, please read the Privacy Act notice that is available via the link in the footer of *http://www.regulations.gov.*

If you want to submit personally identifiable information as part of your comment, but do not want it to be posted online, you must include the phrase "PERSONALLY IDENTIFIABLE INFORMATION" in the first paragraph of your comment and precisely and prominently identify the information for which you seek redaction.

If you want to submit confidential business information as part of your comment, but do not want it to be posted online, you must include the phrase "CONFIDENTIAL BUSINESS INFORMATION" in the first paragraph of your comment and precisely and prominently identify the confidential business information for which you seek redaction. If a comment has so much confidential business information that it cannot be effectively redacted, all or part of that comment may not be posted on *www.regulations.gov.* Personally identifiable information and confidential business information provided as set forth above will be placed in EOIR's public docket file, but not posted online. To inspect the public docket file in person, you must make an appointment with EOIR. Please see the **FOR FURTHER INFORMATION CONTACT** paragraph above for the contact information specific to this rule.

## II. Background

Asylum is a discretionary immigration benefit that generally can be sought by eligible aliens who are physically present or arriving in the United States, irrespective of their status, as provided in section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1158. Congress, however, has provided that certain

categories of aliens cannot receive asylum and has further delegated to the Attorney General and the Secretary of Homeland Security ("Secretary") the authority to promulgate regulations establishing additional bars on eligibility to the extent consistent with the asylum statute, as well as the authority to establish "any other conditions or limitations on the consideration of an application for asylum" that are consistent with the INA. *See* INA 208(b)(2)(C), (d)(5)(B), 8 U.S.C. 1158(b)(2)(C), (d)(5)(B). This proposed rule will limit aliens' eligibility for this discretionary benefit if they fall within certain categories related to criminal behavior. The proposed rule will also eliminate a regulation concerning the automatic reconsideration of discretionary denials of asylum applications.

*A. Joint Notice of Proposed Rulemaking*

The Attorney General and the Acting Secretary of Homeland Security publish this joint notice of proposed rulemaking in the exercise of their respective authorities concerning asylum determinations.

The Homeland Security Act of 2002, Public Law 107–296, as amended ("the Act" or "the HSA"), transferred many functions related to the execution of federal immigration law to the newly created Department of Homeland Security ("DHS"). The Act charges the Secretary "with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens," 8 U.S.C. 1103(a)(1), and grants the Secretary the power to take all actions "necessary for carrying out" the provisions of the immigration and nationality laws, *id.* 1103(a)(3). The Act also transferred to U.S. Citizenship and Immigration Services ("USCIS") responsibility for affirmative asylum applications, *i.e.,* applications for asylum made outside the removal context. *See* 6 U.S.C. 271(b)(3). If an alien is not in removal proceedings or is an unaccompanied alien child, DHS asylum officers determine in the first instance whether an alien's asylum application should be granted. *See* 8 CFR 208.9.

At the same time, the Act retained for the Attorney General authority over certain individual immigration adjudications, including those related to asylum. These proceedings are conducted by the Department of Justice through the Executive Office for Immigration Review ("EOIR"), subject to the direction and regulation of the Attorney General. *See* 6 U.S.C. 521; 8 U.S.C. 1103(g). Accordingly, immigration judges within the

Department of Justice continue to adjudicate all defensive asylum applications made by aliens during the removal process and review affirmative asylum applications referred by USCIS to the immigration courts. *See* 8 U.S.C. 1101(b)(4); 8 CFR 1208.2. *See generally Dhakal* v. *Sessions,* 895 F.3d 532, 536–37 (7th Cir. 2018) (describing affirmative and defensive asylum processes). The Board of Immigration Appeals within the Department of Justice, in turn, hears appeals from immigration judges' decisions. 8 CFR 1003.1. In addition, the HSA amended the INA to mandate "[t]hat determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. 1103(a)(1). This broad division of functions and authorities informs the background of this proposed rule.

*B. Domestic Legal Framework for Asylum*

Asylum is a form of discretionary relief under section 208 of the INA, 8 U.S.C. 1158, that precludes an alien from being subject to removal, creates a path to lawful permanent resident status and citizenship, and affords a variety of other ancillary benefits, such as allowing certain alien family members to obtain lawful immigration status derivatively. *See R–S–C* v. *Sessions,* 869 F.3d 1176, 1180 (10th Cir. 2017); *see also, e.g.,* INA 208(c)(1)(A), (C), 8 U.S.C. 1158(c)(1)(A), (C) (asylees cannot be removed and can travel abroad without prior consent); INA 208(b)(3), 8 U.S.C. 1158(b)(3) (allowing derivative asylum for asylee's spouse and unmarried children); INA 209(b), 8 U.S.C. 1159(b) (allowing the Attorney General or Secretary to adjust the status of an asylee to that of a lawful permanent resident); INA 316(a), 8 U.S.C. 1427(a) (describing requirements for naturalization of lawful permanent residents). Aliens who are granted asylum are authorized to work in the United States and to receive certain financial assistance from the Federal Government. *See* INA 208(c)(1)(B), (d)(2), 8 U.S.C. 1158(c)(1)(B), (d)(2); 8 U.S.C. 1612(a)(2)(A), (b)(2)(A); 8 U.S.C. 1613(b)(1); 8 CFR 274a.12(a)(5); *see also* 8 CFR 274a.12(c)(8) (providing that asylum applicants may seek employment authorization 150 days after filing a complete application for asylum).

In 1980, the Attorney General, in his discretion, established several mandatory bars to asylum eligibility. *See* 8 CFR 208.8(f) (1980); Aliens and Nationality; Refugee and Asylum Procedures, 45 FR 37392, 37392 (June 2, 1980). In 1990, the Attorney General substantially amended the asylum

regulations, but exercised his discretion to retain the mandatory bars to asylum eligibility related to persecution of others on account of a protected ground, conviction of a particularly serious crime in the United States, firm resettlement in another country, and the existence of reasonable grounds to regard the alien as a danger to the security of the United States. *See* Aliens and Nationality; Asylum and Withholding of Deportation Procedures, 55 FR 30674–01, 30678, 30683 (July 27, 1990); *see also Yang* v. *INS,* 79 F.3d 932, 936–39 (9th Cir. 1996) (upholding firm resettlement bar); *Komarenko* v. *INS,* 35 F.3d 432, 436 (9th Cir. 1994) (upholding particularly serious crime bar), *abrogated on other grounds by Abebe* v. *Mukasey,* 554 F.3d 1203 (9th Cir. 2009) (en banc). In 1990, Congress added another mandatory bar for those with aggravated felony convictions. Immigration Act of 1990, Public Law 101–649, sec. 515, 104 Stat. 4987.

With the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996, Congress added three more categorical bars on the ability to apply for asylum, for: (1) Aliens who can be removed to a safe third country pursuant to a bilateral or multilateral agreement; (2) aliens who failed to apply for asylum within one year of arriving in the United States; and (3) aliens who have previously applied for asylum and had the application denied. Public Law 104–208, div. C, sec. 604. Congress also adopted six mandatory bars to asylum eligibility that largely reflected the pre-existing, discretionary bars set forth in the Attorney General's existing asylum regulations. These bars cover (1) aliens who "ordered, incited, or otherwise participated" in the persecution of others; (2) aliens convicted of a "particularly serious crime" in the United States; (3) aliens who committed a "serious nonpolitical crime outside the United States" before arriving in the United States; (4) aliens who are a "danger to the security of the United States;" (5) aliens who are inadmissible or removable under a set of specified grounds relating to terrorist activity; and (6) aliens who were "firmly resettled" in another country prior to arriving in the United States. *Id.* (codified at 8 U.S.C. 1158(b)(2) (1997)). Congress further added that aggravated felonies, defined in 8 U.S.C. 1101(a)(43), would be considered "particularly serious crime[s]." *Id.* (codified at 8 U.S.C. 1158(b)(2)(B)(i) (1997)).

Although Congress has enacted specific asylum eligibility bars, that statutory list is not exhaustive. Congress, in IIRIRA, further provided

the Attorney General with the authority to establish by regulation "any other conditions or limitations on the consideration of an application for asylum," so long as those limitations are "not inconsistent with this chapter." INA 208(d)(5)(B), 8 U.S.C. 1158(d)(5)(B); *see also* INA 208(b)(2)(C), 8 U.S.C. 1158(b)(2)(C). Aliens who apply for asylum must satisfy two criteria. They must establish that they (1) are statutorily eligible for asylum; and (2) merit a favorable exercise of discretion. INA 208(b)(1)(A), 240(c)(4)(A), 8 U.S.C. 1158(b)(1)(A), 1229a(c)(4)(A); *Matter of A–B–*, 27 I&N Dec. 316, 345 n.12 (A.G. 2018), *abrogated on other grounds by Grace* v. *Whitaker*, 344 F. Supp. 3d 96, 140 (D.D.C. 2018); *see also, e.g., Fisenko* v. *Lynch*, 826 F.3d 287, 291 (6th Cir. 2016); *Kouljinski* v. *Keisler*, 505 F.3d 534, 541–42 (6th Cir. 2007); *Gulla* v. *Gonzales*, 498 F.3d 911, 915 (9th Cir. 2007); *Dankam* v. *Gonzales*, 495 F.3d 113, 120 (4th Cir. 2007); *Krastev* v. *INS*, 292 F.3d 1268, 1270 (10th Cir. 2002). As the Attorney General recently observed, "[a]sylum is a discretionary form of relief from removal, and an applicant bears the burden of proving not only statutory eligibility for asylum but that he also merits asylum as a matter of discretion." *Matter of A–B–*, 27 I&N Dec. at 345 n.12; *see also Moncrieffe* v. *Holder*, 569 U.S. 184, 187 (2013) (describing asylum as a form of "discretionary relief from removal"); *Delgado* v. *Mukasey*, 508 F.3d 702, 705 (2d Cir. 2007) ("Asylum is a discretionary form of relief . . . . Once an applicant has established eligibility . . . , it remains within the Attorney General's discretion to deny asylum.").

With respect to eligibility for asylum, section 208 of the INA provides that an applicant must (1) be "physically present" or "arrive[ ]" in the United States, INA 208(a)(1), 8 U.S.C. 1158(a)(1); (2) meet the statutory definition of a "refugee," INA 208(b)(1)(A), 8 U.S.C. 1158(b)(1)(A); and (3) otherwise be eligible for asylum, INA 208(b)(2), 8 U.S.C. 1158(b)(2); 8 CFR 1240.8(d).

In general, a refugee is someone who is outside of his country of nationality and who is unable or unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA 101(a)(42)(A), 8 U.S.C. 1101(a)(42)(A). The alien bears the burden of proof to establish that he meets eligibility criteria, including that he qualifies as a refugee. INA 208(b)(1)(B)(i), 8 U.S.C. 1158(b)(1)(B)(i).

Aliens must also establish that they are otherwise eligible for asylum, meaning that they are not subject to one of the statutory bars to asylum or any "additional limitations and conditions . . . under which an alien shall be ineligible for asylum" established by regulation. *See* INA 208(b)(2)(C), 8 U.S.C. 1158(b)(2)(C). The INA currently bars from asylum eligibility any alien who (1) "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of" a protected ground; (2) "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;" (3) "has committed a serious nonpolitical crime outside the United States" prior to arrival in the United States; (4) constitutes "a danger to the security of the United States;" (5) is described in the terrorism-related inadmissibility grounds, with limited exception; or (6) "was firmly resettled in another country prior to arriving in the United States." INA 208(b)(2)(A)(i)–(vi), 8 U.S.C. 1158(b)(2)(A)(i)–(vi).

Aliens who fall within one of these bars are subject to mandatory denial of asylum. Where there is evidence that "one or more of the grounds for mandatory denial of the application for relief may apply," the applicant in immigration court proceedings bears the burden of establishing that the bar at issue does not apply. 8 CFR 1240.8(d); *see also, e.g., Rendon* v. *Mukasey*, 520 F.3d 967, 973 (9th Cir. 2008) (applying 8 CFR 1240.8(d) in the context of the aggravated felony bar to asylum); *Su Qing Chen* v. *U.S. Att'y Gen.*, 513 F.3d 1255, 1257 (11th Cir. 2008) (applying 8 CFR 1240.8 in the context of the persecutor bar); *Xu Sheng Gao* v. *U.S. Att'y Gen.*, 500 F.3d 93, 98 (2d Cir. 2007) (same).

Because asylum is a discretionary benefit, aliens who are eligible for asylum are not automatically entitled to it. Rather, after demonstrating eligibility, aliens must further meet their burden of showing that the Attorney General or Secretary should exercise his or her discretion to grant asylum. *See* INA 208(b)(1)(A), 8 U.S.C. 1158(b)(1)(A) (the "Secretary of Homeland Security or the Attorney General *may* grant asylum to an alien" who applies in accordance with the required procedures and meets the definition of a refugee (emphasis added)); *Matter of A–B–*, 27 I&N Dec. at 345 n.12; *Matter of Pula*, 19 I&N Dec. 467, 474 (BIA 1987).

Additionally, aliens whose asylum applications are denied may nonetheless be able to obtain protection from removal under other provisions of the immigration laws. A defensive application for asylum that is submitted by an alien in removal proceedings is also automatically deemed an application for statutory withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. 1231(b)(3). *See* 8 CFR 1208.3(b). An immigration judge may also consider an alien's eligibility for withholding and deferral of removal under regulations implementing U.S. obligations under Article 3 of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), which were issued pursuant to section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998, Public Law 105–277 (8 U.S.C. 1231 note). *See* 8 CFR 1208.13(c)(1); *see also* 8 CFR 1208.16(c) through 1208.18.

These forms of protection prohibit removal to any country where the alien would more likely than not be persecuted on account of a protected ground or tortured. Applying the relevant standard, if an alien proves that it is more likely than not that the alien's life or freedom would be threatened on account of a protected ground, but is denied asylum for some other reason—for instance, because of an eligibility bar or a discretionary denial of asylum—the alien may be entitled to statutory withholding of removal if not otherwise statutorily barred. INA 241(b)(3)(A), 8 U.S.C. 1231(b)(3)(A); 8 CFR 208.16, 1208.16; *see also Garcia* v. *Sessions*, 856 F.3d 27, 40 (1st Cir. 2017) ("[W]ithholding of removal has long been understood to be a mandatory protection that must be given to certain qualifying aliens, while asylum has never been so understood."). Likewise, an alien who establishes that it is more likely than not that he or she would be tortured if removed to the proposed country of removal will qualify for CAT protection. *See* 8 CFR 1208.16(c) through 1208.18. But, unlike asylum, statutory withholding and CAT protection do not (1) prohibit the Government from removing the alien to a third country where the alien does not face persecution or torture, regardless of whether the country is a party to a bilateral or multilateral agreement specifically authorizing such removal, *contra* 8 U.S.C. 1158(a)(2)(A) (denying eligibility to apply for asylum "if the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a [third] country"); (2) create a path to lawful permanent resident status and citizenship; or (3) afford the same ancillary protection benefits (such as derivative protection for family members). *See R–S–C*, 869 F.3d at 1180.

## C. Bars to Eligibility for Asylum

Eligibility for asylum has long been qualified both by statutory bars and by the discretion of the Attorney General and the Secretary to create additional bars. Those bars have developed over time in a back-and-forth process between Congress and the Attorney General. The original asylum provisions, as set out in the Refugee Act of 1980, Public Law 96–212, simply directed the Attorney General to "establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum," and provided that "the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee" within the meaning of the title. 8 U.S.C. 1158(a) (1994); *see also INS* v. *Cardoza-Fonseca,* 480 U.S. 421, 427–29 (1987) (describing the 1980 provisions).

In the 1980 implementing regulations, the Attorney General, in his discretion, established several mandatory bars to asylum eligibility that were modeled on the mandatory bars to eligibility for withholding of deportation under the existing section 243(h) of the INA. *See* 8 CFR 208.8(f) (1980); 45 FR at 37392 ("The application will be denied if the alien does not come within the definition of refugee under the Act, is firmly resettled in a third country, or is within one of the undesirable groups described in section 243(h) of the Act, *e.g.,* having been convicted of a serious crime, constitutes a danger to the United States."). Those regulations required denial of an asylum application if it was determined that (1) the alien was not a refugee within the meaning of section 101(a)(42) of the INA; (2) the alien was firmly resettled in a foreign country before arriving in the United States; (3) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular group, or political opinion; (4) the alien had been convicted by a final judgment of a particularly serious crime and therefore constituted a danger to the community of the United States; (5) there were serious reasons for considering that the alien has committed a serious non-political crime outside the United States prior to the arrival of the alien in the United States; or (6) there were reasonable grounds for regarding the alien as a danger to the security of the United States. 45 FR at 37394–95.

In 1990, the Attorney General substantially amended the asylum regulations, but exercised his discretion to retain the mandatory bars to asylum eligibility for persecution of others on account of a protected ground, conviction of a particularly serious crime in the United States, firm resettlement in another country, and reasonable grounds to regard the alien as a danger to the security of the United States. *See* 55 FR at 30683; *see also Yang,* 79 F.3d at 936–39 (upholding firm resettlement bar); *Komarenko,* 35 F.3d at 436 (upholding particularly serious crime bar). In the Immigration Act of 1990, Congress added an additional mandatory bar to eligibility to apply for or be granted asylum for "an[y] alien who has been convicted of an aggravated felony." Public Law 101–649, sec. 515, 104 Stat. 4987.

In 1996, with the passage of IIRIRA and the Antiterrorism and Effective Death Penalty Act of 1996, Public Law 104–132, Congress amended the asylum provisions in section 208 of the INA, 8 U.S.C. 1158. Among other amendments, Congress created three categories of aliens who are barred from applying for asylum: (1) Aliens who can be removed to a safe third country pursuant to bilateral or multilateral agreement; (2) aliens who failed to apply for asylum within one year of arriving in the United States; and (3) aliens who have previously applied for asylum and had the application denied. Public Law 104–208, div. C, sec. 604.

Congress also adopted six mandatory bars to asylum eligibility that largely reflected the pre-existing, discretionary bars set forth in the Attorney General's existing asylum regulations. These bars cover (1) aliens who "ordered, incited, or otherwise participated" in the persecution of others; (2) aliens convicted of a "particularly serious crime" in the United States; (3) aliens who committed a "serious nonpolitical crime outside the United States" before arriving in the United States; (4) aliens who are a "danger to the security of the United States;" (5) aliens who are inadmissible or removable under a set of specified grounds relating to terrorist activity; and (6) aliens who were "firmly resettled" in another country prior to arriving in the United States. *Id.* (codified at 8 U.S.C. 1158(b)(2) (1997)). Congress further added that aggravated felonies, defined in 8 U.S.C. 1101(a)(43), would be considered "particularly serious crime[s]." *Id.* (codified at 8 U.S.C. 1158(b)(2)(B)(i) (1997)).

Although Congress has enacted specific asylum eligibility bars, that statutory list is not exhaustive. Congress, in IIRIRA, expressly authorized the Attorney General to expand upon two bars to asylum eligibility—the bars for "particularly serious crimes" and "serious nonpolitical offenses." *See id.* Although Congress prescribed that all aggravated felonies constitute particularly serious crimes, Congress further provided that the Attorney General may "designate by regulation offenses that will be considered" a "particularly serious crime," by reason of which the offender "constitutes a danger to the community of the United States." INA 208(b)(2)(A)(ii), (B)(ii), 8 U.S.C. 1158(b)(2)(A)(ii), (B)(ii). Courts and the Board of Immigration Appeals ("Board") have long held that this grant of authority also authorizes the Board to identify additional particularly serious crimes (beyond aggravated felonies) through case-by-case adjudication. *See, e.g., Delgado* v. *Holder,* 648 F.3d 1095, 1106 (9th Cir. 2011) (en banc); *Ali* v. *Achim,* 468 F.3d 462, 468–69 (7th Cir. 2006). Congress likewise authorized the Attorney General to designate by regulation offenses that constitute "a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States." INA 208(b)(2)(A)(iii), (B)(ii), 8 U.S.C. 1158(b)(2)(A)(iii), (B)(ii).[1]

In addition to authorizing the discretionary expansion of crimes that would constitute particularly serious crimes or serious nonpolitical offenses, Congress further provided the Attorney General with the authority to establish by regulation "any other conditions or limitations on the consideration of an application for asylum," so long as those limitations are "not inconsistent with this chapter." INA 208(d)(5)(B), 8 U.S.C. 1158(d)(5)(B); *see also* INA 208(b)(2)(C), 8 U.S.C. 1158(b)(2)(C) (allowing for the establishment by regulation of "additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum"). As the Tenth Circuit has recognized, "[t]his delegation of authority means that Congress was prepared to accept administrative dilution of the asylum guarantee in § 1158(a)(1)," given that "the statute clearly empowers" the Attorney General and the Secretary to "adopt[ ] further limitations" on asylum eligibility. *R–S–C,* 869 F.3d at 1187 & n.9. In providing for "additional limitations and conditions," the statute gives the Attorney General and the Secretary broad authority in determining what the "limitations and conditions" should be—*e.g.,* based on non-criminal or procedural grounds like the existing

---

[1] Although these provisions continue to refer only to the Attorney General, those authorities also lie with the Secretary by operation of the HSA.

exceptions for firm resettlement, INA 208(b)(2)(A)(vi), 8 U.S.C. 1158(b)(2)(A)(vi), or based on filing time limits, INA 208(a)(2)(B), 8 U.S.C. 1158(a)(2)(B), or based on certain criminal activity, INA 208(b)(2)(A)(ii), 8 U.S.C. 1158(b)(2)(A)(ii). The additional limitations on eligibility must simply be established "by regulation," and must be "consistent with" the rest of 8 U.S.C. 1158.

Thus, the Attorney General in the past has invoked section 208(b)(2)(C) of the INA to limit eligibility for asylum based on a "fundamental change in circumstances" and on the ability of an applicant to safely relocate internally within a country. *See* Asylum Procedures, 65 FR 76121, 76127 (Dec. 6, 2000) (codified at 8 CFR 208.13(b)(1)(i)(A) and (B)). The courts have also viewed this provision as a broad authority, and have suggested that ineligibility based on fraud would be authorized under it. *See Nijjar* v. *Holder,* 689 F.3d 1077, 1082 (9th Cir. 2012) (noting that fraud can be "one of the 'additional limitations . . . under which an alien shall be ineligible for asylum' that the Attorney General is authorized to establish by regulation").

The current statutory framework accordingly leaves the Attorney General (and, after the HSA, the Secretary) significant discretion to adopt additional bars to asylum eligibility. Congress has expressly identified one class of particularly serious crimes—aggravated felonies—so that aliens who commit such offenses are categorically ineligible for asylum and there is no discretion to grant such aliens asylum under any circumstances. Congress has left the task of further defining particularly serious crimes or serious nonpolitical offenses to the discretion of the Attorney General and the Secretary.[2] And Congress has provided the Attorney General and Secretary with additional discretion to establish by regulation additional limitations or conditions on eligibility for asylum. Those limitations may involve other types of crimes or non-criminal conduct, so long as the limitations are consistent with other aspects of the asylum statute.

## D. United States Laws Implementing International Treaty Obligations

The proposed rule is consistent with U.S. obligations under the 1967 Protocol relating to the Status of Refugees ("Refugee Protocol") (incorporating Articles 2 through 34 of the 1951 Convention relating to the Status of Refugees ("Refugee Convention")) and the CAT. Neither the 1967 Refugee Protocol nor the CAT is self-executing. *See Khan* v. *Holder,* 584 F.3d 773, 783 (9th Cir. 2009) ("[T]he [1967 Refugee] Protocol is not self-executing."); *Auguste* v. *Ridge,* 395 F.3d 123, 132 (3d Cir. 2005) (the CAT "was not self-executing"). Therefore, these treaties are not directly enforceable in U.S. law, but some of the obligations they contain have been implemented by domestic legislation. For example, the United States has implemented the non-refoulement provisions of these treaties—*i.e.,* provisions prohibiting the return of an individual to a country where he or she would face persecution or torture—through the withholding of removal provisions at section 241(b)(3) of the INA and the CAT regulations, not through the asylum provisions at section 208 of the INA. *See Cardoza-Fonseca,* 480 U.S. at 440–41. The proposed rule is consistent with those obligations because it affects only eligibility for asylum. It does not affect grants of the statutory withholding of removal or protection under the CAT regulations. *See R–S–C,* 869 F.3d at 1188 n. 11; *Cazun* v. *Att'y Gen.,* 856 F.3d 249, 257 (3d Cir. 2017); *Ramirez-Mejia* v. *Lynch,* 813 F.3d 240, 241 (5th Cir. 2016).

Limitations on eligibility for asylum are also consistent with Article 34 of the 1951 Refugee Convention, concerning assimilation of refugees, as implemented by 8 U.S.C. 1158. Section 1158 reflects that Article 34 is precatory and not mandatory, and accordingly does not provide that all refugees shall receive asylum. *See Cardoza-Fonseca,* 480 U.S. at 441; *R–S–C,* 869 F.3d at 1188; *Mejia* v. *Sessions,* 866 F.3d 573, 588 (4th Cir. 2017); *Garcia,* 856 F.3d at 42; *Cazun,* 856 F.3d at 257 & n.16; *Ramirez-Mejia,* 813 F.3d at 241. Moreover, the state parties to the Refugee Convention sought to "deny admission to their territories of criminals who would present a danger to security and public order." United Nations High Comm'r for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol relating to the Status of Refugees ¶ 148 (1979) (edited Jan. 1992). Accordingly, the Refugee Convention incorporated exclusion clauses,

including a bar to refugee status for those who committed serious nonpolitical crimes outside the country of refuge prior to their entry into the country of refuge that sought "to protect the community of a receiving country from the danger of admitting a refugee who has committed a serious common crime." *Id.* ¶ 151. As noted above, Congress has long recognized this principle in U.S. law by imposing various statutory bars to eligibility for asylum and by authorizing the creation of new bars to eligibility through regulation.[3]

## III. Regulatory Changes

The Departments now propose to (1) establish additional bars to eligibility for asylum for aliens with certain criminal convictions; (2) clarify the effect of criminal convictions; and (3) remove the regulations regarding reconsideration of discretionary denials of asylum.

The Attorney General possesses general authority under section 103(g)(2) of the INA, 8 U.S.C. 1103(g)(2), to "establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section." *See Tamenut* v. *Mukasey,* 521 F.3d 1000, 1004 (8th Cir. 2008) (en banc) (per curiam) (describing section 1103(g)(2) as "a general grant of regulatory authority"). Similarly, Congress has conferred upon the Secretary the authority to "establish such regulations . . . as he deems necessary for carrying out his authority under the provisions of [the INA]." INA 103(a)(1), (3), 8 U.S.C. 1103(a)(1), (3).

Additionally, the Attorney General and the Secretary have authority to promulgate this proposed rule under sections 208(b)(2)(B)(ii) and (C) of the INA, 8 U.S.C. 1158(b)(2)(B)(ii) and (C). Under section 208(b)(2)(B)(ii), "[t]he Attorney General may designate by regulation offenses that will be considered to be a "particularly serious crime" under INA 208(b)(2)(A)(ii), 8 U.S.C. 1158(b)(2)(A)(ii), or a "serious nonpolitical crime" under INA 208(b)(2)(A)(iii), 8 U.S.C.

---

[2] "[A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." H.R. Rep No. 104–863, at 616 (1996).

[3] Courts have likewise rejected arguments that other provisions of the Refugee Convention require every refugee to receive asylum. Courts have held, in the context of upholding the bar on eligibility for asylum in reinstatement proceedings under section 241(a)(5) of the INA, 8 U.S.C. 1231(a)(5), that limiting the ability to apply for asylum does not constitute a prohibited "penalty" under Article 31(1) of the Refugee Convention. *Mejia,* 866 F.3d at 588; *Cazun,* 856 F.3d at 257 n.16. Courts have also rejected the argument that Article 28 of the Refugee Convention, governing issuance of international travel documents for refugees "lawfully staying" in a country's territory, mandates that every person who might qualify for withholding must also be granted asylum. *R–S–C,* 869 F.3d at 1188; *Garcia,* 856 F.3d at 42.

1158(b)(2)(A)(iii). Under INA 208(b)(2)(C), 8 U.S.C. 1158(b)(2)(C), the Attorney General may "by regulation establish additional limitations and conditions, consistent with [8 U.S.C. 1158], under which an alien shall be ineligible for asylum under" INA 208(b)(1).

*A. Additional Limitations on Eligibility for Asylum*

The Departments propose to revise 8 CFR 208.13 and 1208.13 by adding paragraphs (c)(6) through (8) to add bars on eligibility for asylum for certain aliens. First, the regulations would add bars on eligibility for asylum for aliens who commit certain offenses in the United States after entering the country. Those bars would apply to aliens who are convicted of (1) a felony under federal or state law; (2) an offense under 8 U.S.C. 1324(a)(1)(A) or 1324(a)(1)(2) (Alien Smuggling or Harboring); (3) an offense under 8 U.S.C. 1326 (Illegal Reentry); (4) a federal, state, tribal, or local crime involving criminal street gang activity; (5) certain federal, state, tribal, or local offenses concerning the operation of a motor vehicle while under the influence of an intoxicant; (6) a federal, state, tribal, or local domestic violence offense, or who are found by an adjudicator to have engaged in acts of battery or extreme cruelty in a domestic context, even if no conviction resulted; and (7) certain misdemeanors under federal or state law for offenses related to false identification; the unlawful receipt of public benefits from a federal, state, tribal, or local entity; or the possession or trafficking of a controlled substance or controlled-substance paraphernalia. The Departments intend that the criminal ineligibility bars would be limited only to aliens with convictions and—with a narrow exception in the domestic violence context [4]—not based only on criminal conduct for which the alien has not been convicted. In addition, although 8 U.S.C. 1101(a)(43) provides for the application of the aggravated felony definition to offenses in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years, this proposal is not intended to cover such foreign convictions.

1. Aliens Convicted of a Felony Under Federal, State, Tribal, or Local Law

The Departments are proposing to implement a new bar on eligibility for asylum for felony convictions. *See* 8 U.S.C. 1158(b)(2)(B)(ii) and (C). Felonies are defined in the proposed rule as crimes designated as felonies by the relevant jurisdiction or crimes punishable by more than one year's imprisonment.

In the first instance, the Attorney General and the Secretary could reasonably exercise their discretion to classify felony offenses as particularly serious crimes for purposes of 8 U.S.C. 1158(b)(2)(B)(ii). Congress defined "particularly serious crimes" in the asylum statute to expressly encompass all aggravated felonies. *See* INA 208(b)(2)(B)(i), 8 U.S.C. 1158(b)(2)(B)(i). At present, the INA defines an aggravated felony by reference to an enumerated list of 21 types of convictions. INA 101(a)(43), 8 U.S.C. 1101(a)(43). But Congress did not limit the definition of particularly serious crimes to aggravated felonies. Rather, Congress expressly authorized the Attorney General to designate additional particularly serious crimes through regulation or by case-by-case adjudication. INA 208(b)(2)(B)(ii), 8 U.S.C. 1158(b)(2)(B)(ii); *Delgado,* 648 F.3d at 1106 ("[t]here is little question that [the asylum] provision permits the Attorney General, by regulation, to make particular crimes categorically particularly serious" (emphasis omitted)); *Gao* v. *Holder,* 595 F.3d 549, 556 (4th Cir. 2010) ("we think that [s]ection 1158(b)(2)(B)(ii) . . . empowers the Attorney General to designate offenses which, like aggravated felonies, will be considered per se particularly serious"). By defining "particularly serious crimes" to include all "aggravated felonies," but then giving the Attorney General the discretion to "designate by regulation offenses that will be considered" a "particularly serious crime," Congress made clear that the bar on asylum eligibility for particularly serious crimes necessarily includes, but is not limited to, aggravated felonies. *See* INA 208(b)(2)(A)(ii), (B)(ii), 8 U.S.C. 1158(b)(2)(A)(ii), (B)(ii); *Delgado,* 648 F.3d at 1105–06 (explaining that the asylum statute specifies two categories of crimes that are per se particularly serious—aggravated felonies, and those that the Attorney General designates by regulation).

To date, the Attorney General has not used the above-described authority to promulgate regulations identifying additional categories of particularly serious crimes. The Board has engaged in case-by-case adjudication to identify some particularly serious crimes, but this approach imposes significant interpretive difficulties and costs, while producing unpredictable results. The Supreme Court has employed the so-called "categorical" approach, established in *Taylor* v. *United States,* 495 U.S. 575 (1990), and its progeny such as *Mathis* v. *United States,* 136 S. Ct. 2243 (2016), and *Descamps* v. *United States,* 133 S. Ct. 2276 (2013), to determine when an offense constitutes an aggravated felony. Under that approach, courts must compare the elements of the statutory crime for which an alien was convicted with the generic elements of the specified federal aggravated felony. As a general matter, any mismatch between the elements means that the crime of conviction is not an aggravated felony (unless the statute of conviction is divisible and the alien was convicted of a particular offense within the statute that would satisfy the generic definition of the relevant aggravated felony).

Courts, however, have repeatedly expressed frustration with the complexity of applying this approach. *See, e.g., United States* v. *Aguila-Montes de Oca,* 655 F.3d 915, 917 (9th Cir. 2011), *overruled by Descamps,* 570 U.S. 254 ("In the twenty years since *Taylor,* we have struggled to understand the contours of the Supreme Court's framework. Indeed, over the past decade, perhaps no other area of the law has demanded more of our resources."); *see also Quarles* v. *United States,* 139 S. Ct. 1872, 1880 (2019) (Thomas, J., concurring); *Williams* v. *United States,* 927 F.3d 427, 446 (6th Cir. 2019) (Merritt, J., concurring); *Lowe* v. *United States,* 920 F.3d 414, 420 (6th Cir. 2019) (Thapar, J., concurring) ("in the categorical-approach world, we cannot call rape what it is . . . . [I]t is time for Congress to revisit the categorical approach so we do not have to live in a fictional world where we call a violent rape non-violent"); *United States* v. *Evans,* 924 F.3d 21, 31 (2d Cir. 2019) (observing that, although the court may resolve only an actual case or controversy, "the categorical approach paradoxically instructs courts resolving such cases to embark on an intellectual enterprise grounded in the facts of *other* cases not before them, or even *imagined* scenarios" (emphases in original)); *United States* v. *Chapman,* 866 F.3d 129, 136–39 (3d Cir. 2017) (Jordan, J., concurring); *United States* v. *Faust,* 853 F.3d 39, 60–61 (1st Cir. 2017) (Lynch, J., concurring).

Application of the categorical approach has resulted in anomalous

---

[4] A conviction would not be required in certain situations involving battery or extreme cruelty. That conduct-specific inquiry is essentially identical to the inquiry already undertaken in situations in which an alien seeks to obtain immigration benefits based on domestic violence that does not necessarily result in a conviction. *See, e.g.,* INA 240A(b)(2)(A), 8 U.S.C. 1229b(b)(2)(A); 8 CFR 204.2(c)(1)(i)(E), (c)(1)(vi), (c)(2)(iv), (e)(1)(i)(E), (e)(1)(vi), and (e)(2)(iv).

decisions in which aliens convicted of a serious criminal offense have been found not to have been convicted of an aggravated felony. *See, e.g., Harbin* v. *Sessions,* 860 F.3d 58 (2d Cir. 2017) (holding that a New York controlled substance law was not written in a way that allowed it to be used as the basis for establishing that a convicted alien was removable under the INA for drug trafficking); *Larios-Reyes* v. *Lynch,* 843 F.3d 146, 149–50 (4th Cir. 2016) (alien's conviction under Maryland law for sexual abuse of a victim under the age of 14 did not amount to the aggravated felony of ''sexual abuse of a minor''). The Board has rectified some anomalies by determining that certain crimes, though not aggravated felonies, are of a sufficiently pernicious nature that they should facially constitute particularly serious crimes that would disqualify aliens from eligibility for asylum or withholding of removal. *See Sopo* v. *U.S. Att'y Gen.,* 739 F. App'x 554, 558 (11th Cir. 2018) (the Board and immigration judges ''may focus solely on the elements of the offense'' to determine whether an offense is a ''particularly serious crime''); *In re N–A–M–,* 24 I&N Dec. 336, 343 (BIA 2007) (explaining that ''the proper focus for determining whether a crime is particularly serious is on the nature of the crime,'' and that its elements alone may be dispositive); *see also, e.g., Ahmetovic* v. *INS,* 62 F.3d 48, 52 (2d Cir. 1995) (upholding the Board's determination that first-degree manslaughter, while not an aggravated felony, is per se ''particularly serious'' for asylum purposes). Furthermore, the Board has looked at the individual circumstances of a crime to conclude that an even wider range of offenses can be considered particularly serious crimes on an as-applied basis. *See, e.g., Vaskovska* v. *Lynch,* 655 F. App'x 880, 884 (2d Cir. 2016) (the Board did not err in its individualized determination that an alien's conviction for drug possession was a particularly serious crime); *Arbid* v. *Holder,* 700 F.3d 379, 381 (9th Cir. 2012) (the Board did not err in determining that an alien's mail fraud conviction was particularly serious even if not an aggravated felony). Even in the withholding context—where an alien is deemed to have committed a particularly serious crime if he has been convicted of an aggravated felony (or felonies) for which the sentence was an aggregate term of imprisonment of at least 5 years, *see* 8 U.S.C. 1231(b)(3)(B)—courts have routinely concluded that crimes that are not aggravated felonies may be particularly serious. *See, e.g., Valerio-*

*Ramirez* v. *Sessions,* 882 F.3d 289, 291, 296 (1st Cir. 2018) (the Board did not err in determining that an alien's identity theft conviction was particularly serious even though it was not an aggravated felony); *Hamama* v. *INS,* 78 F.3d 233, 240 (6th Cir. 1996) (the Board had power to declare firearm possession crimes ''facially'' particularly serious without an individualized evaluation of the alien's case, even if such crimes are not always aggravated felonies); *In re N–A–M–,* 24 I&N Dec. at 338–39 (felony menacing is a particularly serious crime based on its elements, though not an aggravated felony).

Nonetheless, this mix of case-by-case adjudication and per se rules is an inefficient means of identifying categories of offenses that should constitute particularly serious crimes. The Board has only rarely exercised its authority to designate categories of offenses as facially or per se particularly serious, and instead typically looks to a wide and variable range of evidence in making an individualized determination of a crime's seriousness. *See In re N–A–M–,* 24 I&N Dec. at 343–44; *Matter of L–S–,* 22 I&N Dec. 645, 651 (BIA 1999). This case-by-case adjudication means that aliens convicted of the exact same offense can receive different asylum treatment. For certain crimes—*i.e.,* those described in this notice of proposed rulemaking—the Attorney General and the Secretary have determined that the possibility of such inconsistency is not desirable and that a rule-based approach is instead warranted in this specific context.

The proposed rule would eliminate the inefficiencies described above by providing that all felonies would constitute particularly serious crimes. The determination of whether a crime would be a felony for purposes of asylum eligibility would depend on whether the relevant jurisdiction defines the crime as a felony or whether the statute of conviction allows for a sentence of more than one year. Convictions for which sentences are longer tend to be associated with crimes of a more consequential nature. For example, an offender's ''criminal history category'' for the purposes of sentencing for federal crimes ''serves as [a] proxy for the need to protect the public from further crimes of the defendant.'' *United States* v. *Hayes,* 762 F.3d 1300, 1314 n.8 (11th Cir. 2014); *see also id.* (''In other words, it is a proxy for recidivism.''). And the criminal history category, in turn, is ''based on the maximum term imposed in previous sentences rather than on other measures, such as whether the conviction was designated

a felony or misdemeanor.'' U.S. Sentencing Guidelines Manual § 4A1.2 cmt. background (U.S. Sentencing Comm'n 2018). This calculation thus reflects a recognition that crimes with the potential for longer sentences tend to indicate that the offenders who commit such crimes are greater dangers to the community.

In addition, defining a felony to include such offenses would also be consistent with the definition of felonies in other federal statutes. For instance, convictions for crimes that states designated as felonies may serve as predicate ''prior felony conviction[s]'' under the federal career offender statute. *See United States* v. *Beasley,* 12 F.3d 280, 282–84 (1st Cir. 1993); *United States* v. *Rivera,* 996 F.2d 993, 994–97 (9th Cir. 1993).

Furthermore, defining felonies to include crimes that involve a possible sentence of more than one year in prison would be generally consistent with the way that federal law defines felonies. *See, e.g.,* 5 U.S.C. 7313(b) (''For the purposes of this section, 'felony' means any offense for which imprisonment is authorized for a term exceeding one year''); *cf.* U.S.S.G. 2L1.2 cmt. n.2 ('''Felony' means any federal, state, or local offense punishable by imprisonment for a term exceeding one year.''). The Model Penal Code and most states likewise define a felony as a crime with a possible sentence in ''excess of one year.'' Model Penal Code § 1.04(2); *see* 1 Wharton's Criminal Law § 19 & n.23 (15th ed.) (surveying state laws). Finally, relying on the possibility of a sentence in excess of one year—rather than on the actual sentence imposed—would be consistent with Board precedents adjudicating whether a crime qualifies as ''particularly serious'' for purposes of asylum or withholding eligibility. In that context, ''the sentence imposed is not a dominant factor in determining whether a conviction is for a particularly serious crime'' because the sentence actually imposed often depends on factors such as offender characteristics that ''may operate to reduce a sentence but do not diminish the gravity of [the] crime.'' *In re N–A–M–,* 24 I&N Dec. at 343.

Relying on the possibility of a sentence of over one year to define a felony would capture crimes of a particularly serious nature because the offenders who commit such crimes are—as a general matter—more likely to be dangerous to the community than those offenders whose crimes are punishable by shorter sentences. *See* 8 U.S.C. 1158(b)(2)(A)(ii) (tying the ''particularly serious crime'' determination to ''danger[ousness] to

the community''). In addition, by encompassing all crimes with a sentence of more than one year, regardless of whether the crimes are defined felonies by the relevant jurisdiction, the definition would create greater uniformity by accounting for possible variations in how different jurisdictions may label the same offense. Such a definition would also avoid anomalies in the asylum context that arise from the definition of ''aggravated felonies'' under 8 U.S.C. 1101(a)(43), which defines some qualifying offenses with reference to the length of the actual sentence ordered. *See United States* v. *Pacheco,* 225 F.3d 148, 153–54 (2d Cir. 2000) (agreeing that ordinarily the touchstone in the aggravated felony definition's reference to sentences is the actual term of imprisonment imposed). The proposed definition of a felony would also obviate the need for immigration adjudicators and courts to apply the categorical approach with respect to aggravated felonies. This proposal thus would offer a more streamlined and predictable approach to be applied in the asylum context.[5]

In addition to their authority under section 208(b)(2)(B)(ii) of the INA, 8 U.S.C. 1158(b)(2)(B)(ii), the Attorney General and the Secretary further propose relying on their respective authorities under section 208(b)(2)(C) of the INA, 8 U.S.C. 1158(b)(2)(C), to make all felony convictions disqualifying for purposes of asylum eligibility. Federal, state, tribal, or local felony convictions already carry a number of serious repercussions over and above the sentence imposed. Felons, including those who are U.S. citizens, may lose certain privileges, including the ability to apply for Government grants and live in public housing. *See Estep* v. *United States,* 327 U.S. 114, 122 & n.13 (1946) (explaining that ''[a] felon customarily suffers the loss of substantial rights''; *see also, e.g., Dist. of Columbia* v. *Heller,* 554 U.S. 570, 626–27 (2008) (the Second Amendment does not prohibit laws disallowing the possession of firearms by felons). Treating a felony conviction as disqualifying for purposes of obtaining the discretionary benefit of asylum would be consistent with the disabilities arising from felony convictions in these other contexts and

would reflect the serious social cost of such crimes.

The Departments also seek public comment on whether (and, if so, how) to differentiate among crimes designated as felonies and among crimes punishable by more than one year of imprisonment. For example, are there crimes that are currently designated as felonies in one or more relevant jurisdictions in the United States that should not be categorical bars to asylum eligibility? Are there crimes that are currently punishable by more than one year's imprisonment in one or more relevant jurisdictions in the United States that should not be categorical bars to asylum? Should the definition of a felony depend instead on the term of imprisonment that was ordered by the court of jurisdiction? In addition to seeking public comment on whether the definition of felony in the proposed rule might be over-inclusive, the Departments also seek comment on whether it might be under-inclusive—*i.e.,* are there crimes that would not fall under the definition of felony in the proposed rule, and that do not otherwise constitute categorical bars to asylum eligibility, that should be made categorical bars? In sum, the Departments seek input on how the proposed definition of a felony might be modified. Further, the Departments seek comment on what measures, if any, are necessary to ensure that aliens who are victims of human trafficking, but also have convictions caused by or incident to victimization, are not subject to this bar. For instance, victims of severe forms of human trafficking may nevertheless receive a waiver of criminal grounds for inadmissibility in order to qualify for T nonimmigrant status pursuant to 8 CFR 212.16. *See* INA 101(a)(15)(T), 212(d)(13)(B), 8 U.S.C. 1101(a)(15)(T), 1182(d)(13)(B).

Regardless of whether the rule encompasses all felony convictions or some subset of such convictions, the Departments have identified specific types of offenses below that are proposed in this rule as grounds for ineligibility for asylum.

2. Federal Convictions for Harboring Aliens

The Attorney General and the Secretary propose to designate all offenses involving the federal crimes of bringing in or harboring certain aliens pursuant to sections 274(a)(1)(A) and (2) of the INA, 8 U.S.C. 1324(a)(1)(A), (2), as particularly serious crimes and, in all events, as discrete bases for ineligibility. *See* INA 208(b)(2)(B)(ii), (C), 8 U.S.C. 1158(b)(2)(B)(ii), (C). To convict a person of harboring an alien under

sections 274(a)(1)(A) or (2) of the INA, the Government must establish that the defendant concealed, harbored, shielded from detection, or transported an alien, or attempted to do so. INA 274(a)(1)(A), (2), 8 U.S.C. 1324(a)(1)(A), (2). Penalties differ depending on whether the act was for commercial advantage or financial gain and on whether serious bodily injury or death occurred. INA 274(a)(1)(B), (2)(B), 8 U.S.C. 1324(a)(1)(B), (2)(B). Most of the prohibited acts carry a penalty of possible imprisonment of at least five years, INA 274(a)(1)(B)(i)–(iii), 8 U.S.C. 1324(a)(1)(B)(i)–(iii), and committing those acts in circumstances resulting in the death of another person can be punished by a sentence of death or life imprisonment, INA 274(a)(1)(B)(iv), 8 U.S.C. 1324(a)(1)(B)(iv). The only exception is for certain instances of the offense of bringing or attempting to bring in an alien who lacks official authorization to enter under section 274(a)(2) of the INA, 8 U.S.C. 1324(a)(2), which carries a possible penalty of imprisonment up to one year, INA 274(a)(2)(A), 8 U.S.C. 274(a)(2)(A).

Convictions under section 1324 are often aggravated felonies under section 101(a)(43)(N) of the INA, 8 U.S.C. 1101(a)(43)(N), which defines an aggravated felony as including ''an offense described in [INA 274(a)(1)(A) or (2)], except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent.'' *See Matter of Ruiz-Romero,* 22 I&N Dec. 486, 488, 492–93 (BIA 1999) (holding that an alien convicted of transporting an illegal alien committed an aggravated felony under section 101(a)(43)(N) of the INA and was thus deportable); *see also Patel* v. *Ashcroft,* 294 F.3d 465 (3d Cir. 2002) (holding that harboring an alien constitutes an aggravated felony); *Gavilan-Cuate* v. *Yetter,* 276 F.3d 418, 419–20 (8th Cir. 2002) (dismissing an appeal for lack of jurisdiction because the court had already determined on the petitioner's direct appeal that he had been convicted of the aggravated felony of transporting and harboring aliens); *United States* v. *Galindo-Gallegos,* 244 F.3d 728, 733–34 (9th Cir. 2001) (holding that transporting aliens under 8 U.S.C. 1324(a)(1)(A)(ii) is an aggravated felony for purposes of section 101(a)(43)(N) of the INA). Aliens convicted of such aggravated felonies would already be ineligible for asylum under section 208(b)(2)(B)(i) of the INA.

The proposed rule would broaden this bar so that first-time offenders who engage in illegal smuggling or harboring

[5] The Departments intend that this proposed provision would be limited to aliens with convictions and would not apply to criminal conduct for which the alien has not been convicted. Further, this provision would expand ineligibility for asylum based on offenses committed in the United States, not offenses committed abroad. This provision would thus leave unchanged the provision in 8 U.S.C. 1101(a)(43) that provides for application of the aggravated felony definition to offenses in violation of the law of a foreign country.

to aid certain family members, in violation of section 1324(a)(1)(A) or (2), are deemed to have committed particularly serious crimes. The *mens rea* required for a section 1324 conviction under subsection (a)(1)(A) is "knowing," and under (a)(2) is "knowing or in reckless disregard," meaning such a conviction displays a serious disregard for U.S. immigration law. In all events, conviction of a smuggling offense under section 1324(a)(1)(A) or (2) should also be disqualifying under section 1158(b)(2)(C), which gives the Attorney General and the Secretary additional discretion to identify grounds for ineligibility. Even first-time alien smuggling offenses involving immediate family members display a serious disregard for U.S. immigration law and pose a potential hazard to smuggled family members, which often include a vulnerable child or spouse. *See Arizona* v. *United States,* 567 U.S. 387, 396 (noting the "danger" posed by "alien smugglers or aliens who commit a serious crime"); *United States* v. *Miguel,* 368 F.3d 1150, 1157 (9th Cir. 2004), *overruled on other grounds by United States* v. *Gasca-Ruiz,* 852 F.3d 1167 (9th Cir. 2017) (noting that "young children [are] more susceptible to the criminal conduct because they [do] not fully appreciate the danger involved in illegal smuggling").

3. Federal Convictions for Illegal Reentry

The Attorney General and the Secretary further propose to exercise their authority under sections 208(b)(2)(B)(ii) and 208(b)(2)(C) of the INA, 8 U.S.C. 1158(b)(2)(B)(ii) and (C), to designate a conviction for the federal crime of illegal reentry pursuant to section 276 of the INA, 8 U.S.C. 1326, as precluding asylum eligibility.

Under section 1326(a), aliens who were previously removed and reenter the United States are subject to fines and to a term of imprisonment of two years or less. 8 U.S.C. 1326(a). Section 1326(b) prescribes significantly higher penalties for certain removed aliens who reenter, such as aliens who were removed after being convicted for aggravated felonies and then reenter. 8 U.S.C. 1326(b) (authorizing sentences of imprisonment up to 20 years as possible penalties).

Some convictions under section 1326 already qualify as aggravated felonies under section 101(a)(43)(O) of the INA, 8 U.S.C. 1101(a)(43)(O), which defines an aggravated felony as including "an offense described in section . . . 1326 . . . committed by an alien who was previously deported on the basis of a

conviction for an [aggravated felony]." Aliens who commit such offenses are thus already ineligible for asylum under section 208(b)(2)(B)(i) of the INA, 8 U.S.C. 1158(b)(2)(B)(i).

The proposed rule would broaden this bar so that all aliens convicted of illegal reentry under section 1326 would be considered to have committed an offense that disqualifies them from asylum eligibility. It would also harmonize the treatment of most aliens who have illegally reentered the United States after being removed, as such aliens who have a prior order of removal reinstated are already precluded from asylum eligibility. Section 1326 makes clear that all offenses relating to illegal reentry are quite serious; even the most basic illegal reentry offense is punishable by fine and by up to two years' imprisonment. 8 U.S.C. 1326(a). Illegal reentry also reflects a willingness to repeatedly disregard the immigration laws despite alternative means of presenting a claim of persecution. An alien seeking protection, even one who has previously been removed from the United States, may present himself or herself at a port of entry without illegally reentering the United States. An alien who chooses instead to again enter illegally has repeatedly chosen to flout immigration laws, and such recidivism suggests that the offense should be treated more severely. The fact that the alien has *repeatedly* engaged in criminal conduct suggests a tendency to engage in such conduct in the future, thus warranting a conclusion that the alien poses a danger to the community that makes the alien's crime particularly serious. *See* Mariel Alper et al., 2018 Update on Prisoner Recidivism: A 9-Year Follow-up Period (2005–2014) 17 (2018) ("Overall, excluding probation and parole violations, 82.4% of prisoners released in 30 states in 2005 were arrested within 9 years."); U.S. Sentencing Comm'n, The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders 14 (2017) ("Overall, an offender's total criminal history score is a strong predictor of recidivism. Rearrest rates range from a low of 30.2 percent of offenders with zero criminal history points to a high of 85.7 percent for offenders with 15 or more criminal history points. Each additional criminal history point is generally associated with a greater likelihood of recidivism."); Nick Tilley, Analyzing and Responding to Repeat Offending 11 (2013) ("Once criminal careers are established and offenders are processed by the criminal justice system, recidivism rates become very high: Up

to two-thirds of those who are incarcerated will reoffend within a few years.").

Moreover, Congress, as noted above, has already designated certain crimes related to illegal reentry as aggravated felonies. *See* 8 U.S.C. 1101(a)(43)(O). This designation reflects a congressional decision that aliens who commit these crimes are dangers to the community, *see* 8 U.S.C. 1158(b)(2)(A)(ii) (tying the "particularly serious crime" determination to "danger[ousness] to the community"), so aliens who commit similar crimes related to reentry are also likely to be dangers to the community. Further, 63% of those convicted of illegal reentry had a prior criminal history, again suggesting that the offenders who commit these crimes pose an ongoing danger to others. *See* U.S. Sentencing Comm'n, Quick Facts: Illegal Reentry Offenses 1 (2019), *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Illegal_Reentry_FY18.pdf.*

As a separate basis for this aspect of the proposed rule, the Attorney General and the Secretary propose making illegal reentry a ground for ineligibility under section 208(b)(2)(C) of the INA, 8 U.S.C. 1158(b)(2)(C). A regulation providing for the mandatory ineligibility for asylum based on convictions for illegal reentry of removed aliens, *see* INA 276, 8 U.S.C. 1326, would bear a close relationship to the statutory bar on applying for asylum when a previous order of removal is reinstated, *see* INA 241(a)(5), 8 U.S.C. 1231(a)(5). An alien subject to reinstatement of a prior removal order is not eligible to apply for any relief from removal, but may seek protection such as statutory withholding of removal and protection pursuant to the CAT regulations. *See, e.g., Cazun,* 856 F.3d at 254. The statutory bar on applying for asylum and other forms of relief when an order of removal is reinstated has been upheld by every circuit to consider the question. *See Garcia* v. *Sessions,* 873 F.3d 553, 557 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 2648 (2018); *R–S–C,* 869 F.3d at 1189; *Mejia,* 866 F.3d at 587; *Garcia,* 856 F.3d at 30; *Cazun,* 856 F.3d at 260; *Perez-Guzman* v. *Lynch,* 835 F.3d 1066, 1082 (9th Cir. 2016); *Jimenez-Morales* v. *U.S. Att'y Gen.,* 821 F.3d 1307, 1310 (11th Cir. 2016); *Ramirez-Mejia* v. *Lynch,* 794 F.3d 485, 489–90 (5th Cir. 2015); *Herrera-Molina* v. *Holder,* 597 F.3d 128, 137–38 (2d Cir. 2010). That bar reflects legislators' apparent concerns that aliens who re-cross the border illegally after having been removed once should not be rewarded with benefits that the United States is not obliged to offer them. *See R–S–C,* 869 F.3d at 1179 &

n.2; H.R. Rep. No. 104–469, pt. 1, at 155 (1996) (''[T]he ability to cross into the United States over and over with no consequences undermines the credibility of our efforts to secure the border.''); H.R. Rep. No. 104–469, pt. 1, 113 (''One seemingly intractable problem is repeat border-crossings.'').

The existing statutory bar for reinstated removal orders and the proposed bar for aliens convicted of illegal reentry after being previously removed are not coterminous because not all persons with a conviction under section 276 of the INA, 8 U.S.C. 1326, have orders of removal reinstated. *See Lara-Aguilar* v. *Sessions,* 889 F.3d 134, 144 (4th Cir. 2018) (reinstatement of a prior removal order is neither automatic nor obligatory). Furthermore, not all persons with reinstated removal orders have been convicted under section 276 of the INA, 8 U.S.C. 1326. However, the Departments believe that similar policy considerations support the barring of aliens convicted of illegal reentry under section 276 of the INA, 8 U.S.C. 1326, from eligibility for asylum.

Furthermore, although this proposed bar would render ineligible for asylum an alien whose threat of persecution arose after the initial removal and illegal reentry, such an alien could still seek other forms of protection, such as statutory withholding of removal and withholding or deferral of removal under the regulations implementing the CAT. The proposed rule is consistent, therefore, with U.S. treaty obligations under the Refugee Protocol (which incorporates Articles 2 through 34 of the Refugee Convention) and the CAT. U.S. asylum law implements Article 34 of the Refugee Convention, concerning assimilation of refugees, which is precatory and not mandatory. *See Cardoza-Fonseca,* 480 U.S. at 441. In accordance with the non-mandatory nature of Article 34, the asylum statute, INA 208, 8 U.S.C. 1158, was drawn to be discretionary; it does not require asylum to be granted to all refugees. *Id.* For the reasons outlined above, limitations like the ones proposed here do not violate Article 34. *See Garcia,* 856 F.3d at 42; *R–S–C,* 869 F.3d at 1188; *Mejia,* 866 F.3d at 588; *Cazun ,* 856 F.3d at 257 & n.16; *Ramirez-Mejia,* 813 F.3d at 241. In contrast, the United States' non-refoulement obligations under Article 33(1) of the Refugee Convention and Article 3 of the CAT are mandatory to the extent provided by domestic law. They are implemented by statutory withholding of removal, a mandatory provision, and withholding or deferral of removal under the CAT regulations. Because the new limitations adopted here do not affect the availability of

statutory withholding of removal, INA 241(b)(3)(A), 8 U.S.C. 1231(b)(3)(A), or protection under the regulations implementing the CAT, 8 CFR 1208.16(c) through 1208.18, the rule does not affect U.S. compliance with its obligations under Article 33(1) of the Refugee Convention or Article 3 of the CAT. *See R–S–C,* 869 F.3d at 1188 n.11; *Cazun,* 856 F.3d at 257; *Ramirez-Mejia,* 813 F.3d at 241.

Moreover, in rejecting any argument that the Refugee Convention and Refugee Protocol require that the U.S. must grant asylum to anyone who qualifies as a ''refugee,'' the Departments note that the Refugee Convention and Refugee Protocol are not self-executing. Rather, Congress implemented relevant U.S. obligations under the Refugee Protocol through the Refugee Act. *Matter of D–J–,* 23 I&N Dec. 572, 584 n.8 (A.G. 2003). The Refugee Act made asylum discretionary, meaning that Congress did not consider it obligatory to grant asylum to every refugee who qualifies. Public Law 96– 212, sec. 208(a), 94 Stat. 102. Moreover, as noted earlier in footnote 3, courts have rejected arguments that other provisions of the Refugee Convention require every refugee to receive asylum. Courts have held, in the context of upholding the bar on eligibility for asylum in reinstatement proceedings under section 241(a)(5) of the INA, 8 U.S.C. 1231(a)(5), that limiting the ability to apply for asylum does not constitute a prohibited ''penalty'' under Article 31(1) of the Refugee Convention. *Mejia,* 866 F.3d at 588; *Cazun,* 856 F.3d at 257 n.16. Courts have also rejected the argument that Article 28 of the Refugee Convention, governing issuance of international travel documents for refugees ''lawfully staying'' in a country's territory, mandates that every person who might qualify for withholding must also be granted asylum. *Garcia,* 856 F.3d at 42; *R–S–C,* 869 F.3d at 1188. Thus, the Attorney General may render aliens ineligible for asylum if they enter illegally and are then convicted of unlawfully entering the country, and still remain faithful to U.S. obligations under the Refugee Protocol.

### 4. Federal, State, Tribal, or Local Convictions for Offenses Involving Criminal Street Gangs

The Departments are proposing to bar from asylum all those who are convicted of a crime involving criminal street gangs, regardless of whether that crime qualifies as a felony or as a misdemeanor. One approach the Attorney General and the Secretary are considering is to exercise their

discretionary authority under sections 208(b)(2)(B)(ii) and (C) of the INA, 8 U.S.C. 1158(b)(2)(B)(ii) and (C), to exclude individuals convicted of federal, state, tribal, or local crimes committed in support, promotion, or furtherance of a criminal street gang as that term is defined in the convicting jurisdiction or under 18 U.S.C. 521(a). Specifically, the proposed rule would cover individuals convicted of federal, state, tribal, or local crimes in cases in which the adjudicator knows or has reason to believe the crime was committed in furtherance of criminal street gang activity.[6] The ''reason to believe'' standard is used elsewhere in the INA, *see* 8 U.S.C. 1182(a)(2)(C), and would allow for consideration of all reliable evidence, including any penalty enhancements, to determine whether the crime was committed for or related to criminal gang activities, *see Garces* v. *U.S. Att'y Gen.,* 611 F.3d 1337, 1350 (11th Cir. 2010); *Matter of Rico,* 16 I&N Dec. 181, 185–86 (BIA 1977). In addition, the Departments have concluded that it is appropriate to allow the adjudicator to determine whether a crime was in fact committed ''in furtherance'' of gang-related activity. The states, as noted above, have enacted numerous laws that address gang-related crimes, but they have not enacted a uniform definition of what constitutes activity taken ''in furtherance'' of a gang-related crime. It thus appropriately falls to immigration judges in the first instance to determine whether a person committed the type of crime that warrants withholding of the benefit of legal presence in our communities. Moreover, to the extent that allowing the adjudicator to undertake such an inquiry might raise concerns about inconsistent application of the proposed bar, the Departments note that the Board is capable of

---

[6] California enacted the first major anti-gang legislation in the country in 1988. *See* Cal. Penal. Code 186.22(a) (establishing a substantive criminal offense for ''[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang''). In the years since, 49 states, the District of Columbia, and the Federal Government have enacted legislation that provides for penalties (including sentence enhancements, fines, or damages) for gang-related criminal activity. National Gang Center, Highlights of Gang-Related Legislation (Dec. 31, 2018), *https:// www.nationalgangcenter.org/Legislation/Highlights* (last visited June 3, 2019); *see also, e.g.,* 18 U.S.C. 521 (providing a 10-year sentence enhancement for certain convictions regarding criminal street gang activity); Idaho Code Ann. 18–8503; Iowa Code Ann. 723A.2; Kan. Stat. Ann. 21–6314; La. Rev. Stat. 1403; Minn. Stat. Ann. 609.229; Mo. Rev. Stat. 578.423; Mont. Code Ann. 45–8–405; N.C. Gen. Stat. 14–50.17; Ohio Rev. Code Ann. 2923.42; Tenn. Code Ann. 40–35–121; Utah Code Ann. 76–9–903.

ensuring a uniform approach to the gang-related crimes inquiry. *See, e.g.,* 8 CFR 1003.1(e)(6)(i) (allowing for referral of cases to a three-member panel of the Board ''to settle inconsistencies among the rulings of different immigration judges'').

Some of the relevant criminal street gang-related offenses may already constitute aggravated felonies, such that aliens convicted of such offenses would already be ineligible for asylum. The most common criminal street gang crimes ''are street-level drug trafficking, assault, threats and intimidation, robbery, and large-scale drug trafficking.'' National Gang Intelligence Center, 2015 National Gang Report 12 (2015). Many convictions for such offenses could qualify as aggravated felonies. *See, e.g.,* 8 U.S.C. 1101(a)(43)(B) (defining drug trafficking crimes as aggravated felonies); *id.* 1101(a)(43)(F) (defining crimes of violence punishable by at least one year in prison as aggravated felonies).

Regardless, criminal street gang-related offenses—whether felonies or misdemeanors—could reasonably be designated as ''particularly serious crimes'' pursuant to 8 U.S.C. 1158(b)(2)(B)(ii). All criminal street gang-related offenses appear to be particularly serious because they are strong indicators of recidivism and ongoing, organized criminality within a community, thus implying that aliens who commit such crimes are likely to pose an ongoing danger to that community. For example, research suggests that criminal street gang members are responsible for 48 percent of violent crime in most U.S. jurisdictions. *See* National Gang Intelligence Center, National Gang Threat Assessment 15 (2011). Criminal street gang members are also more likely than nonmembers to be involved in selling drugs. *See* Dana Peterson, et al., *Gang Membership and Violent Victimization* 21 Just. Q. 793, 798 (2004). And the Federal Bureau of Investigation reports that more than 96 criminal street gangs conduct cross-border crimes such as cross-border drug trafficking. National Gang Intelligence Center, 2015 National Gang Report 9–10 (2015); *see also* J.C. Barnes et al., *Estimating the Effect of Gang Membership on Nonviolent and Violent Delinquency: A Counterfactual Analysis,* 36 Aggressive Behav. 437, 438 (2010) (studying the link between gang membership and crime, and reporting that gang members account for 86 percent of all ''serious delinquent acts''). In light of this well-documented link between gang membership and a range of crimes, the Departments believe that aliens who enter the United States and proceed to be convicted of crimes involving criminal street gang-related activity should be deemed to have committed particularly serious crimes that render them ineligible for asylum.

Further, some of the crimes in which gangs frequently engage—such as drug trafficking—are similar to the kinds of crimes that Congress has already classified as aggravated felonies. *See, e.g.,* 8 U.S.C. 1101(a)(43)(B) (defining aggravated felonies to include ''illicit trafficking in a controlled substance''). This classification reflects a congressional determination that such crimes pose a danger to the community, *see* 8 U.S.C. 1158(b)(2)(A)(ii), (b)(2)(B)(i), such that aliens involved in similar, gang-related crimes are also likely to pose a danger to the community. Indeed, the perpetrators of crimes that further gang activity are, by the very nature of the acts they commit, displaying a disregard for basic societal structures in preference of criminal activities that place other members of the community—even other gang members—in danger. Existing law in some cases thus already treats gang-related offenders more harshly than other offenders, *see, e.g.,* U.S. Sentencing Guidelines Manual § 5K2.18 (U.S. Sentencing Comm'n 2018) (allowing for upward departures ''to enhance the sentences of defendants who participate in groups, clubs, organizations, or associations that use violence to further their ends''), thereby confirming that these offenders are more likely to be dangerous to the community.

Moreover, even if 8 U.S.C. 1158(b)(2)(B)(ii) did not authorize the proposed bar, the Attorney General and the Secretary would propose designating criminal gang-related offenses as disqualifying under 8 U.S.C. 1158(b)(2)(C). Criminal gangs of all types—including local, regional, or national street gangs; outlaw motorcycle gangs; and prison gangs—are a significant threat to the security and safety of the American public. *See, e.g.,* National Gang Intelligence Center, 2015 National Gang Report 8 (2015) (explaining that ''each gang type poses a unique threat to the nation''). Transnational organized crime has also expanded in size, scope, and impact over the past several years.[7] In Executive Order 13773, Enforcing Federal Law With Respect to Transnational Criminal Organizations and Preventing International Trafficking, 82 FR 10691 (Feb. 9, 2017), the President emphasized the scourge of transnational criminal organizations and directed federal agencies to ''pursue and support additional efforts to prevent the operational success of transnational criminal organizations and subsidiary organizations within and beyond the United States.'' Aliens involved in gang-related criminal activity accordingly represent a threat to the safety and security of the United States, and barring aliens convicted of such activity from receiving the discretionary benefit of asylum is ''consistent with'' the asylum statute's current provisions specifying that aliens posing such a threat are not eligible for asylum. *See* 8 U.S.C. 1158(b)(2)(A)(ii), (iv).

Finally, the Departments solicit public comments on:

(1) What should be considered a sufficient link between an alien's underlying conviction and the gang-related activity in order to trigger the application of the proposed bar; and

(2) any other regulatory approaches to defining the type of gang-related activities that should render aliens ineligible for asylum.

5. Convictions for Offenses Involving Driving While Intoxicated or Impaired

The Attorney General and Secretary further propose that, pursuant to their authorities under 8 U.S.C. 1158(b)(2)(B)(ii) and (C), aliens convicted under federal, state, tribal, or local law of certain offenses involving driving while intoxicated or impaired (also known as driving under the influence (''DUI'')) should be ineligible for asylum. Specifically, aliens should be ineligible for asylum if they are convicted under federal, state, tribal, or local law of a second or subsequent offense of driving while intoxicated or impaired, or for a single such offense resulting in death or serious bodily injury. Whether a conviction involves driving while intoxicated or impaired would depend on the definition that the jurisdiction of conviction gives those terms. Such convictions would be disqualifying regardless of whether they constituted felonies or misdemeanors in the jurisdiction of conviction.

An alien convicted of DUI may remain eligible for asylum under current law, even when it is an alien's second or subsequent such conviction or when the DUI offense results in death or serious injury. Not all DUI offenses constitute aggravated felonies within the meaning of section 101(a)(43) of the INA, 8 U.S.C. 1101(a)(43), and thus these offenses may not automatically constitute ''particularly serious crimes'' for purposes of 8 U.S.C. 1158(b)(2)(B)(i).

[7] Office of the Dir. Of Nat'l Intelligence, Transnational Organized Crime, *https://www.dni.gov/files/documents/NIC_toc_foldout.pdf.*

*Cf. Leocal* v. *Ashcroft,* 543 U.S. 1, 13 (2004) (noting that DUI offenses in states whose relevant statutes ''do not require any mental state'' are not aggravated felony crimes of violence). However, the Board in the withholding of removal context has concluded that a number of DUI-related offenses involving death or serious injury constitute particularly serious crimes, and courts have upheld those determinations. *See, e.g., Avendano-Hernandez* v. *Lynch,* 800 F.3d 1072, 1076, 1076–78 (9th Cir. 2015) (affirming the Board's determination that a felony DUI conviction involving injury to another was a particularly serious crime for purposes of withholding of removal given the inherently dangerous nature of the offense, even though the alien was sentenced to less than one year's imprisonment); *Anaya-Ortiz* v. *Holder,* 594 F.3d 673, 675, 679–80 (9th Cir. 2010) (the Board applied the correct standard to conclude that an alien's actions in crashing ''into a house while driving drunk . . . [and] caus[ing] part of the house's sheetrock wall to collapse on an elderly woman who lived inside'' constituted a particularly serious crime); *Ursu* v. *INS,* 20 F. App'x 702, 705 (9th Cir. 2001) (upholding the Board's conclusion that a specific DUI offense was a particularly serious crime for withholding purposes because the alien ''caused the death of another human being'' while severely impaired). These holdings indicate that DUI offenses often have grave consequences, thus supporting a conclusion that they can reasonably be considered ''particularly serious'' for purposes of asylum eligibility. DUI laws exist, in part, to protect unknowing persons who are transiting through their communities from the dangerous persons who choose to willingly disregard common knowledge that their criminal acts endanger others.

As noted above, however, existing law does not clearly or categorically limit asylum eligibility for aliens convicted of serious DUI offenses, including those resulting in death or serious bodily injury. Establishing such a bar would be consistent with the Attorney General and the Secretary's statutory authority to designate by regulation ''particularly serious crimes'' that constitute a danger to the community and, thus, render aliens ineligible for asylum. INA 208(b)(2)(A)(ii), (B)(ii), 8 U.S.C. 1158(b)(2)(A)(ii), (B)(ii); *Delgado,* 648 F.3d at 1105–06; *Gao,* 595 F.3d at 555–56; *see also Matter of Carballe,* 19 I&N Dec. 357, 360 (BIA 1986) (an alien convicted of a particularly serious crime constitutes a danger to the community

of the United States). The Fifth Circuit has noted that ''the very nature of the crime of [driving while intoxicated] presents a 'serious risk of physical injury' to others.'' *United States* v. *DeSantiago-Gonzalez,* 207 F.3d 261, 264 (5th Cir. 2000). These decisions in the withholding context underscore that DUI offenses involving serious bodily harm or death are routinely deemed ''particularly serious crimes'' in that context, and section 101(h)(3) of the INA, 8 U.S.C. 1101(h)(3), classifies driving under the influence as a ''serious criminal offense'' for purposes of the ground of inadmissibility at section 1182(a)(2)(E). Classifying DUI offenses that involve serious bodily harm or death as particularly serious crimes as a categorical matter would be reasonable given that all such offenses by definition involve a serious danger to the community. Likewise, categorically classifying repeat DUI offenses as particularly serious crimes would be a reasonable exercise of the Attorney General and the Secretary's discretion to designate particularly serious crimes because repeat offenders have already exhibited disregard for the safety of others as well as a likelihood of continuing to engage in extremely dangerous conduct.

Even if some of the proposed DUI-related bars could not be characterized as ''particularly serious crimes'' for purposes of section 1158(b)(2)(B)(ii), such bars would be within the Attorney General and the Secretary's authority to establish under 8 U.S.C. 1158(b)(2)(C). As the Supreme Court has recognized, ''[d]runk driving is an extremely dangerous crime'' as a general matter. *Begay* v. *United States,* 553 U.S. 137, 141 (2008), *abrogated on other grounds by Johnson* v. *United States,* 135 S. Ct. 2551 (2015). It takes ''a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year.'' *Birchfield* v. *North Dakota,* 136 S. Ct. 2160, 2166 (2016); *see also Marmolejo-Campos* v. *Holder,* 558 F.3d 903, 913 (9th Cir. 2009) (noting that ''the dangers of drunk driving are well established''). Furthermore, federal courts have upheld the Board's determination that even if a particular DUI-related offense does not qualify as a ''particularly serious crime,'' such a conviction warrants a discretionary denial of asylum. *See, e.g., Kouljinski* v. *Keisler,* 505 F.3d 534, 543 (6th Cir. 2007) (holding that, regardless of whether driving under the influence of alcohol is a ''particularly serious crime,'' the immigration judge ''did not abuse his discretion in this case by

basing his discretionary denial of asylum on [the petitioner's] three drunk-driving convictions''). These cases are consistent with the notion that the Attorney General and Secretary could, in their discretion, identify a subset of DUI convictions reflecting particularly dangerous conduct as grounds to deny eligibility for asylum.

### 6. Domestic Assault or Battery, Stalking, or Child Abuse

Relying on the authority under section 208(b)(2)(B)(ii) of the INA, the proposed regulation would also render aliens convicted of federal, state, tribal, or local offenses involving conduct amounting to domestic assault or battery, stalking, or child abuse in the domestic context ineligible for asylum, irrespective of whether those offenses qualify as felonies or misdemeanors. Relying solely on the Attorney General and the Secretary's authority under section 208(b)(2)(C) of the INA, the regulation would also render ineligible aliens who engaged in acts of battery and extreme cruelty in a domestic context in the United States, regardless of whether such conduct resulted in a criminal conviction. Notably, the asylum statute already contemplates that individuals who engage in certain harmful behavior will be ineligible, regardless of whether that behavior resulted in a conviction. 8 U.S.C. 1158(b)(2)(A)(i), (iii)–(v). Finally, the proposed regulation would except from the ineligibility bar aliens who have been battered or subjected to extreme cruelty and who were not the primary perpetrators of violence in their relationships.

Some of the offenses described above may already render an alien ineligible for asylum, to the extent that a particular conviction qualifies as an aggravated felony. For instance, aggravated felonies encompass ''murder, rape, or sexual abuse of a minor,'' 8 U.S.C. 1101(a)(43)(A), as well as any ''crime of violence . . . for which the term of imprisonment [is] at least one year,'' *id.* 1101(a)(43)(F). Convictions for such offenses automatically constitute ''particularly serious crimes'' for purposes of 8 U.S.C. 1158(b)(2)(A)(ii). *See* 8 U.S.C. 1158(b)(2)(B)(i). But, as noted, due to the application of the categorical approach, many state convictions that involve sexual abuse or domestic violence-related offenses may not qualify as aggravated felonies. *E.g., Larios-Reyes,* 843 F.3d at 149–50 (alien's conviction under Maryland law for sexual abuse of a victim under the age of 14 did not amount to the aggravated felony of ''sexual abuse of a minor''); *Ortega-Mendez* v. *Gonzales,* 450 F.3d

1010, 1021 (9th Cir. 2006) (holding that a conviction for battery under California Penal Code section 242 is not a "crime of violence" within the meaning of 18 U.S.C. 16(a) and thus is not a "crime of domestic violence" within the meaning of 8 U.S.C. 1227(a)(2)(E)(i)); *Tokatly* v. *Ashcroft,* 371 F.3d 613, 624 (9th Cir. 2004) ("Applying *Taylor,* a court may not look beyond the record of conviction to determine whether an alien's crime was one of 'violence,' or whether the violence was 'domestic' within the meaning of the provision.").

The Board has routinely deemed some of the identified domestic violence offenses as particularly serious crimes, and many of those decisions have been upheld on appeal. *See Pervez* v. *Holder,* 546 F. App'x 157, 159 (4th Cir. 2013) (attempted indecent liberties with a child constituted a particularly serious crime even where "no child was actually harmed"); *Lara-Perez* v. *Holder,* 517 F. App'x 255 (5th Cir. 2013) (lewd and lascivious acts with a child constituted particularly serious crime); *Uzoka* v. *Att'y Gen.,* 489 F. App'x 595 (3d Cir. 2012) (endangering welfare of a child constituted a particularly serious crime); *Sosa* v. *Holder,* 457 F. App'x 691 (9th Cir. 2011) (willful infliction of corporal injury on a spouse or cohabitant constituted a particularly serious crime); *Hernandez-Vasquez* v. *Holder,* 430 F. App'x 448 (6th Cir. 2011) (child endangerment constituted a particularly serious crime); *Matter of Singh,* 25 I&N Dec. 670, 670 (BIA 2012) (stalking offense constituted a crime of violence). But the Board's case-by-case assessment of each domestic violence conviction does not cover all of the offenses identified above, and it would not cover domestic violence that does not result in a conviction, as the proposed rule would.

The Attorney General and the Secretary propose classifying domestic violence convictions as particularly serious crimes under section 208(b)(2)(B)(ii) of the INA, 8 U.S.C. 1158(b)(2)(B)(ii), because violent conduct, or conduct creating a substantial risk of violence against the person, generally constitutes a particularly serious offense rendering an alien ineligible for asylum or withholding of removal. *Matter of E–A–,* 26 I&N Dec. 1, 9 n.3 (BIA 2012) (a "serious" crime involves "a substantial risk of violence and harm to persons"); *Matter of Frentescu,* 18 I&N Dec. 244, 247 (BIA 1982) ("Crimes against persons are more likely to be categorized as 'particularly serious crimes.' ").

Even if all of the proposed domestic violence offenses would not qualify as particularly serious crimes, convictions for such offenses—as well as engaging in conduct involving domestic violence that does not result in a conviction— should be a basis for ineligibility for asylum under section 208(b)(2)(C) of the INA. Domestic violence is particularly reprehensible because the perpetrator takes advantage of an "especially vulnerable" victim. *Carrillo* v. *Holder,* 781 F.3d 1155, 1159 (9th Cir. 2015). Congress enacted grounds for removability for domestic violence offenses because "[w]hen someone is an alien and has already shown a predisposition toward violence against women and children, we should get rid of them the first time." *See* 142 Cong. Rec. S4058–02, S4059 (daily ed. Apr. 24, 1996) (statement of Senator Dole on his amendment adding grounds for removability under subsection (E) to 8 U.S.C. 1227(a)(2)). Congress included stalking within the same statutory provision as domestic violence offenses that make an alien subject to removal because it is a "vicious act:" "Of all the women killed in the United States by husbands or boyfriends, 90 percent were stalked before being murdered." *Id.* In addition, "[s]talking behavior often leads to violence which may result in the serious injury or death of stalking victims." *Id.* Congress also included child abuse within the same statutory provision as domestic violence offenses, noting that child abuse includes a range of serious maltreatment, such as negligence, physical abuse, sexual abuse, emotional abuse, and medical negligence. *See id.* (statement of Senator Coverdale). "[American] society will not tolerate crimes against women and children." *Id.* (statement of Senator Dole on his amendment to add subsection (E) to 8 U.S.C. 1227(a)(2)). The same rationale should render aliens who commit domestic violence in the United States ineligible for the discretionary benefit of asylum. Denying asylum eligibility to an alien who has engaged in domestic violence accords with the aim of "send[ing] a message that we will protect our citizens against [domestic] assaults" committed by aliens. *Id.*

The portions of the proposed regulation that require a conviction would permit the adjudicator to assess all reliable evidence in order to determine whether that conviction amounts to a domestic violence offense. In limited circumstances, a similar type of analysis already occurs in the removal context. Although the ground of removability at 8 U.S.C. 1227(a)(2)(E)(ii)—which applies to individuals who violate certain portions of a protective order—does not require a criminal conviction, it does require a judicial order. *See Garcia-Hernandez* v.

*Boente,* 847 F.3d 869, 872 (7th Cir. 2017) ("The text of [8 U.S.C. 1227(a)(2)](E)(ii) does not depend on a criminal conviction but on what a court 'determines' about the alien's conduct."). That ground of removability requires the immigration judge to consider "the probative and reliable evidence regarding what a State court has determined about the alien's violation [of a protective order]." *Matter of Medina-Jimenez,* 27 I&N Dec. 399, 401 (BIA 2018). And, under 8 U.S.C. 1227(a)(2)(E)(i), which requires a conviction, the immigration judge may still apply a circumstance-specific approach to determine whether the "domestic relationship component" of that removability ground is met. *Hernandez-Zavala* v. *Lynch,* 806 F.3d 259, 266–67 (4th Cir. 2015); *Matter of Estrada,* 26 I&N Dec. 749, 752–53 (BIA 2016) ("[T]he circumstance-specific approach is properly applied in analyzing the domestic nature of a conviction to determine if it is for a crime of domestic violence."). Because some states may not have separate offenses for the different types of conduct recognized in federal law as domestic violence offenses, relying on such a factual inquiry would "clos[e] the . . . loopholes" where aliens might otherwise escape the immigration consequences due to the vagaries of states' laws. 142 Cong. Rec. S4058–02, S4059 (statement of Senator Dole).

For similar reasons, the portions of the proposed rule at 8 CFR 208.13(c)(6)(vii) and 1208.13(c)(6)(vii), which would not require a conviction to trigger ineligibility, allow the adjudicator to consider what conduct the alien engaged in to determine if the conduct amounts to a covered act of battery or extreme cruelty. There is precedent for such a conduct-specific inquiry in the asylum statute, *see* INA 208(b)(2)(A)(i), 8 U.S.C. 1158(b)(2)(A)(i), as well as in the removability context, *see* INA 237(a)(1)(E), 8 U.S.C. 1227(a)(1)(E); *see also Meng* v. *Holder,* 770 F.3d 1071, 1076 (2d Cir. 2014) (reviewing the record evidence to determine whether it supported the agency's finding that the applicant's conduct triggered section 1158(b)(2)(A)(i)'s persecutor bar); *Santiago-Rodriguez* v. *Holder,* 657 F.3d 820, 829 (9th Cir. 2011) (explaining that a factual admission may be sufficient to satisfy the Government's burden of demonstrating removability under section 1227(a)(1)(E)(i)). Moreover, this conduct-specific inquiry is materially similar to the inquiry already undertaken in situations in which an

alien seeks to obtain immigration benefits based on domestic violence actions that do not necessarily result in a conviction. *See, e.g.,* 8 U.S.C. 1229b(b)(2)(A); 8 CFR 204.2(c)(1)(i)(E), (c)(1)(vi), (c)(2)(iv), (e)(1)(i)(E), (e)(1)(vi), and (e)(2)(iv).

Finally, the proposed regulation would exempt from the ineligibility bar aliens who have been battered or subjected to extreme cruelty and who were not the primary perpetrators of violence in their relationships. These aliens are generally described in section 237(a)(7)(A) of the INA, 8 U.S.C. 1227(a)(7)(A), which provides a waiver of the domestic violence and stalking removability ground when it is determined that the alien (1) was acting in self-defense; (2) was found to have violated a protection order intended to protect the alien; or (3) committed, was arrested for, was convicted of, or pled guilty to committing a crime that did not result in serious bodily injury and where there was a connection between the crime and the alien's having been battered or subjected to extreme cruelty. Although section 237(a)(7)(A) of the INA, 8 U.S.C. 1227(a)(7)(A), excepts such aliens from removability only if they are granted a discretionary waiver, the proposed rule would except all aliens who satisfy the above criteria from the proposed asylum bar. Asylum officers or immigration judges could thus make factual determinations regarding whether an alien fit into this category, making the exception more administrable and uniform in the asylum context. The Departments believe that this exception would provide important protections for domestic violence victims.

7. Convictions for Certain Misdemeanor Offenses

The proposed regulation would also make certain misdemeanor offenses bars to asylum based on the authority to create new grounds for ineligibility in section 208(b)(2)(C) of the INA, 8 U.S.C. 1158(b)(2)(C). Other provisions of the INA render aliens ineligible for other benefits based on convictions for certain misdemeanors. *See, e.g.,* INA 244(c)(2)(B)(i), 8 U.S.C. 1254a(c)(2)(B)(i) (barring aliens from eligibility for temporary protected status if they have been convicted of two or more misdemeanors in the United States). The proposed rule would designate offenses involving the use of fraudulent documents, the receipt of public benefits under false pretenses, or the possession or trafficking of drugs as disqualifying for purposes of asylum, even if such offenses are misdemeanors rather than felonies. The proposed

regulation would define a misdemeanor in this context as a crime defined as a misdemeanor by the jurisdiction of conviction, or that involves a potential penalty of one year or less in prison. Convictions for such misdemeanor offenses should be disqualifying because these offenses inherently undermine public safety or Government integrity.

The Departments also seek public comment on whether (and, if so, how) to differentiate among misdemeanor convictions that should warrant designation as grounds for ineligibility for asylum. Are there any additional misdemeanor convictions that should be bars to asylum eligibility? Conversely, should any of the below proposed misdemeanor bars be eliminated?

a. Fraudulent Document Offenses

The Departments propose to make aliens ineligible for asylum when they are convicted of a federal, state, tribal, or local misdemeanor for the possession or use, without lawful authority, of an identification document, authentication feature, or false identification document as defined in 18 U.S.C. 1028(d). Aliens convicted of falsifying passports or other identity documents where the term of imprisonment is at least a year are already ineligible for asylum (unless the conduct was a first-time offense for purposes of aiding a specified family member) because such conduct constitutes an aggravated felony under 8 U.S.C. 1101(a)(43)(P). Other felonies relating to fraudulent document offenses would be encompassed within the proposed eligibility bar for felony convictions.

The Attorney General and the Secretary believe that fraudulent document offenses pose such a significant affront to government integrity that even misdemeanor fraudulent document offenses should disqualify aliens from eligibility for asylum. Proper identity documentation is critical in the immigration context. *See Noriega-Perez* v. *United States,* 179 F.3d 1166, 1173–74 (9th Cir. 1999). Furthermore, as Congress acknowledged when it passed the REAL ID Act of 2005, Public Law 109–13, preserving the integrity of identity documents is critical for general national security and public safety reasons. The United States has taken concrete steps to protect all Government-issued identification documents by making the process to obtain identification documents more rigorous. *See, e.g.,* H.R. Rep. No. 109–72, at 179 (2005) (Conf. Rep.) (explaining that the REAL ID Act was passed in part to "correct the chronic weakness among many of the states in

the verification of identity" for the purpose of issuing Government identification documents).

The use of fraudulent documents, especially involving the appropriation of someone else's identity, so strongly undermines government integrity that it would be inappropriate to allow an individual convicted of such an offense to obtain the discretionary benefit of asylum.

Despite the concerns articulated above, the proposed rule would provide an exception for the bar to asylum based on convictions for use or misuse of identification documents if the alien can show that the document was presented before boarding a common carrier for the purpose of coming to the United States, that the document relates to the alien's eligibility to enter the United States, that the alien used the document to depart a country in which the alien has claimed a fear of persecution, and that the alien claimed a fear of persecution without delay upon presenting himself or herself to an immigration officer upon arrival at a United States port of entry. This exception is consistent with distinctions regarding certain document-related offenses made in *Matter of Pula,* 19 I&N Dec. at 474–75, existing statutes, *see* INA 274C(a)(6) and (d)(7), 8 U.S.C. 1324c(a)(6) and (d)(7), and existing regulations, *see* 8 CFR 270.2(j) and 1270.2(j); *see also Matter of Kasinga,* 21 I&N Dec. 357, 368 (BIA 1996) (use of fraudulent passport to come to the United States was not a significant adverse factor where, upon arrival, applicant told the immigration inspector the truth). Other than this exception, aliens seeking to enter, remain, obtain employment, or obtain benefits and services who are convicted of using false or fraudulent documents should not be eligible for asylum.

b. Public Benefits Offenses

Many aliens are legally entitled to receive certain categories of federal public benefits. 8 U.S.C. 1611, 1641. The unlawful receipt of public benefits, however, burdens taxpayers and drains a system intended to assist lawful beneficiaries. The inherently pernicious nature of such conduct has previously led the Government to prioritize enforcement of the immigration laws against such offenders, *see* Enhancing Public Safety in the Interior of the United States, Exec. Order No. 13768, 82 FR 8799 (Jan. 25, 2017), and this pernicious conduct warrants the use of the Attorney General and the Secretary's authority to bar convicted individuals

from receiving the discretionary benefit of asylum.[8]

c. Controlled Substances Offenses

Relying on the authority in section 208(b)(2)(C) of the INA, 8 U.S.C. 1158(b)(2)(C), the Departments propose to make aliens ineligible for asylum when they are convicted of a federal, state, tribal, or local misdemeanor involving controlled-substances offenses. Specifically, the Departments propose that a conviction for possession or trafficking of a controlled substance or controlled-substance paraphernalia, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, should disqualify an alien from eligibility for asylum.

Aliens who violate controlled substance laws may be removable, *see* INA 212(a)(2)(A)(i)(II), 237(a)(2)(B)(i), 8 U.S.C. 1182(a)(2)(A)(i)(II), 1227(a)(2)(B)(i), and they would already be barred from receiving asylum to the extent a controlled-substance offense constitutes an aggravated felony, *see* INA 208(b)(2)(B)(i), 8 U.S.C. 1158(b)(2)(B)(i); *see also* INA 101(a)(43)(B), 8 U.S.C. 1101(a)(43)(B); *United States* v. *Valdivia-Flores,* 876 F.3d 1201, 1206–07 (9th Cir. 2017) (controlled-substances offenses are aggravated felonies under the INA if they meet the definition of trafficking or involve state analogues to federal trafficking offenses). Furthermore, in cases that the courts of appeals have often upheld, the Board has concluded that various controlled-substances offenses can constitute particularly serious crimes even if they do not rise to the level of aggravated felonies. *See, e.g., Herrera-Davila* v. *Sessions,* 725 F. App'x 589, 590 (9th Cir. 2018) (the Board and immigration judge did not err in determining that an immigrant's conviction for drug possession constituted a particularly serious crime for both asylum and withholding of removal); *Vaskovska* v. *Lynch,* 655 F. App'x 880, 884 (2d Cir. 2016) (the Board did not err in determining that an alien's conviction for drug possession was "a particularly serious crime rendering her ineligible for asylum and withholding of removal"); *Bertrand* v. *Holder,* 448 F. App'x 744, 745 (9th Cir. 2011) (the Board did not err in determining that an alien's conviction for selling cannabis constituted a

particularly serious crime for purposes of both asylum and withholding of removal). Additionally, drug paraphernalia possession can include certain equipment associated with the use, manufacture, packaging, or sale of illegal drugs. *See, e.g.,* 21 U.S.C. 863(d). Under the proposed eligibility bar for felonies, all felony convictions relating to controlled substances would become a basis for ineligibility for asylum.

The Departments further propose to implement a new bar for asylum to include convictions for misdemeanors involving the trafficking or possession of controlled substances. Both possessors and traffickers of controlled substances pose a direct threat to the public health and safety interests of the United States, and they should not be entitled to the benefit of asylum. The harmful effects of controlled substance offenses have been recognized consistently by policymakers and courts. "[F]ar more people die from the misuse of opioids in the United States each year than from road traffic accidents or violence." United Nations Office on Drugs and Crime, World Drug Report: Executive Summary, Conclusions, and Policy Implications 10 (2017). As Attorney General Ashcroft previously recognized in an immigration opinion, "[t]he harmful effect to society from drug offenses has consistently been recognized by Congress in the clear distinctions and disparate statutory treatment it has drawn between drug offenses and other crimes." *Matter of Y–L–,* 23 I&N Dec. 270, 275 (A.G. 2002). He concluded that the "unfortunate situation" of drug abuse and related crime "has reached epidemic proportions and . . . tears the very fabric of American society." *Id.* The federal courts have agreed that drug offenses are serious, and have noted that "immigration laws clearly reflect strong congressional policy against lenient treatment of drug offenders." *Ayala-Chavez* v. *U.S. INS,* 944 F.2d 638 (9th Cir. 1991) (quoting *Blackwood* v. *INS,* 803 F.2d 1165, 1167 (11th Cir. 1988)); *see also Hazzard* v. *INS,* 951 F.2d 435, 438 (1st Cir. 1991); *cf. Mason* v. *Brooks,* 862 F.2d 190, 194 (9th Cir. 1988) ("Congress has forcefully expressed our national policy against persons who possess controlled substances by enacting laws . . . to exclude them from the United States if they are aliens.").

For these reasons, the proposed bar on asylum eligibility is consistent with the INA's current treatment of controlled-substance offenses. Nevertheless, the Departments also propose a limited exception to the proposed bar for convictions involving a single offense involving possession for one's own use

of 30 grams or less of marijuana. That exception would be consistent with an existing exception in the removability context: One who is convicted of a single offense of simple possession of marijuana is not automatically removable under the INA. *See* INA 237(a)(2)(B)(i), 8 U.S.C. 1227(a)(2)(B)(i). An alien with the same conviction would be inadmissible, but has a statutory right to request a waiver, which the Attorney General or the Secretary may grant in his or her discretion. *See* INA 212(a)(2)(A)(i)(II), (h), 8 U.S.C. 1182(a)(2)(A)(i)(II), (h); 8 CFR 212.7(d) and 1212.7(d); *see also* INA 103(a), 8 U.S.C. 1103(a).

The Departments seek public comment on how to differentiate among controlled substance offenses. Are there offenses that are currently designated as a controlled substance offense in one or more relevant jurisdictions in the United States that should not be categorical bars to asylum eligibility? In addition to seeking public comment on whether this proposed definition is over-inclusive, the Departments seek comment on whether it might be under-inclusive: Are there crimes that would not fall under this definition that should be made categorical bars?

*B. Clarifying the Effect of Criminal Convictions*

The proposed regulations governing ineligibility for asylum would also set forth criteria for determining whether a vacated, expunged, or modified conviction or sentence should be recognized for purposes of determining whether an alien is eligible for asylum. The proposed rule would apply the same set of principles to federal, state, tribal, or local convictions that are relevant to the eligibility bars described above. The rule would not apply to convictions that exist prior to the effective date of the proposed regulation. For convictions or sentences imposed thereafter, the proposed rule would provide that (1) vacated or expunged convictions, or modified convictions or sentences, remain valid for purposes of ascertaining eligibility for asylum if courts took such action for rehabilitative or immigration purposes; (2) an immigration judge or other adjudicator may look to evidence other than the order itself to determine whether the order was issued for rehabilitative or immigration purposes; (3) the alien bears the burden of establishing that the vacatur, expungement, or sentence modification was not for rehabilitative or immigration purposes; (4) the alien must further establish that the court had jurisdiction and authority to alter the relevant order;

---

[8] In Fiscal Year ("FY") 2017, approximately 20 percent of Government benefits fraud offenders at the federal level were not U.S. citizens. *See* U.S. Sentencing Comm'n, Quick Facts, *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Government_Benefits_Fraud_FY17.pdf.*

and (5) there exists a rebuttable presumption against the effectiveness, for immigration purposes, of the order vacating, expunging, or modifying a conviction or sentence if either (i) the order was entered after the initiation of any removal proceeding; or (ii) the alien moved for the order more than one year after the date of the original order of conviction or sentencing. The rule would thus ensure that aliens do not have their convictions vacated or modified for purported rehabilitative purposes that are, in fact, for immigration purposes.

The authority of the Attorney General and the Secretary to promulgate this proposed rule derives from sections 208(b)(2)(B)(ii) and (C) of the INA, 8 U.S.C. 1158(b)(2)(B)(ii) and (C). Prescribing the effect to be given to vacated, expunged, or modified convictions or sentences is an ancillary aspect of prescribing which criminal convictions should constitute "particularly serious crimes" for purposes of asylum ineligibility, as well as prescribing additional limitations or conditions on asylum eligibility. Additionally, the Attorney General possesses general authority under section 103(g)(2) of the INA, 8 U.S.C. 1103(g)(2), to "establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section." *See Tamenut,* 521 F.3d at 1004 (describing section 1103(g)(2) as "a general grant of regulatory authority").[9] Similarly, Congress has conferred upon the Secretary the authority to "establish such regulations . . . as he deems necessary for carrying out his authority under the provisions of [the INA]." INA 103(a)(1), (3), 8 U.S.C. 1103(a)(1), (3).

First, regarding the immigration effect of expungements, vacaturs, or sentence modifications, the rule would codify the principle set forth in *Matter of Thomas and Thompson,* 27 I&N Dec. 674 (A.G. 2019), that, if the underlying reason for the vacatur, expungement, or modification was for "rehabilitation or immigration hardship," the conviction remains effective for immigration purposes. *Id.* at 680; *see also id.*

(distinguishing between convictions vacated on the basis of a procedural or substantive defect in the underlying proceeding and those vacated because of post-conviction events, such as rehabilitation or immigration hardships); *Matter of Pickering,* 23 I&N Dec. 621 (BIA 2003) (finding that a conviction remains valid for immigration purposes if the conviction is vacated for reasons unrelated to the merits of the underlying criminal proceedings), *rev'd on other grounds by Pickering* v. *Gonzales,* 465 F.3d 263, 267–70 (6th Cir. 2006).

Courts of appeals have repeatedly accepted this principle. The Second Circuit deemed it "reasonable" for the Board to conclude in *Pickering* that convictions vacated for rehabilitative reasons are still effective for purposes of immigration consequences. *Saleh* v. *Gonzales,* 495 F.3d 17, 24 (2d Cir. 2007). That interpretation is "entirely consistent with Congress's intent in enacting the 1996 amendments to broaden the definition of conviction and advances the two purposes earlier identified by the Board: It focuses on the original attachment of guilt (which only a vacatur based on some procedural or substantive defect would call into question) and imposes uniformity on the enforcement of immigration laws." *Id.; see also Pinho* v. *Gonzales,* 432 F.3d 193, 215 (3d Cir. 2005) (applying *Pickering* to conclude that a conviction was vacated "based on a defect in the underlying criminal proceedings," not for rehabilitative or immigration purposes); *cf. Dickerson* v. *New Banner Inst., Inc.,* 460 U.S. 103, 120 (1983) (accepting that Congress need not "be bound by post-conviction state actions . . . that vary widely from State to State and that provide less than positive assurance that the person in question no longer poses an unacceptable risk of dangerousness").

For similar reasons, the rule would provide that court orders *modifying* criminal sentences for rehabilitative purposes should also have no effect on the alien's eligibility for asylum. *See Matter of Thomas and Thompson,* 27 I&N Dec. at 680 (explaining that "the *Pickering* test should apply to state-court orders that modify, clarify, or otherwise alter the term of imprisonment or sentence associated with a state-court conviction").

Second, to avoid gamesmanship and manipulation in the drafting of orders vacating a conviction or modifying a criminal sentence, the proposed regulations would allow an adjudicator to look beyond the face of the order to determine whether it was issued for rehabilitative or immigration purposes

and to determine whether the other requirements of proposed 8 CFR 208.13(c)(7)(v) and 1208.13(c)(7)(v) have been met, notwithstanding the putative basis of the order on its face. This rule is largely consistent with existing precedent. *See Rodriguez* v. *U.S. Att'y Gen.,* 844 F.3d 392, 396–97 (3d Cir. 2016) (applying this approach and looking to court records absent a clear explanation for the basis of the order in the order itself); *see also Cruz* v. *Att'y Gen.,* 452 F.3d 240, 244, 248 (3d Cir. 2006) (holding that the Board could reasonably determine that a conviction was vacated to avoid immigration consequences where a state prosecutor's letter stipulating the terms of a settlement agreement explicitly stated that the petitioner's scheduled deportation was a reason for the state's support for vacating the conviction).

Third, the proposed rule would clarify that the alien bears the burden of establishing that the vacatur, expungement, or sentence modification was not for rehabilitative or immigration purposes. Therefore, if the record is inconclusive based on a standard of preponderance of the evidence, the order should not be given effect for immigration purposes. The burden of proof is on the alien because the INA places the overall burden to establish asylum eligibility on the alien. *See* INA 208(b)(1)(B)(i), 8 U.S.C. 1158(b)(1)(B)(i); *Marikasi* v. *Lynch,* 840 F.3d 281, 287 (6th Cir. 2016). Where there is evidence that "one or more of the grounds for mandatory denial of the application for relief may apply," the applicant bears the burden of establishing that the bar at issue does not apply. 8 CFR 1240.8(d). Consistent with this principle, in an analogous context, the Eighth Circuit has held that, because the INA places the burden of proof on the alien to establish eligibility for cancellation of removal, a form of discretionary relief, the alien bears the burden to prove that he has no disqualifying convictions, including the burden to show that the vacatur of any disqualifying conviction was not for rehabilitative purposes. *Andrade-Zamora* v. *Lynch,* 814 F.3d 945, 949 (8th Cir. 2016).[10] This allocation of the

---

[9] The Attorney General has previously exercised his authorities to address related questions regarding what immigration effect should be given to expunged convictions. For example, in 1959, Attorney General Rogers concluded that certain narcotics convictions would survive subsequent expungement for purposes of the immigration laws. *Matter of A–F–,* 8 I&N Dec. 429, 445–46 (A.G. 1959). More recently, Attorney General Ashcroft held that, in light of the INA's definition of "conviction," an alien whose firearms conviction was expunged pursuant to section 1203.4 of the California Penal Code remained "convicted" for immigration purposes. *Matter of Luviano-Rodriguez,* 23 I&N Dec. 718, 718 (A.G. 2005).

[10] In contrast, when DHS uses a criminal conviction to prove deportability of an admitted alien, some courts have held that the Government bears the burden of establishing that a subsequent vacatur of that conviction should not be recognized because the vacatur was granted for immigration purposes. *See Nath* v. *Gonzales,* 467 F.3d 1185, 1188–89 (9th Cir. 2006); *Pickering,* 465 F.3d at 268–69 & n.4. Unlike applications for asylum and other forms of relief, where the alien has the burden of proving eligibility, the Government bears the burden of establishing that an admitted alien is

Continued

burden of proof makes sense because, as the Board and federal courts have noted, an alien is in the ''best position'' to present evidence on the issue. *Id.* at 950. The alien ''was a direct party to the criminal proceeding leading to the vacation of his conviction and is therefore in the best position to know why the conviction was vacated and to offer evidence related to the record of conviction.'' *Matter of Chavez-Martinez,* 24 I&N Dec. 272, 274 (BIA 2007); *see also Rumierz* v. *Gonzales,* 456 F.3d 31, 39 (1st Cir. 2006) (outlining several other reasons that placing the burden on the alien is rational, such as similar burden allocations in the context of criminal law and habeas petitions).

Fourth, the rule would provide that the alien must establish that the court issuing an order vacating or expunging a conviction or modifying a sentence had jurisdiction and authority to do so. This requirement would be consistent with Board precedent, which provides that facially valid orders can be disregarded based on a lack of jurisdiction. *See, e.g., Matter of F-,* 8 I&N Dec. 251 (BIA 1959) (''[T]he presumption of regularity and jurisdiction [of a state court order] may be overcome by extrinsic evidence or by the record itself.''); *cf. Adam* v. *Saenger,* 303 U.S. 59, 62 (1938) (''If it appears on its face to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself. . . . But in a suit upon the judgment of another state the jurisdiction of the court which rendered it is open to judicial inquiry . . . and when the matter of fact or law on which jurisdiction depends was not litigated in the original suit it is a matter to be adjudicated in the suit founded upon the judgment.'' (citations omitted)). In short, an order purporting to vacate, expunge, or otherwise modify a conviction or sentence is inoperative for purposes of immigration law if the state court lacked jurisdiction over the subject matter or the parties to the action.

Jurisdictional defects in court orders might arise in a number of ways. For example, in *United States* v. *Garza-Mendez,* 735 F.3d 1284 (11th Cir. 2013), a criminal sentencing case, the Eleventh Circuit refused to recognize a clarification order issued by a state judge after the sentencing judge had ordered the defendant to serve 12 months of confinement. The Eleventh Circuit rejected the ''subjective,

interpretive clarification order,'' noting that it was obtained from a different judge, long after entry of the original sentence, for the purpose of preventing enhancement of the defendant's sentence for unlawful reentry in federal court. *Id.* at 1289; *cf. Herrera* v. *U.S. Att'y Gen.,* 811 F.3d 1298, 1299–1301 (11th Cir. 2016) (affirming a Board decision declining to give effect to orders clarifying that defendants were never sentenced to terms of confinement when the original sentencing orders clearly stated to the contrary). A jurisdictional defect could also arise where state law limits the court's authority to grant post-conviction relief in certain ways, such as by imposing a time limitation. *See Matter of Estrada,* 26 I&N Dec. at 756 (noting that section 17–10–1(f) of the Georgia Code Annotated imposes strict time limits with respect to a sentencing court's ability to change or ''modify'' a sentence).

Finally, the proposed rule creates a rebuttable presumption that the order vacating or expunging the conviction or modifying the sentence was issued for immigration purposes if either (1) the order was entered after the initiation of any proceeding to remove the alien from the United States; or (2) the alien moved for the order more than one year after the date of the original order of conviction or sentencing.

Precedents establish that the timing of such a process is relevant to whether the resulting order should be recognized for immigration purposes. The initiation of such a process after removal proceedings have commenced naturally raises an inference that the resulting order was issued for immigration or rehabilitative purposes. For instance, in *Andrade-Zamora,* the Eighth Circuit refused to credit a state court's vacatur of a conviction when the vacatur occurred two weeks after the Government commenced removal proceedings based on the conviction, and where the state court also modified the alien's sentence for a different conviction in an apparent attempt to fit the conviction within an exception to a criminal ground of removability. 814 F.3d at 949. The court affirmed the Board's refusal to recognize the vacatur and modification, reasoning: ''The timing and effect of the order . . . raise an inference the state court did not vacate the conviction on a substantive or procedural ground, but rather to avoid the immigration consequences of the conviction.'' *Id.* at 949–50.

Further, the rule would create a rebuttable presumption providing that if more than a year has passed between the original conviction and the alien's

effort to seek a subsequent vacatur or expungement of a conviction, or the modification of sentence, the immigration adjudicator should weigh that fact against recognizing the vacatur or modification. It is reasonable to conclude that an alien who has a meritorious challenge to a criminal conviction based on a procedural or substantive defect is more likely to seek post-conviction relief sooner than an alien who is seeking relief on rehabilitative grounds, and who might delay such a challenge until DHS commences immigration proceedings or attempts to remove the alien. *See Rumierz,* 456 F.3d at 38 (affirming the Board's refusal to recognize a vacatur and the Board's reasoning that ''Rumierz could easily have sought to vacate the January 1994 Vermont conviction and have presented the vacated conviction to the [Board] in the six years before the [Board's] 2000 order''). This rule promotes finality in immigration proceedings by encouraging an alien to act diligently if there is a legitimate basis to challenge a conviction or sentence.

### C. Reconsiderations of Discretionary Denials of Asylum

The proposed rule would remove the automatic review of a discretionary denial of an alien's asylum application by removing and reserving paragraph (e) in 8 CFR 208.16 and 1208.16. The present regulation provides that the denial of asylum shall be reconsidered in the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation or removal under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him or her. Factors to be considered include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country. This provision, however, has proved confusing, inefficient, and unnecessary.

The courts of appeals have expressed ongoing confusion related to this provision. For example, the regulation states that when an asylum application is denied in the exercise of discretion, but withholding of removal is granted, ''the denial of asylum shall be reconsidered,'' but the regulation does not say who shall reconsider the denial, when the reconsideration shall occur, or how the reconsideration is to be initiated. *See Shantu* v. *Lynch,* 654 F. App'x 608, 613–14 (4th Cir. 2016) (discussing these ambiguities); *see also*

deportable by clear and convincing evidence. INA 240(c)(3)(A), 8 U.S.C. 1229a(c)(3)(A).

*Huang* v. *INS,* 436 F.3d 89, 93 (2d Cir. 2006). These ambiguities have not been "definitively resolved," *Shantu,* 654 F. App'x at 614, and continued litigation on these questions would be an ongoing burden for applicants, the immigration system, and courts.

Further, mandating that the decision maker reevaluate the very issue just decided is an inefficient practice that, in the view of the Departments, grants insufficient deference to the original fact finding and exercise of discretion. The regulation also appears unnecessary given that other regulations provide multiple avenues to challenge or otherwise seek to change a discretionary denial of asylum coupled with a grant of withholding of removal.[11] First, an immigration judge may reconsider that decision upon his or her own motion. 8 CFR 1003.23(b)(1). Second, the alien may file a motion to reconsider. *Id.* Third, the alien may also appeal the decision to the Board. 8 CFR 1003.38. The existence of at least three alternative processes for altering a discretionary denial of asylum obviates the need for a mandatory fourth. Moreover, the objective of facilitating family reunification, *see Huang,* 436 F.3d at 93 (describing 8 CFR 1208.16(e) as "manifestly a law designed to further family reunification"), can be fulfilled even in the absence of the existing reconsideration provision because the immigration judge (or other decision maker) already considers these factors when making a discretionary decision in the first instance, *see Fisenko* v. *Lynch,* 826 F.3d 287, 292 (6th Cir. 2016) (stating that "a crucial factor in weighing asylum as a discretionary matter' is family reunification" (internal quotation marks and citation omitted)).

## IV. Regulatory Requirements

### A. Regulatory Flexibility Act

The Departments have reviewed this proposed rule in accordance with the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*)) and have determined that this rule will not have a significant economic impact on a substantial number of small entities. The rule would not regulate "small entities" as that term is defined in 5 U.S.C. 601(6). Only individuals, rather than entities, are eligible to apply for asylum, and only individuals are eligible to apply for asylum or are otherwise placed in immigration proceedings.

### B. Unfunded Mandates Reform Act of 1995

This proposed rule will not result in the expenditure by state, local, and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995. *See* 2 U.S.C. 1532(a).

### C. Congressional Review Act

The Office of Information and Regulatory Affairs has determined that this proposed rule is not a major rule as defined by section 804 of the Congressional Review Act. 5 U.S.C. 804(2). This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets.

### D. Executive Order 12866 (Regulatory Planning and Review), Executive Order 13563 (Improving Regulation and Regulatory Review), and Executive Order 13771 (Reducing Regulation and Controlling Regulatory Costs)

The Office of Information and Regulatory Affairs, Office of Management and Budget (OMB), has designated this rule a "significant regulatory action" under section 3(f)(4) of Executive Order 12866, but not an economically significant regulatory action. Accordingly, the rule has been submitted to OMB for review. The Departments certify that this rule has been drafted in accordance with the principles of Executive Order 12866, section 1(b), Executive Order 13563, and Executive Order 13771.

Executive Orders 12866 and 13563 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health, and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of using the best available methods to quantify costs and benefits, reducing costs, harmonizing rules, and promoting flexibility. Similarly, Executive Order 13771 requires agencies to manage both the public and private costs of regulatory actions.

The proposed regulation would provide seven additional mandatory bars to eligibility for asylum pursuant to the Attorney General and the Secretary's authorities under sections 208(b)(2)(B)(ii), 208(b)(2)(C), and 208(d)(5) of the INA.[12] The proposed rule would add bars on eligibility for aliens who commit certain offenses in the United States after entering the country. Those bars would apply to aliens who are convicted of (1) a felony under federal or state law; (2) an offense under 8 U.S.C. 1324(a)(1)(A) or 1324(a)(1)(2) (Alien Smuggling or Harboring); (3) an offense under 8 U.S.C. 1326 (Illegal Reentry); (4) a federal, state, tribal, or local crime involving criminal street gang activity; (5) certain federal, state, tribal, or local offenses concerning the operation of a motor vehicle while under the influence of an intoxicant; (6) a federal, state, tribal, or local domestic violence offense, or who are found by an adjudicator to have engaged in acts of battery or extreme cruelty in a domestic context, even if no conviction resulted; and (7) certain misdemeanors under federal or state law for offenses related to false identification; the unlawful receipt of public benefits from a federal, state, tribal, or local entity; or the possession or trafficking of a controlled substance or controlled-substance paraphernalia.

The seven proposed bars would be in addition to the existing mandatory bars relating to the persecution of others, convictions for particularly serious crimes, commission of serious nonpolitical crimes, security threats, terrorist activity, and firm resettlement in another country that are currently contained in the INA and its implementing regulations. *See* INA 208(b)(2); 8 CFR 208.13 and 1208.13. Under the current statutory and regulatory framework, asylum officers and immigration judges consider the applicability of mandatory bars to the relief of asylum in every proceeding involving an alien who has submitted an I–589 application for asylum. Although the proposed regulation would expand the mandatory bars to asylum, the proposed regulation does not change the nature or scope of the role of an immigration judge or an asylum officer during proceedings for consideration of asylum applications. Immigration judges and asylum officers are already trained to consider both an alien's previous conduct and criminal

---

[11] With respect to the DHS regulation at 8 CFR 208.16(e), if USCIS denies an individual's asylum application on discretionary grounds, USCIS does not have jurisdiction to consider withholding of removal eligibility because withholding of removal determinations are made by immigration judges and the Board.

[12] As discussed further below, the proposed regulation would not otherwise impact the ability of an alien who is denied asylum to receive the protection of withholding of removal under the INA or withholding of removal or deferral of removal under the CAT.

record to determine whether any immigration consequences result, and the proposed rule does not propose any adjudications that are more challenging than those that are already conducted. For example, immigration judges already consider the documentation of an alien's criminal record that is filed by the alien, the alien's representative, or the DHS representative in order to determine whether one of the mandatory bars applies and whether the alien warrants asylum as a matter of discretion. Because the proposed bars all relate to an alien's criminal convictions or other criminal conduct, adjudicators will conduct the same analysis to determine the applicability of the bars proposed by the rule.[13] The Departments do not expect the proposed additional mandatory bars to increase the adjudication time for immigration court proceedings involving asylum applications.

The Departments note that the proposed expansion of the mandatory bars for asylum would likely result in fewer asylum grants annually;[14] however, because asylum applications are inherently fact-specific, and because there may be multiple bases for denying an asylum application, neither the Department of Justice ("DOJ") nor DHS can quantify precisely the expected decrease. An alien who would be barred from asylum as a result of the proposed rule may still be eligible to apply for the protection of withholding of removal under section 241(b)(3) of the INA or withholding of removal or deferral of removal under regulations implementing U.S. obligations under Article 3 of the CAT. *See* INA 241(b)(3), 8 U.S.C. 1231(b)(3); 8 CFR 208.16, 208.17 through 18, 1208.16, and 1208.17 through 18. For those aliens barred from asylum under this rule who would otherwise be positively adjudicated for asylum, it is possible they would qualify for withholding (provided a bar to withholding did not apply separate and apart from this rule).[15] To the extent there are any impacts of this rule, they would almost exclusively fall on that population.[16]

The full extent of the impacts on this population is unclear and would depend on the specific circumstances and personal characteristics of each alien, and neither DHS nor DOJ collects such data at such a level of granularity. Both asylum applicants and those who receive withholding of removal may obtain work authorization in the United States. Although asylees may apply for lawful permanent resident status and later citizenship, they are not required to do so, and some do not. Further, although asylees may bring certain family members to the United States, not all asylees have family members or family members that wish to leave their home countries. Moreover, family members of aliens granted withholding of removal may have valid asylum claims in their own right, which would provide them with a potential path to the United States as well. The only clear impact is that aliens granted withholding of removal generally may not travel outside the United States without executing their underlying order of removal and, thus, may not be allowed to return to the United States; however, even in that situation—depending on the destination of their travel—they may have a prima facie case for another grant of withholding of removal should they attempt to reenter. In short, there is no precise quantification available for the impact, if any, of this rule beyond the general notion that it will likely result in fewer grants of asylum on the whole.

Applications for withholding of removal typically require a similar amount of in-court time to complete as an asylum application due to a similar nucleus of facts. 8 CFR 1208.3(b) (an asylum application is deemed to be an application for withholding of removal). In addition, this proposed rule would not affect the eligibility of applicants for the employment authorization documents available to recipients of those protections and during the pendency of the consideration of the application in accordance with the current regulations and agency procedures. *See* 8 CFR 274a.12(c)(8) and (18), 208.7, and 1208.7.

The proposed rule would also remove the provision at 8 CFR 208.16(e) and 1208.16(e) regarding reconsideration of discretionary denials of asylum. This change would have no impact on DHS adjudicative operations because DHS does not adjudicate withholding requests. DOJ estimates that immigration judges nationwide must apply 8 CFR 1208.16(e) in approximately 800 cases per year on average.[17] The removal of the requirement to reconsider a discretionary denial would increase immigration court efficiencies and reduce any cost from the increased adjudication time by no longer requiring a second review of the same application by the same immigration judge. This impact, however, would likely be minor because of the small number of affected cases. Accordingly, DOJ assesses that removal of paragraphs 8 CFR 208.16(e) and 1208.16(e) would not increase any EOIR costs or operations, and would, if anything, result in a small increase in efficiency. The Departments note that removal of 8 CFR 208.16(e) and 1208.16(e) may have a marginal cost for aliens in immigration court proceedings by removing one avenue for an alien who would otherwise be denied asylum as a matter of discretion to be granted that relief. DOJ notes, however, that of the average of 800 aliens situated as such each year during the last ten years, an average of fewer than 150, or 0.4%, of the average 38,000 total asylum completions [18] each year filed an appeal in their case, so the affected population is very small and the overall impact would be nominal at most.[19] Moreover, such aliens would retain the ability to file a motion to reconsider in such a situation and, thus, would not actually

---

[13] The Departments note that one of the newly proposed bars, regarding whether or not the alien has "engaged" in certain acts of battery or extreme cruelty, does not necessarily require a criminal conviction. The Departments believe that a criminal arrest or conviction is the most likely evidence to be filed with the immigration court related to this bar, but even in cases where no such evidence is available, the analysis by immigration judges related to this proposed bar is not an expansion from the current analysis immigration judges may conduct during the course of removal proceedings. *See, e.g.,* INA 212(a)(2)(C) (providing that an alien is inadmissible if "the Attorney General knows or has reason to believe" that the alien is an illicit trafficker of a controlled substance, regardless of whether the alien has a controlled substance-related conviction).

[14] In FY 2018, DOJ's immigration courts granted 13,169 applications for asylum.

[15] Because statutory withholding of removal has a higher burden of proof, an alien granted such protection would necessarily also meet the statutory burden of proof for asylum, but would not be otherwise eligible for asylum due to a statutory bar or as a matter of discretion. Because asylum applications may be denied for multiple reasons and because the proposed bars do not have analogues in existing immigration law, there is no precise data on how many otherwise grantable asylum applications would be denied using these bars and, thus, there is no way to calculate precisely how many aliens would be granted withholding. Further, because the immigration judge would have to adjudicate the application in either case, there is no cost to DOJ.

[16] In FY 2018, DOJ's immigration courts completed 45,923 cases with an application for asylum on file. For the first three quarters of FY 2018, 622 applicants were denied asylum but granted withholding.

[17] This approximation is based on the number of initial case completions with an asylum application on file that had a denial of asylum but a grant of withholding during FYs 2009 through the third quarter of 2018.

[18] Thirty-eight thousand is the average of completions of cases with an asylum application on file from years FY 2008 through FY 2018. Completions consist of both initial case completions and subsequent case completions.

[19] Because each case may have multiple bases for appeal and appeal bases are not tracked to specific levels of granularity, it is not possible to quantify precisely how many appeals were successful on this particular issue.

lose the opportunity for reconsideration of a discretionary denial.

For the reasons explained above, the expected costs of this proposed rule are likely to be *de minimis*. This proposed rule is accordingly exempt from Executive Order 13771. *See* Office of Mgmt. & Budget, Guidance Implementing Executive Order 13771, Titled "Reducing Regulation and Controlling Regulatory Costs" (2017).

*E. Executive Order 13132 (Federalism)*

This rule will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

*F. Executive Order 12988 (Civil Justice Reform)*

This rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

*G. Paperwork Reduction Act*

This rule does not propose new or revisions to existing "collection[s] of information" as that term is defined under the Paperwork Reduction Act of 1995, Public Law 104–13, 44 U.S.C. 3501 *et seq.,* and its implementing regulations, 5 CFR part 1320.

**List of Subjects in 8 CFR Parts 208 and 1208**

Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

**Proposed Regulatory Amendments**

**DEPARTMENT OF HOMELAND SECURITY**

Accordingly, for the reasons set forth in the preamble, the Acting Secretary of Homeland Security is proposing to amend 8 CFR part 208 as follows:

**PART 208—PROCEDURES FOR ASYLUM AND WITHHOLDING OF REMOVAL**

■ 1. The authority citation for part 208 continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1103, 1158, 1226, 1252, 1282; Title VII of Public Law 110–229, 8 CFR part 2.

■ 2. Section 208.13 is amended by adding paragraphs (c)(6) through (9) to read as follows:

**§ 208.13    Establishing asylum eligibility.**

\*    \*    \*    \*    \*

(c) \* \* \*

(6) Additional limitations on eligibility for asylum. For applications filed on or after [the effective date of the final rule], an alien shall be found ineligible for asylum if:

(i) The alien has been convicted on or after such date of an offense arising under sections 274(a)(1)(A), 274(a)(2), or 276 of the Act;

(ii) The alien has been convicted on or after such date of a Federal, State, tribal, or local crime that the Secretary knows or has reason to believe was committed in support, promotion, or furtherance of the activity of a criminal street gang as that term is defined either under the jurisdiction where the conviction occurred or in section 521(a) of title 18;

(iii) The alien has been convicted on or after such date of an offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law, in which such impaired driving was a cause of serious bodily injury or death of another person;

(iv)(A) The alien has been convicted on or after such date of a second or subsequent offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law;

(B) A finding under paragraph (c)(6)(iv)(A) of this section does not require the asylum officer to find the first conviction for driving while intoxicated or impaired (including a conviction for driving while under the influence of or impaired by alcohol or drugs) as a predicate offense. The asylum officer need only make a factual determination that the alien was previously convicted for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the convictions occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs);

(v)(A) The alien has been convicted on or after such date of a crime that involves conduct amounting to a crime of stalking; or a crime of child abuse,

child neglect, or child abandonment; or that involves conduct amounting to a domestic assault or battery offense, including a misdemeanor crime of domestic violence, as described in section 922(g)(9) of title 18, a misdemeanor crime of domestic violence as described in section 921(a)(33) of title 18, a crime of domestic violence as described in section 12291(a)(8) of title 34, or any crime based on conduct in which the alien harassed, coerced, intimidated, voluntarily or recklessly used (or threatened to use) force or violence against, or inflicted physical injury or physical pain, however slight, upon a person, and committed by:

*(1)* A current or former spouse of the person;

*(2)* An alien with whom the person shares a child in common;

*(3)* An alien who is cohabiting with or has cohabited with the person as a spouse;

*(4)* An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

*(5)* Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or unit of local government.

(B) In making a determination under paragraph (c)(6)(v)(A) of this section, including in determining the existence of a domestic relationship between the alien and the victim, the underlying conduct of the crime may be considered and the asylum officer is not limited to facts found by the criminal court or provided in the underlying record of conviction;

(C) An alien who was convicted of offenses described in paragraph (c)(6)(v)(A) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i) through (ii) of the Act.

(vi) The alien has been convicted on or after such date of—

(A) Any felony under Federal, State, tribal, or local law;

(B) Any misdemeanor offense under Federal, State, tribal, or local law involving:

*(1)* The possession or use of an identification document, authentication feature, or false identification document without lawful authority, unless the alien can establish that the conviction resulted from circumstances showing that the document was presented before boarding a common carrier, that the

document related to the alien's eligibility to enter the United States, that the alien used the document to depart a country in which the alien has claimed a fear of persecution, and that the alien claimed a fear of persecution without delay upon presenting himself or herself to an immigration officer upon arrival at a United States port of entry;

*(2)* The receipt of Federal public benefits, as defined in 8 U.S.C. 1611(c), from a Federal entity, or the receipt of similar public benefits from a State, tribal, or local entity, without lawful authority; or

*(3)* Possession or trafficking of a controlled substance or controlled-substance paraphernalia, other than a single offense involving possession for one's own use of 30 grams or less of marijuana;

*(vii)* There are serious reasons for believing the alien has engaged on or after such date in acts of battery or extreme cruelty as defined in 8 CFR 204.2(c)(1)(vi), upon a person, and committed by:

(A) A current or former spouse of the person;

(B) An alien with whom the person shares a child in common;

(C) An alien who is cohabiting with or has cohabited with the person as a spouse;

(D) An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

(E) Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or unit of local government, even if the acts did not result in a criminal conviction;

(F) Except that an alien who was convicted of offenses or engaged in conduct described in paragraph (c)(6)(vii) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i)–(ii) of the Act.

(7) For purposes of paragraph (c)(6) of this section:

(i) The term "felony" means any crime defined as a felony by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any crime punishable by more than one year of imprisonment.

(ii) The term "misdemeanor" means any crime defined as a misdemeanor by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any

crime not punishable by more than one year of imprisonment.

(iii) Whether any activity or conviction also may constitute a basis for removability under the Act is immaterial to a determination of asylum eligibility.

(iv) All references to a criminal offense or criminal conviction shall be deemed to include any attempt, conspiracy, or solicitation to commit the offense or any other inchoate form of the offense.

(v) No order vacating a conviction, modifying a sentence, clarifying a sentence, or otherwise altering a conviction or sentence, shall have any effect unless the asylum officer determines that—

(A) The court issuing the order had jurisdiction and authority to do so; and

(B) The order was not entered for rehabilitative purposes or for purposes of ameliorating the immigration consequences of the conviction or sentence.

(8) For purposes of paragraph (c)(7)(v)(B) of this section, the order shall be presumed to be for the purpose of ameliorating immigration consequences if:

(i) The order was entered after the initiation of any proceeding to remove the alien from the United States; or

(ii) The alien moved for the order more than one year after the date of the original order of conviction or sentencing.

(9) An asylum officer is authorized to look beyond the face of any order purporting to vacate a conviction, modify a sentence, or clarify a sentence to determine whether the requirements of paragraph (c)(7)(v) of this section have been met in order to determine whether such order should be given any effect under this section.

### § 208.16 [Amended]

■ 3. In § 208.16, remove and reserve paragraph (e).

## DEPARTMENT OF JUSTICE

Accordingly, for the reasons set forth in the preamble, the Attorney General proposes to amend 8 CFR part 1208 as follows:

## PART 1208—PROCEDURES FOR ASYLUM AND WITHHOLDING OF REMOVAL

■ 4. The authority citation for part 1208 continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1103, 1158, 1226, 1252, 1282; Title VII of Public Law 110–229.

■ 5. Section 1208.13 is amended by adding paragraphs (c)(6) through (9) to read as follows:

### § 1208.13 Establishing asylum eligibility.

\* \* \* \* \*

(c) \* \* \*

(6) Additional limitations on eligibility for asylum. For applications filed on or after [the effective date of the final rule], an alien shall be found ineligible for asylum if:

(i) The alien has been convicted on or after such date of an offense arising under sections 274(a)(1)(A), 274(a)(2), or 276 of the Act;

(ii) The alien has been convicted on or after such date of a Federal, State, tribal, or local crime that the Attorney General or Secretary knows or has reason to believe was committed in support, promotion, or furtherance of the activity of a criminal street gang as that term is defined under the jurisdiction where the conviction occurred or in section 521(a) of title 18;

(iii) The alien has been convicted on or after such date of an offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law, in which such impaired driving was a cause of serious bodily injury or death of another person;

(iv)(A) The alien has been convicted on or after such date of a second or subsequent offense for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the conviction occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs) without regard to whether the conviction is classified as a misdemeanor or felony under Federal, State, tribal, or local law;

(B) A finding under paragraph (c)(6)(iv)(A) of this section does not require the immigration judge to find the first conviction for driving while intoxicated or impaired (including a conviction for driving while under the influence of or impaired by alcohol or drugs) as a predicate offense. The immigration judge need only make a factual determination that the alien was previously convicted for driving while intoxicated or impaired as those terms are defined under the jurisdiction where the convictions occurred (including a conviction for driving while under the influence of or impaired by alcohol or drugs).

(v)(A) The alien has been convicted on or after such date of a crime that involves conduct amounting to a crime of stalking; or a crime of child abuse,

child neglect, or child abandonment; or that involves conduct amounting to a domestic assault or battery offense, including a misdemeanor crime of domestic violence, as described in section 922(g)(9) of title 18, a misdemeanor crime of domestic violence as described in section 921(a)(33) of title 18, a crime of domestic violence as described in section 12291(a)(8) of title 34, or any crime based on conduct in which the alien harassed, coerced, intimidated, voluntarily or recklessly used (or threatened to use) force or violence against, or inflicted physical injury or physical pain, however slight, upon a person, and committed by:

(*1*) A current or former spouse of the person;

(*2*) An alien with whom the person shares a child in common;

(*3*) An alien who is cohabiting with or has cohabited with the person as a spouse;

(*4*) An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

(*5*) Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or unit of local government.

(B) In making a determination under paragraph (c)(6)(v) of this section, including in determining the existence of a domestic relationship between the alien and the victim, the underlying conduct of the crime may be considered and the adjudicator is not limited to facts found by the criminal court or provided in the underlying record of conviction.

(C) An alien who was convicted of offenses or engaged in conduct described in paragraph (c)(6)(v)(A) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i) through (ii) of the Act.

(vi) The alien has been convicted on or after such date of—

(A) Any felony under Federal, State, tribal, or local law;

(B) Any misdemeanor offense under Federal, State, tribal, or local law involving

(*1*) The possession or use of an identification document, authentication feature, or false identification document without lawful authority, unless the alien can establish that the conviction

resulted from circumstances showing that the document was presented before boarding a common carrier, that the document related to the alien's eligibility to enter the United States, that the alien used the document to depart a country in which the alien has claimed a fear of persecution, and that the alien claimed a fear of persecution without delay upon presenting himself or herself to an immigration officer upon arrival at a United States port of entry;

(*2*) The receipt of Federal public benefits, as defined in 8 U.S.C. 1611(c), from a Federal entity, or the receipt of similar public benefits from a State, tribal, or local entity, without lawful authority; or

(*3*) Possession or trafficking of a controlled substance or controlled-substance paraphernalia, other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

(vii) There are serious reasons for believing the alien has engaged in or after such date in acts of battery or extreme cruelty as defined in 8 CFR 204.2(c)(1)(vi), upon a person, and committed by:

(A) A current or former spouse of the person;

(B) An alien with whom the person shares a child in common;

(C) An alien who is cohabiting with or has cohabited with the person as a spouse;

(D) An alien similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs; or

(E) Any other alien against a person who is protected from that alien's acts under the domestic or family violence laws of the United States or any State, tribal government, or unit of local government, even if the acts did not result in a criminal conviction;

(F) Except that an alien who was convicted of offenses or engaged in conduct described in paragraph (c)(6)(vii) of this section is not subject to ineligibility for asylum on that basis if the alien would be described in section 237(a)(7)(A) of the Act were the crimes or conduct considered grounds for deportability under section 237(a)(2)(E)(i)–(ii) of the Act.

(7) For purposes of paragraph (c)(6) of this section:

(i) The term "felony" means any crime defined as a felony by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any crime punishable by more than one year imprisonment.

(ii) The term "misdemeanor" means any crime defined as a misdemeanor by the relevant jurisdiction (Federal, State, tribal, or local) of conviction, or any crime not punishable by more than one year of imprisonment.

(iii) Whether any activity or convictions also may constitute a basis for removability under the Act is immaterial to a determination of asylum eligibility.

(iv) All references to a criminal offense or criminal conviction shall be deemed to include any attempt, conspiracy, or solicitation to commit the offense or any other inchoate form of the offense.

(v) No order vacating a conviction, modifying a sentence, clarifying a sentence, or otherwise altering a conviction or sentence, shall have any effect unless the asylum officer determines that—

(A) The court issuing the order had jurisdiction and authority to do so; and

(B) The order was not entered for rehabilitative purposes or for purposes of ameliorating the immigration consequences of the conviction or sentence.

(8) For purposes of paragraph (c)(7)(v)(B) of this section, the order shall be presumed to be for the purpose of ameliorating immigration consequences if:

(i) The order was entered after the initiation of any proceeding to remove the alien from the United States; or

(ii) The alien moved for the order more than one year after the date of the original order of conviction or sentencing.

(9) An immigration judge or other adjudicator is authorized to look beyond the face of any order purporting to vacate a conviction, modify a sentence, or clarify a sentence to determine whether the requirements of paragraph (c)(7)(v) of this section have been met in order to determine whether such order should be given any effect under this section.

### § 1208.16  [Amended]

■ 6. In § 1208.16, remove and reserve paragraph (e).

Dated: December 9, 2019.

**Chad F. Wolf,**

*Acting Secretary of Homeland Security.*

Dated: December 10, 2019.

**William P. Barr,**

*Attorney General.*

[FR Doc. 2019–27055 Filed 12–18–19; 8:45 am]

**BILLING CODE 9111–97–P 4410–30–P**