# EXHIBIT A

Susan M. Krumplitsch (Cal. Bar # 241016)
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, California 94303
T: (650) 833-2000
F: (650) 687-1230
susan.krumplitsch@us.dlapiper.com

Ellen Scordino (*pro hac vice* pending)
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110-1447
T: († 617) 406-6085
F: (617) 406-6195
ellen.scordino@us.dlapiper.com

Peter S. Marguiles (*pro hac vice* pending)
Roger Williams University School of Law[1]
8 Henry Dr.
Barrington, RI 02806
T: (401) 254-4564
pmargulies@rwu.edu

Shoba Sivaprasad Wadhia (*pro hac vice* pending)
Penn State Law[1]
Lewis Katz Building
University Park, PA 16802
T: (814) 865-3823
ssw11@psu.edu

*Amicus Curiae Immigration Law Professors*
Additional Attorneys listed in Signature

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO**

| | |
|---|---|
| PANGEA LEGAL SERVICES, et al., | Case No. 3:20-cv-7721 SI |
| Plaintiffs, | Honorable Susan Illston |
| vs. | **BRIEF OF IMMIGRATION PROFESSORS AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., , | |
| Defendants. | |

---

[1] Filed in individual capacity.  University affiliation for identification only.

**TABLE OF CONTENTS**

**Page**

INTEREST OF AMICI CURIAE ..................................................................................................1

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT .................................................................................................................................3

I. Taking Its Cue from International Law, Congress Carefully Crafted the Asylum Provision of 8 U.S.C. § 1158 to Only Authorize Limited Categorical Bars on Admission........................................................................................................................3

    A. Congress relied on international law to establish the framework for refugee adjudication. ........................................................................................................3

    B. Congress, through § 1158, prescribed limited categorical bars to asylum.............4

    C. The Attorney General's authority to designate an offense as a "particularly serious crime" is limited by the clear wording of 8 U.S.C. § 1158.........................5

II. The Rule Exceeds the Departments' Discretionary Authority for Denying Asylum.........6

    A. The Rule creates sweeping bars that go beyond the scope of the limited categorical bars incorporated into § 1158. ............................................................7

    B. The Department's Rule is not consistent with § 1158. .........................................7

    C. Without substantial justification, the Departments' Rule radically departs from the fact-intensive analysis required under many areas of § 1158..................8

III. Each of the Department's Categorical Exclusions are Inconsistent with 8 U.S.C. § 1158. ...........................................................................................................................9

    A. The inclusion of immigration offenses falls well outside the limited scope of categorical asylum bars authorized by Congress. .................................................9

    B. The categorical inclusion of "any felony" exceeds the parameters set by Congress. ...........................................................................................................10

    C. The inclusion of new misdemeanors and DUI offenses contravenes the statutory scheme. ................................................................................................10

    D. The inclusion of family related offenses falls well outside the limited Congressional categorical bars. ............................................................................11

    E. The inclusion of suspected gang offenses exceeds the scope of the limited Congressional categorical bars. ............................................................................11

IV. The Rule's Shifting of the Burden of Proof to the Asylum Applicant Is Inconsistent with the Asylum Protections of the INA. ......................................................................12

V. CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alim v. Gonzales*,
  446 F.3d 1239 (11th Cir. 2006)..................................................................................................12

*Barapind v. Reno*,
  225 F.3d 1100 (9th Cir. 2000)......................................................................................................3

*California v. Dep't of the Interior*,
  381 F. Supp. 3d 1153 (N.D. Cal. 2019) ......................................................................................1

*E. Bay Sanctuary Covenant v. Barr*,
  964 F.3d 832 (9th Cir. 2020)........................................................................................................7

*E. Bay Sanctuary Covenant v. Trump*,
  950 F.3d 1242 (9th Cir. 2020).............................................................................................*Passim*

*Matter of Frentescu*,
  18 I. & N. Dec. 244 (BIA 1982)..................................................................................................6

*INS v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) .............................................................................................2, 3, 4, 7, 8

*In re L-S-*,
  22 I. & N. Dec. 645 (BIA 1999)..................................................................................................9

*Marx v. General Revenue Corp.*,
  568 U.S. 371 (2013) .....................................................................................................................5

*McMullen v. INS*,
  788 F.2d 591 (9th Cir. 1986)........................................................................................................6

*Matter of N-A-M-*,
  24 I. & N. Dec. 336 (BIA 2007)..................................................................................................6

*R-S-C- v. Sessions*,
  869 F.3d 1176 (10th Cir. 2017).............................................................................................3, 4, 7

*Ramirez-Castro v. INS*,
  287 F.3d 1172 (9th Cir. 2002)....................................................................................................12

*Walters v. Metro. Educ. Enters., Inc.*,
  519 U.S. 202 (1997) .....................................................................................................................5

**Statutes**

8 U.S.C. §1101(a)(42)(A) .................................................................................................................4

8 U.S.C. § 1101(a)(43)(B) ..............................................................................................................10

8 U.S.C. § 1101(a)(43)(N) ................................................................................................................9

8 U.S.C. § 1101(a)(43)(O) ................................................................................................................9

8 U.S.C. § 1158 .........................................................................................................................*Passim*

8 U.S.C. § 1158(a)(1) .......................................................................................................................9

8 U.S.C. §1158(b)(1)(A) ...................................................................................................................4

8 U.S.C. § 1158(b)(2)(A)(i)–(vi) ..................................................................................................4, 10

8 U.S.C. § 1158(b)(2)(A)(ii) ..............................................................................................2, 5, 7, 8, 11

8 U.S.C. § 1158(b)(2)(B)(i) .....................................................................................................2, 6, 11

8 U.S.C. § 1158(b)(2)(B)(ii) ....................................................................................................2, 5, 6, 7

8 U.S.C. § 1158(b)(2)(C) .........................................................................................................2, 4, 6, 7

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ........................................................................................................2

8 U.S.C. § 1324(a)(1)(A) ..................................................................................................................9

8 U.S.C. § 1326 .................................................................................................................................9

8 U.S.C. § 1521 .................................................................................................................................4

Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 ........................................................2, 3, 4, 7

**Other Authorities**

H.R. Rep. No. 96-608 (1979) ............................................................................................................3

*Procedures for Asylum and Bars to Asylum Eligibility*,
   84 Fed. Reg. 69640 (Dec. 19, 2020) ...........................................................................................7

*Procedures for Asylum and Bars to Asylum Eligibility*,
   85 Fed. Reg. 67202 (Oct. 21, 2020) ....................................................................................*Passim*

Refugee Convention Article 33(2) ....................................................................................................4

S. Rep. No. 96-256 (1979) ................................................................................................................3

# INTEREST OF AMICI CURIAE[2]

Amici Curiae are Professors David Baluarte, Lenni B. Benson, Jennifer M. Chacón, Marisa S. Cianciarulo, Michael J. Churgin, Gabriel J. Chin, Ingrid Eagly, Stella Burch Elias, Kate Evans, Maryellen Fullerton, Denise L. Gilman, Lindsay M. Harris, Margaret Hu, Elizabeth Keyes, Peter Margulies, M. Isabel Medina, Jennifer Moore, Michael A. Olivas, Maureen A. Sweeney, Shoba Sivaprasad Wadhia, Michael J. Wishnie, and Stephen Yale-Loehr.

Amici Curiae are immigration law scholars who teach at institutions of higher education. They have produced extensive scholarship concerning immigration law, including its intersections with criminal and constitutional law and statutory interpretation. Many Amici Curiae have also represented noncitizens with criminal convictions in their immigration proceedings and, therefore, have experience concerning the practical application of immigration law. Amici Curiae submit this brief to explain why the Department of Justice and the Department of Homeland Security (collectively, the "Departments") recently published *Procedures for Asylum and Bars to Asylum Eligibility*, 85 Fed. Reg. 67202 (Oct. 21, 2020) (the "Rule") conflicts with the clear statutory language of the asylum provision of 8 U.S.C. § 1158.

# PRELIMINARY STATEMENT

Congress took great care in structuring our nation's asylum system. Drawing from principles contained in our nation's treaties, Congress crafted the asylum provision of 8 U.S.C. § 1158 to favor the protection of asylum seekers subject to limited categorical bars on admission. The Departments purport that the legal basis for the Rule can be found in the Attorney General's power to "establish additional limitations and conditions [on asylum], *consistent with* [the asylum provision]."

---

[2] Amici Curiae request that this court exercise its broad discretionary power to consider this brief. *California v. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019) ("As this Court has previously recognized, whether to allow Amici to file a brief is solely within the Court's discretion, and generally courts have exercised great liberality in permitting amicus briefs.") (internal quotations omitted). No party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except Amici Curiae, their members, or their counsel contributed money intended to fund the preparation or submission of this brief.

§ 1158(b)(2)(C) (emphasis added). But the Rule conflicts with the provision's carefully crafted constraints.

The detailed framework of asylum protections and bars on eligibility at § 1158's emerged from the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102. In enacting that landmark legislation, Congress relied on the 1951 Convention Relating to the Status of Refugees (the "Refugee Convention") and the 1967 U.N. Protocol Relating to the Status of Refugees (the "Refugee Protocol"). *INS v. Cardoza-Fonseca*, 480 U.S. 421, 436–37 (1987) (noting that the Refugee Act of 1980 brought U.S. law into conformance with the Refugee Protocol). For example, Article 33(2) of the Refugee Convention permits a state to bar a refugee "who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country." Congress imported this language into the asylum provision. § 1158(b)(2)(A)(ii).

While Congress modified the scope of the "particularly serious crime" bar, it has long been cabined. Current § 1158 deems certain crimes—"aggravated felonies" under immigration law—to be *per se* particularly serious, § 1158(b)(2)(B)(i), and empowers the Attorney General to designate other crimes as such by regulation, § 1158(b)(2)(B)(ii). However, many offenses are *not* "aggravated felonies." Moreover, Congress did not grant the Attorney General "sole . . . unreviewable discretion" to designate other offenses as particularly serious, although Congress knew how to do so. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I) (granting the Attorney General discretion to classify certain noncitizens as subject to "expedited" removal).

Congress's conspicuous failure to grant the Attorney General such sweeping power with respect to particularly serious crimes confirms that such designation must be tailored to the plain language of the "particularly serious crime" bar. That bar does not include *all* crimes, or even all "serious" crimes. Instead, it appends the adverb, "particularly," suggesting that the nature or impact of the crime must be distinctive to justify its inclusion. The Rule's indiscriminate expansion of categorical bars improperly circumvents Congress's tailoring and undermines § 1158's protections for asylum applicants.

On October 21, 2020, the Departments published the Rule which designates seven new categories of offenses and conduct as categorical bars under § 1158. The Rule includes immigration

offenses, nonviolent and non-aggravating felonies, misdemeanors and DUI offenses, family related offenses even if not supported by a final conviction, and suspected gang offenses. Moreover, without substantial justification, the Rule radically departs from the fact-intensive analysis required under many areas of § 1158 and improperly shifts the burden of proof to the asylum applicant—in direct conflict with the asylum protections of the Immigration and Nationality Act ("INA"). Given the Rule's incompatibility with § 1158, this Court should grant the Plaintiffs' Motion.

## ARGUMENT

**I. Taking Its Cue from International Law, Congress Carefully Crafted the Asylum Provision of 8 U.S.C. § 1158 to Only Authorize Limited Categorical Bars on Admission.**

**A. Congress relied on international law to establish the framework for refugee adjudication.**

When interpreting the asylum provisions of § 1158, it is critical to recognize that the INA's framework is firmly rooted in international law. Congress's reliance on international law as a guide imposes limits on the "particularly serious crime" bar to asylum. The new rule exceeds those limits.

In passing the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, Congress founded the U.S. asylum system on the United Nation's Refugee Convention and Refugee Protocol. Congress thereby intended to "bring United States refugee law into conformity with the" Refugee Protocol and "incorporate[] the substantive provisions" of the Refugee Convention into the country's asylum system. *Barapind v. Reno*, 225 F.3d 1100, 1106 (9th Cir. 2000); *see also* H.R. Rep. No. 96-608, at 18 (1979) (recognizing Congress's intent to codify international law "so that U.S. statutory law clearly reflects our legal obligations under international agreements."); H.R. Rep. No. 96-608, at 17 (1979) (noting that proposed asylum and withholding provisions were designed to "conform[] United States statutory law to our obligations under Article 33" of the Refugee Convention); S. Rep. No. 96-256, at 4 (1979) (same); *R-S-C- v. Sessions*, 869 F.3d 1176, 1178 (10th Cir. 2017) ("Congress imbued these international commitments with the force of law when it enacted the Refugee Act . . ."); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 436–37 (1987) (explaining that Congress enacted the Refugee Act of 1980 "to bring United States refugee law into conformance with the [Refugee Protocol]").

Given Congress's clear intent to "imbue[] these international commitments with the force of law," *R-S-C-*, 869 F.3d at 1178, a proper interpretation of § 1158 requires that statute to be read consistently with the protective purposes of the Refugee Protocol and Refugee Convention. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 437 (1987) (relying on the Refugee Protocol to interpret INA's definition of "refugee" given that Congress adopted a "virtually identical" definition to the one used in the Refugee Protocol and where the Congressional record contained "many statements indicating Congress's intent that the new statutory definition of 'refugee' be interpreted in conformance with the Protocol's definition").

### B. Congress, through § 1158, prescribed limited categorical bars to asylum.

In passing the Refugee Act, Congress amended the INA to create a formal process that a person could apply for asylum in the United States. Pub. L. No. 96-212, 94 Stat. 102, at § 101(a) (codified at 8 U.S.C. § 1521 Note). Today, the INA allows an individual to apply for asylum in the United States "because of persecution or a well-founded fear of persecution" on a protected ground. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). The INA further created certain limited bars to asylum seekers: a person cannot obtain asylum in United States if they: (i) participated in the persecution of others; (ii) have "been convicted by a final judgment of a particularly serious crime," such that they "constitut[ed] a danger to the community of the United States"; (iii) committed a "serious nonpolitical crime outside the United States"; (iv) are "a danger to the security of the United States"; (v) engaged in terrorist activity or been part of a terrorist group; or (vi) "firmly resettled in another country." *See id.* § 1158(b)(2)(A)(i)–(vi). Congress based the exclusions found in § 1158 on Article 33(2) of the Refugee Convention, which bars "a refugee whom there are reasonable grounds for regarding as a danger to the security of the country" or "who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country" from seeking asylum.

The new Rule centers on the Attorney General's power to "establish additional limitations and conditions [on asylum], *consistent with this section* [the asylum provision]." 8 U.S.C. § 1158(b)(2)(C) (emphasis added). Interpreting this authority to impose "additional terms and conditions" on asylum requires giving the other terms of § 1158 some effect, including their

restraints on executive branch discretion. *See Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 209 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect.").

While the Rule disclaims reliance on the Attorney General's statutory authority to designate certain crimes as "particularly serious," 8 U.S.C. § 1158(b)(2)(B)(ii), its expansion of categorical bars to asylum requires review in light of the plain constraints on the particularly serious crime bar. In examining the phrase "particularly serious crime," a court should first look to the plain language of the statutory provision. The bar flags only those crimes that are "*particularly* serious." The adverb "particularly" connotes crimes that are distinctive in some articulable fashion. In addition, § 1158(b)(2)(A)(ii) bars an asylum applicant if he or she, "having been convicted by a final judgment of a particularly serious crime, *constitutes a danger to the community of the United States*." (emphasis added). The primary goal of the "particularly serious crime" exclusion, therefore, is protecting "the safety of those already in the United States." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1275 (9th Cir. 2020) ("*EBSC II*"). Congress further limited the "particularly serious crimes" exclusion by requiring that the crime resulted in a "convict[ion] by a final judgment." 8 U.S.C. § 1158(b)(2)(A)(ii). By requiring a final judgement, Congress ensured that an applicant would not be denied asylum by mere allegations, suspected criminal activity, or unresolved prosecutions. *Id*.

### C. The Attorney General's authority to designate an offense as a "particularly serious crime" is limited by the clear wording of 8 U.S.C. § 1158.

While Congress has authorized the Attorney General to designate certain offenses as "particularly serious crimes," this authority is not boundless. 8 U.S.C. § 1158(b)(2)(B)(ii). To the contrary, the Attorney General's authority is cabined by both the language of the "particularly serious crime" bar and the overall statutory plan for protecting refugees. Under the approach that prevailed prior to the Rule, apart from aggravated felonies, the assessment of whether a crime was a "particularly serious crime" required an intensive fact-based assessment considering both mitigating and extenuating circumstances.

This fact-based analysis considered, among other things, the nature of the offense, the criminal sentence imposed, and whether the offense itself indicates that the person is likely to be a danger to the community. *See Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982), *superseded on other grounds by statute*, Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, *as recognized in Matter of N-A-M-*, 24 I. & N. Dec. 336, 339 (BIA 2007); *McMullen v. INS*, 788 F.2d 591, 596 (9th Cir. 1986) (noting that "a balancing approach including consideration of the offense's 'proportionality' to its objective and its degree of atrocity makes good sense"), *overruled on other grounds by Barapind v. Enomoto*, 400 F.3d 744 (9th Cir. 2000).

It is true that Congress has enacted one categorical rule—the *per se* inclusion of aggravated felonies as particularly serious crimes under 8 U.S.C. § 1158(b)(2)(B)(i)—and has authorized the Attorney General to designate other crimes as particularly serious crimes, § 1158(b)(2)(B)(ii). These provisions are already in tension with international refugee protections. The Rule, however, severely exacerbates those tensions without a clear delegation from Congress, especially because it disclaims reliance on the Attorney General's designation authority under § 1158(b)(2)(B)(ii), and instead rests solely on the Attorney General's authority to enact limits on asylum that are "consistent" with the asylum provision. § 1158(b)(2)(C). Contrary to the Departments' justification, consistency with § 1158 requires some limits on designation of offenses that categorically bar asylum. The Attorney General cannot effectively repeal that asylum system by rewriting the exclusionary bars via executive fiat.

## II.   The Rule Exceeds the Departments' Discretionary Authority for Denying Asylum.

"Federal courts are the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *EBSC II*, 950 F.3d at 1272 (internal citation omitted). The Rule applies constructions contrary to clear congressional intent—prohibiting asylum for broad categories of minor criminal convictions and even merely suspected conduct. This broad proposal is inconsistent with Congress's intent to exclude only asylum seekers who pose a threat to society.

### A. The Rule creates sweeping bars that go beyond the scope of the limited categorical bars incorporated into § 1158.

To promulgate the new categorical asylum bars, the Rule invokes the authority of § 1158(b)(2)(B)(ii) which allows the Attorney General to "establish additional limitations and conditions, consistent with this section, under which [a noncitizen] shall be ineligible for asylum." 84 Fed. Reg. at 69643–44. However, the Attorney General's authority to establish limits "consistent with" § 1158 does not permit an unbounded expansion of categorical bars.

The "words 'consistent with'" in § 1158(b)(2)(C) "limit[ ] the scope of that authority." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 848 (9th Cir. 2020) ("*EBSC III*"). In fact, "Congress went out of its way to insert the 'consistent with' language," underscoring "the importance Congress attached to the constraints on the Attorney General's discretion to prescribe criteria for asylum eligibility." *Id*. at 849. Any "additional limitations and conditions under § 1158(b)(2)(C) must be consistent with the core principle of" § 1158(b)'s statutory eligibility bars—barring only people "who pose a threat to society." *Id.* at 848.

### B. The Department's Rule is not consistent with § 1158.

The core statutory principle, consistent with underlying treaty obligations, is to exclude people "who pose a threat to society." *EBSC III*, 964 F.3d at 848. The new bars do not comport with this objective and will exclude a much broader population. The Rule adds minor offenses to the list of categorical bars—each falls well below the threshold of posing a threat to society.

The Departments attempt to add seven new categories of barred conduct. Each category falls short of the serious crime threshold. For example, the Rule would exclude people from asylum based on domestic criminal convictions (or allegations) that do not meet the threshold Congress adopted "to conform . . . our asylum law to the United Nations Protocol to which the United States [is] bound," *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987); and that Congress explicitly imbued "with the force of law when it enacted the Refugee Act." *R-S-C v. Sessions*, 869 F.3d 1176, 1178 (10th Cir. 2017). The other categories similarly expand in scope to sweep in lesser offenses.

By including minor offenses, Defendants render the language of § 1158(b)(2)(A)(ii) superfluous by adding minor offenses that do not match the nature or impact of a "particularly

serious crime." While Defendants purport to rely on the Attorney General's authority to enact rules that are "consistent with" § 1158, the new rule improperly circumvents the bounds of the particularly serious crime bar of § 1158(b)(2)(A)(ii). Moreover, Congress expressly states that the particularly serious crime bar applies only where the person (i) is "convicted by final judgment" (ii) of a "*particularly* serious crime" and (iii) "constitutes a danger to the community of the United States." § 1158(b)(2)(A)(ii). The Rule's new bars involve crimes that are not serious, let alone *particularly* serious; they are largely unrelated to whether the asylum-seeker poses a danger to the community; and some of them apply even absent a conviction. Because the Rule's new bars fall far short of the serious crime threshold, they are not consistent with the statute and are unlawful.

The burden here is on the Departments. This Court is meant to construe these issues giving the benefit of the doubt to asylum seekers—not the government. Authority holds that if the Court has any doubts, it should construe § 1158(b) "with lenience toward migrants," both to "avoid infringing" on our international commitments not to return people to persecution, *EBSC II*, 950 F.3d at 1275, and to respect the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of" noncitizens. *Cardoza-Fonseca*, 480 U.S. at 449. This is not a minor point. The Departments intend to broaden their ability to administratively prevent asylum seekers from coming into the United States. But the law is clear that courts should look skeptically at any such effort: our principles of interpretation call for resolving uncertainties in favor of the asylum seeker. The Departments are not owed deference on this point of interpretation.

### C. Without substantial justification, the Departments' Rule radically departs from the fact-intensive analysis required under many areas of § 1158.

The Rule seeks to establish several new categorical bars to asylum eligibility, regardless of the nature and circumstances of the crime or the punishment imposed. These new bars are not consistent with the INA's asylum provisions because they: (i) involve offenses (or alleged conduct) far less serious than Congress deemed necessary to deny asylum eligibility, and, (ii) allow people to be barred from asylum eligibility based on mere accusation or suspicion of misconduct.

### III.  Each of the Department's Categorical Exclusions are Inconsistent with 8 U.S.C. § 1158.

The Rule's categorical bars are fatally flawed—each is ambiguous, imprecise, and conflicts with the limited scope of categorical asylum bars as set forth by Congress.

#### A. The inclusion of immigration offenses falls well outside the limited scope of categorical asylum bars authorized by Congress.

The Rule would bar asylum seekers "convicted of an offense arising under INA 274(a)(1)(A) or (a)(2) or INA 276 (8 U.S.C. 1324(a)(1)(A) or (a)(2) or 1326)." 85 Fed. Reg. at 67202. By sweeping in all offenses under §§ 1324 and 1326 while ignoring the exceptions explicitly crafted by Congress, the Rule impermissibly enlarges the scope of asylum bars.

Section 1324 describes criminal penalties for "[b]ringing in and harboring" certain noncitizens who are not authorized to enter the United States. By invoking § 1324, the Rule would apply to an asylum-seeker who brought a spouse, child, or parent with them when entering the country. This categorical bar ignores that such an offense can be "motivated by love, charity, or kindness, or by religious principles." *In re L-S-*, 22 I. & N. Dec. 645, 655 (BIA 1999). Moreover, it directly contravenes Congress's intent that a violation of § 1324(a)(1)(A) or (a)(2) is not to be treated as an aggravated felony if the noncitizen "committed the offense for the purpose of assisting, abetting, or aiding only the [noncitizen's] spouse, child, or parent (and no other individual) to violate a provision of this chapter." 8 U.S.C. § 1101(a)(43)(N). The Rule, as drafted, makes no such exception for the asylum-seeker accompanying a spouse, child, or parent.

8 U.S.C. § 1326(a) describes criminal penalties for reentry of certain removed noncitizens. Including a violation of §1326 as a categorical asylum bar, however, is "inconsistent with the INA" because it "categorically [denies] refugees an opportunity to seek asylum only because of their method of entry." *See EBSC II*, 950 F.3d at 1276; 8 U.S.C. § 1158(a)(1). Congress determined that a § 1326 violation is treated as an aggravated felony *only* when "committed by [a noncitizen] who was previously deported on the basis of a conviction" for another aggravated felony. 8 U.S.C. § 1101(a)(43)(O). Congress plainly did not intend for every conviction under § 1326 to bar an asylum claim.

### B. The categorical inclusion of "any felony" exceeds the parameters set by Congress.

The Rule bars asylum for conviction of "any felony under Federal, State, tribal, or local law." 85 Fed. Reg. at 67258. "Any felony" is further defined to mean any crime "defined as a felony by the relevant jurisdiction" or "punishable by more than one year of imprisonment." *Id.* at 67260. Congress, however, has already determined that only certain felonies constitute a bar to asylum—particularly serious crimes, including aggravated felonies and those that constitute a danger to the community or security of the country. 8 U.S.C. § 1158(b)(2)(A)(i)-(vi); (b)(2)(B)(i).

Many felonies do not rise to this level. *EBSC II*, 950 F.3d at 1276. There are numerous examples of such felonies that would serve as an asylum bar under the Rule. See D.I. 21-2 (Pl. Mem. Of Points and Authorities) at 7-8. For example, being convicted of defacing a school building in Arizona, selling alcohol in Maryland to a visibly intoxicated person, or driving with a suspended license would result in an asylum bar. *Id.* Equally problematic are state laws that categorize simple drug possession or use as a felony. *Id.* at 8. Congress has already determined that drug possession or use does not rise to the level of an aggravated felony. 8 U.S.C. § 1101(a)(43)(B). None of these types of crimes approach the requisite level of seriousness to result in a categorical asylum bar. Conviction of "any felony" as a categorical asylum bar conflicts with Congress's intent to limit the asylum bar to conviction of only specified serious crimes.

### C. The inclusion of new misdemeanors and DUI offenses contravenes the statutory scheme.

The Rule categorically bars asylum for a conviction of "any misdemeanor under Federal, State, tribal, or local law" if the misdemeanor conviction involves (i) possession or use of a false identification document; (ii) receipt of federal public benefits without lawful authority; or (iii) possession or trafficking of a controlled substance or paraphernalia, other than a single offense involving possession for one's own use of a small amount of marijuana. 85 Fed. Reg. at 67260. Further, the Rule bars asylum for certain DUI offenses including driving while intoxicated or impaired by alcohol or drugs, whether misdemeanor or felony, that either (i) "was a cause of serious bodily injury or death of another person" or (ii) was "a second or subsequent offense." *Id*.

Congress specifically delineated conviction of certain particularly serious crimes, such as aggravated felonies, as a categorical asylum bar. § 1158 (b)(2)(A)(i)-(iv). If Congress intended to include misdemeanors in this list, it could have done so. The Rule ignores Congress's intent and impermissibly broadens the types of criminal offenses that would bar an asylum claim. Instead of particularly serious crimes, the asylum bar would be triggered by such acts as a second misdemeanor conviction for marijuana possession, receipt of public benefits without lawful authority, a conviction for possessing drug paraphernalia, or a second DUI misdemeanor.

### D. The inclusion of family related offenses falls well outside the limited Congressional categorical bars.

The Rule also enumerates certain family-related offenses that trigger asylum ineligibility. This includes conviction of any crime that involves "child neglect," "child abandonment," or "that involves conduct amounting to a domestic assault or battery offense." 85 Fed. Reg. at 67259–60. As above, these provisions are overbroad and include offenses that do not approach the "particularly serious" level Congress deemed necessary to deny asylum eligibility. Even more problematic, however, is the Rule's categorical bar related to domestic battery or extreme cruelty: it "does not necessarily require a criminal conviction or criminal conduct." 85 Fed. Reg. at 67256 n.44. Instead, the adjudicator merely must have "reason to believe" that the noncitizen engaged in such behavior. *Id*. at 67260. This "reason to believe" standard conflicts with Congress's approach, which requires a final conviction. *See* 8 U.S.C. § 1158(b)(2)(A)(ii), (b)(2)(B)(i).

### E. The inclusion of suspected gang offenses exceeds the scope of the limited Congressional categorical bars.

The Rule bars an asylum claim of a noncitizen convicted of any Federal, State, tribal, or local crime that the adjudicator "knows or has reason to believe was committed in support, promotion, or furtherance of the activity of a criminal street gang as that term is defined" in federal, state, or local law. 85 Fed. Reg. at 67259. This provision is overly broad, encompassing "any" crime whether misdemeanor or felony, and relies on the impermissibly vague "reason to believe" standard. The Rule ignores Congress's explicit determination of the types of crimes that constitute a categorical asylum ban: particularly serious crimes including aggravated felonies. A noncitizen convicted of a misdemeanor vandalism offense could be ineligible for asylum if it was determined

that the vandalism promoted a street gang. The noncitizen would not even need to be a member of a criminal street gang for the ineligibility bar to apply.

### IV. The Rule's Shifting of the Burden of Proof to the Asylum Applicant Is Inconsistent with the Asylum Protections of the INA.

In addition to the new categorical bars to asylum, the Rule adds another hurdle—allowing vacated and/or modified convictions to be the basis for ineligibility. This obstacle is premised on the presumption that a criminal conviction remains effective (and thus triggers the asylum bars) despite any vacatur, expungement, or modification, if (i) the vacatur or modification order was entered after the removal proceedings began, or (ii) the applicant moved for the modification order more than a year after conviction or sentencing. 85 Fed. Reg. at 67259-60. Under the Rule, this holds true even if the modification was made to cure constitutional or legal defects. *Id.* In fact, the Rule *presumes* that a state court order is a nullity if it vacates a conviction *expressly because the conviction was unconstitutional*. *Id*. The effect of this arbitrary and damaging presumption is a burden shift to the asylum seeker who now must establish that any vacatur or modification to the underlying criminal conviction or sentence was not made for rehabilitative or "immigration purposes." 85 Fed. Reg. at 67259-60.

These presumptions violate due process and are inconsistent with the INA and well-grounded decisions from the BIA. *See, e.g., Alim v. Gonzales*, 446 F.3d 1239, 1249 (11th Cir. 2006) (explaining that treating a vacated unconstitutional conviction as valid is "so foreign, so antithetical, to the long-standing principles underlying our criminal justice system and our notions of due process that we would expect Congress to have spoken very clearly if it intended to effect such results"); *Ramirez-Castro v. INS*, 287 F.3d 1172, 1774 (9th Cir. 2002) (confirming that when vacatur occurs because there was a legal defect in the underlying criminal proceeding, then there is no longer a conviction for purposes of the INA).

The Rule also delegates authority to decisionmakers in Immigration Court that Congress never contemplated—empowering asylum adjudicators to consider evidence beyond the court order and/or record to determine the state judge's purpose with the vacatur or modification. 85 Fed. Reg. at 67260. This effectively grants permission to asylum adjudicators to second-guess state court

decisions and the underlying bases for those decisions, even when those decisions are based on constitutional grounds. Imposing an arbitrary time limit on vacatur and shifting the burden of proof to the asylum applicant guarantees that despite a conviction's legal or constitutional infirmity, some such convictions will still bar the applicant's eligibility, in violation of § 1158's protective plan.

## V. CONCLUSION

For the reasons stated herein, this Court should grant Plaintiffs' Motion.

*/s/Susan M. Krumplitsch*
Susan M. Krumplitsch (Cal. Bar # 241016)
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, California 94303
T: (650) 833-2000
F: (650) 687-1230
susan.krumplitsch@us.dlapiper.com


-and-

Ellen Scordino (*pro hac vice* to be filed)
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
T: (617) 406-6085
F: (617) 406-6195
ellen.scordino@us.dlapiper.com

-and-

Cameron A. Fine (pro hac vice to be filed)
DLA Piper LLP (US)
2525 East Camelback Road, Suite 1000
Phoenix, AZ 85016-4232
-and-

Ellen Scordino (*pro hac vice* to be filed)
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
T: (617) 406-6085
F: (617) 406-6195
ellen.scordino@us.dlapiper.com

-and-

Cameron A. Fine (*pro hac vice* to be filed)
DLA Piper LLP (US)
2525 East Camelback Road, Suite 1000
Phoenix, AZ 85016-4232
T: (480) 606-5132
F: (480) 606-5533
cameron.fine@us.dlapiper.com

-and-

Adam J. Pié (*pro hac vice* to be filed)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
T: (410) 580-4791
F: (410) 580-5406
adam.pie@us.dlapiper.com

-and-

Peter S. Marguiles (*pro hac vice* pending)
Roger Williams University School of Law
8 Henry Dr.
Barrington, RI 02806
T: (401) 254-4564
pmargulies@rwu.edu

-and-

Shoba Sivaprasad Wadhia (*pro hac vice* pending)
Penn State Law
Lewis Katz Building
University Park, PA 16802
T: (814) 865-3823
ssw11@psu.edu

*Amicus Curiae Immigration Law Professors*

DLA PIPER LLP (US)
EAST PALO ALTO

WEST/292232485

-14-
AMICI CURIAE BRIEF ISO PLAINTIFFS' MOTION FOR A RESTRAINING ORDER
CASE NO. 3:20-CV-7721 SI