JEFFREY BOSSERT CLARK
*Acting Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov
PATRICK GLEN
CHRISTINA GREER
*Senior Litigation Counsel*
CRAIG NEWELL
*Trial Attorney*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| Pangea Legal Services, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 3:20-cv-7721 |
| U.S. Dept. of Homeland Security, *et al.*, | ) |
| Defendants. | ) |

## <u>OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER</u>

1

## TABLE OF CONTENTS

2   **INTRODUCTION** ............................................................................................................. 1

3   **BACKGROUND** ............................................................................................................... 3

4   **ARGUMENT** .................................................................................................................... 6

5

6   **I.      Plaintiffs Are Not Likely to Succeed on Their Claims.** ................................. 6

7           A.      The Rule Is Consistent with the INA .................................................... 6

8           B.      The Rule Is Not Unconstitutionally Vague ......................................... 13

9           C.      The Rule Is Not Arbitrary and Capricious........................................... 14

10          D.      The Rule Is Procedurally Valid ........................................................... 20

11
12  **II.     Considerations of Irreparable Harm and the Equities Favor the Government** ....... 23

13  **III.    Any Relief Must Be Sharply Limited** ........................................................ 24

14  **CONCLUSION** ............................................................................................................... 25

15  **CERTIFICATE OF SERVICE** ...................................................................................... 27

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASE LAW

*Altera Corp. & Subsidiaries v. Commissioner of Internal Revenue*,
  926 F.3d 1061 (9th Cir. 2019)................................................................. 18

*Am. Mining Cong. v. EPA*,
  965 F.2d 759 (9th Cir. 1992)................................................................... 18

*Ashki v. INS*,
  233 F.3d 913 (6th Cir. 2000)................................................................... 14

*Cal-Almond, Inc. v. U.S. Dep't of Agric.*,
  14 F.3d 429 (9th Cir. 1993)..................................................................... 22

*California Hosp. Ass'n v. Maxwell-Jolly*,
  2011 WL 464008 (E.D. Cal. Feb. 4, 2011)............................................. 25

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018)................................................................... 25

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988)................................................................... 23

*CASA de Maryland, Inc. v. Trump*,
  971 F.3d 220 (4th Cir. 2020)................................................................... 24

*Cement Kiln Recycling Coal. v. EPA*,
  255 F.3d 855 (D.C. Cir. 2001) ................................................................ 22

*City & Cty. of San Francisco v. USCIS.*,
  944 F.3d 773 (9th Cir. 2019)........................................................ 6, 18, 23

*City and Cty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018)................................................................. 25

*City of Los Angeles v. Barr*,
  929 F.3d 1163 (9th Cir. 2019)................................................................. 15

*City of Sausalito v. O'Neill*,
  386 F.3d 1186 (9th Cir. 2004)................................................................. 21

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019).................................................................... 10, 17

*Dep't of Nat. Res. And Envtl. Control v. EPA,*
    785 F.3d 1 (D.C. Cir. 2015) ............................................................................ 19

*East Bay Sanctuary Covenant v. Barr,*
    934 F.3d 1026 (9th Cir. 2019) ........................................................................ 25

*East Bay Sanctuary Covenant v. Barr,*
    964 F.3d 832 (9th Cir. 2020) ...................................................................... 6, 7, 8, 9

*East Bay Sanctuary Covenant v. Trump,*
    909 F.3d 1240 (9th Cir. 2018) ........................................................................ 13

*East Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018) ....................................................................... 8, 23

*East Bay Sanctuary Covenant v. Trump,*
    950 F.3d 1242 (9th Cir. 2020) ................................................................. 2, 7, 9, 24

*Envtl. Def. Ctr. v. EPA,*
    344 F.3d 832 (9th Cir. 2003) ........................................................................ 23

*F.C.C. v. Fox Television Stations,*
    556 U.S. 515 (2009) ...................................................................................... 16

*Fook Hong Mak v. INS,*
    435 F.2d 728 (2d Cir. 1970) ............................................................................ 8

*Gill v. U.S. Dep't of Justice,*
    913 F.3d 1179 (9th Cir. 2019) ........................................................................ 14

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ................................................................................... 25

*Guerrero v. Whitaker,*
    908 F.3d 541 (9th Cir. 2018) ......................................................................... 14

*Innovation Law Lab v. McAleenan,*
    924 F.3d 503 (9th Cir. 2019) ......................................................................... 24

*INS v. Aguirre-Aguirre,*
    526 U.S. 415 (1999) ........................................................................................ 6

*INS v. Stevic,*
    467 U.S. 407 (1984) ........................................................................................ 9

*J.E.F.M. v. Lynch,*
  837 F.3d 1026 (9th Cir. 2016) ................................................................................ 25

*Kashem v. Barr,*
  941 F.3d 358 (9th Cir. 2019) .................................................................................. 13

*L.A. Haven Hospice, Inc. v. Sebelius,*
  638 F.3d 644 (9th Cir. 2011) .................................................................................. 25

*Landon v. Plasencia,*
  459 U.S. 21 (1982) .................................................................................................. 23

*Lopez v. Davis,*
  531 U.S. 230 (2001) ............................................................................................ 8, 17

*Madsen v. Women's Health Ctr., Inc.,*
  512 U.S. 753 (1994) ................................................................................................ 25

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,*
  463 U.S. 29 (1983) ............................................................................................ 15, 16

*Municipality of Anchorage v. United States,*
  980 F.2d 1320 (9th Cir. 1992) ................................................................................ 22

*Nat'l Ass'n of Manufacturers v. DHS,* --- F. Supp. 3d ---,
  2020 WL 5847503 (N.D. Cal. Oct. 1, 2020) ........................................................... 25

*Phillips Petroleum Co. v. EPA,*
  803 F.2d 545 (10th Cir. 1986) ................................................................................ 21

*Portland Cement Ass'n v. EPA,*
  665 F.3d 177 (9th Cir. 2011) .................................................................................. 20

*Power Corp. v. NRDC,*
  435 U.S. 519 (1978) ................................................................................................ 21

*Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.,*
  415 F.3d 1078 (9th Cir. 2005) ................................................................................ 23

*Reyes v. Lynch,*
  834 F.3d 1104 (9th Cir. 2016) ........................................................................... 12, 13

*US Citrus Science Council v. U.S. Dep't of Agriculture,*
  312 F. Supp. 2d 884 (E.D. Cal. 2018) .................................................................... 22

*Riverbend Farms, Inc. v. Madigan,*
  958 F.2d 1479 (9th Cir. 1992)..........................................................................20, 21

*Rojas-Garcia v. Ashcroft,*
  339 F.3d 814 (9th Cir. 2003) ...................................................................................14

*Sacora v. Thomas,*
  628 F.3d 1059 (9th Cir. 2010) ..........................................................................14, 15

*Shinseki v. Sanders,*
  556 U.S. 396 (2009)...................................................................................................21

*Tomasczuk v. Whitaker,*
  909 F.3d 159 (6th Cir. 2018) ...................................................................................14

*Torres v. Lynch,*
  136 S. Ct. 1619, 1628 (2016) ...............................................................................9, 11

*Tovar-Landin v. Ashcroft,*
  361 F.3d 1164 (9th Cir. 2004) .................................................................................14

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018)..................................................................................................9

*Trump v. Int'l Refugee Assistance Project,*
  137 S. Ct. 2080 (2017)................................................................................................23

*United States v. Davis,*
  139 S. Ct. 2319 (2019)................................................................................................14

*Va. Soc'y for Human Life v. FEC,*
  263 F.3d 379 (4th Cir. 2001).....................................................................................25

*Valentine Prop. Assocs., LP v. U.S. Dep't of Housing & Urban Dev.,*
  785 F. Supp. 2d 357 (S.D.N.Y. 2011) ....................................................................22

**ADMINISTRATIVE DESCIONS**

*Matter of D-A-C-,*
  27 I&N Dec. 575 (BIA 2019)..................................................................................7, 8

*Matter of Marroquin-Garcia,*
  23 I&N Dec. 705 (A.G. 2005)..................................................................................13

*Matter of Thomas and Thompson,*
  27 I&N Dec. 674 (A.G. 2019)..................................................................................16

*Matter of U- H-,*
    23 I&N Dec. 355 (BIA 2002)..................................................................................14

## FEDERAL STATUTES

5 U.S.C. § 553 ...........................................................................................................20, 21

5 U.S.C. § 601 ..................................................................................................................6

5 U.S.C. § 601(6) .........................................................................................................5, 22

5 U.S.C. § 604 ................................................................................................................22

5 U.S.C. § 706 .............................................................................................................5, 21

5 U.S.C. § 706(2) ...........................................................................................................25

5 U.S.C. § 706(2)(A) .........................................................................................................5

8 U.S.C. § 1101(a)(42)......................................................................................................3

8 U.S.C. § 1101(a)(43)(N) ..............................................................................................11

8 U.S.C. § 1101(a)(43)(O) ..............................................................................................11

8 U.S.C. § 1101(a)(48)(A) ..............................................................................................13

8 U.S.C. § 1158 ............................................................................................................3,

8 U.S.C. § 1158(B)(i) ....................................................................................................11,

8 U.S.C. § 1158(b)(1)(A) ...........................................................................................1, 3, 6

8 U.S.C. § 1158(b)(1)(B) ..................................................................................................4,

8 U.S.C. § 1158(b)(1)(B)(i) ............................................................................................12

8 U.S.C. § 1158(b)(2)(A)(ii) ..........................................................................................11

8 U.S.C. § 1158(b)(2)(A)(iv)-(v) ....................................................................................11

8 U.S.C. § 1158(b)(2)(C) ........................................................................................*passim*

8 U.S.C. § 1225(b) ............................................................................................................3

8 U.S.C. § 1231(a)(5) ..................................................................................................7, 10

8 U.S.C. § 1252(a)(5) .................................................................................... 25

8 U.S.C. § 1252(b)(9) .................................................................................... 25

8 U.S.C. § 1324(a) ........................................................................................ 11

## FEDERAL REGULATIONS

8 C.F.R. § 208.13 ............................................................................................. 4

8 C.F.R. § 208.16 ............................................................................................. 4

8 C.F.R. § 1208.13 ........................................................................................... 4

8 C.F.R. § 1208.16 ........................................................................................... 4

8 C.F.R. § 1208.16(c) ...................................................................................... 4

8 C.F.R. § 1240.8(d) ...................................................................................... 12

## FEDERAL REGISTER

64 Fed. Reg. 43,255 ...................................................................................... 22

84 Fed. Reg. 62,374 ...................................................................................... 19

85 Fed. Reg. 36,264 ...................................................................................... 19

85 Fed. Reg. 38,532 ...................................................................................... 19

85 Fed. Reg. 67, 202 ....................................................................................... 1

85 Fed. Reg. 67, 211 ...................................................................................... 22

85 Fed. Reg. 67, 216 ...................................................................................... 22

84 Fed. Reg. 69,640 ......................................................................................... 4

## EXECUTIVE ORDERS

Exec. Order No. 12866 ............................................................................ 21, 22

Exec. Order No. 13132 ...................................................................... 2, 3, 5, 22

Exec. Order No. 13563 .................................................................................. 21

**INTRODUCTION**

This case seeks to halt on a universal basis an important and well-supported final rule, issued jointly by the Departments of Justice and Homeland Security, that ensures that asylum is not granted to criminal aliens who endanger our country. *Procedures for Asylum and Bars to Asylum Eligibility*, 85 Fed. Reg. 67,202 (Oct. 21, 2020) (Rule). In keeping with a statute authorizing the Departments to adopt "limitations and conditions" on asylum eligibility, 8 U.S.C. § 1158(b)(2)(C), the Rule renders ineligible for asylum aliens who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States." 85 Fed. Reg. at 67,242-43, 67,249, 67,252. As the Departments explained, "[a]warding the discretionary benefit of asylum" to dangerous criminals encourages lawless behavior, subjects the United States to danger, and undermines the asylum system. *Id.* at 67,225. Despite the Executive Branch's broad authority and sound aims, Plaintiffs—organizations that are not even regulated by the Rule—ask this Court to bar the Rule's application to *anyone*, so that the Executive Branch could not apply it to child abusers, alien smugglers, wife beaters, stalkers, serial drunk drivers, various fraudsters, or persons who commit gang violence. This Court should deny that extraordinary request.

Plaintiffs' claims lack merit. *First*, Plaintiffs contend that the Rule is inconsistent with 8 U.S.C. § 1158(b)(2)(A) (the part of the asylum statute that erects several categorical bars to asylum eligibility) and with 8 U.S.C. § 1158(b)(2)(C) (which authorizes the Departments to adopt more bars that are "consistent with" the asylum statute). Mot. 5-13. According to Plaintiffs, the Rule establishes new bars on asylum eligibility for crimes that are not as serious as those set out in § 1158(b)(2)(A), and so the Rule is not "consistent with" the asylum statute. But the Immigration and Nationality Act (INA) confers broad discretionary authority on the Attorney General and Secretary of Homeland Security over asylum, 8 U.S.C. § 1158(b)(1)(A), including authority to adopt categorical "limitations and conditions" on asylum eligibility, beyond those specified in the statute, so long as those new bars are "consistent with" section 1158, *id.* § 1158(b)(2)(C). In line with the INA, the Rule adopts categorical "limitations" on asylum eligibility for several dangerous categories of conduct, and it is "consistent with" the asylum statute: Bars that protect "the safety

of those already in the United States" are consistent with section 1158(b), *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1275-76 (9th Cir. 2020), and the new Rule adopts such bars for conduct that, the Departments determined, endangers the security, safety, and welfare of the United States, 85 Fed. Reg. at 67,528-29. Nothing in the asylum statute limits the Departments' discretion to create additional eligibility bars for crimes not listed in section 1158(b)(2)(A). Section 1158(b)(2)(A) simply identifies several crimes (such as terrorist offenses) that Congress believed were so deplorable that they should be per se bars to asylum. Congress never said that new bars can apply only to conduct that reaches some qualitative level of seriousness.

*Second*, Plaintiffs maintain that some parts of the Rule are unconstitutionally vague under the Due Process Clause because they do not "give people of common intelligence fair notice of what the law demands of them." Mot. 15; *see* Mot. 15-16. But Plaintiffs—none of whom is regulated by the Rule—cannot invoke the Due Process Clause to raise in a pre-enforcement context hypothetical claims of harm on behalf of third-party aliens. And the Rule calls for application of standards on a case-by-case basis to specific facts, and so is not impermissibly vague.

*Third*, Plaintiffs argue that the Rule is arbitrary and capricious. Mot. 16-21. This argument fails too. The agencies explained the basis for the Rule and supported its judgments with a robust administrative record: the Rule reasonably aims to discourage "lawless behavior," to protect "the United States from certain dangers" and to safeguard the "policies underlying the statutory framework for asylum" by barring those who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States." 85 Fed. Reg. at 67,225, 67,242-43, 67,249, 67,252. Plaintiffs disagree with the Executive's considered judgments on what crimes constitute dangers to the safety and best interests of our country, but those disagreements provide no basis for invalidating the rule: arbitrary-and-capricious review does not allow a court to second-guess the conclusions of the agencies.

*Fourth*, Plaintiffs contend that the Rule is procedurally deficient because it was adopted without sufficient opportunity for public comment, does not analyze its impacts on federalism as required by Executive Order No. 13132, and does not comply with the Regulatory Flexibility Act (RFA). Mot. 21-23. All of those claims fail. The Departments provided 30 days for comments;

576 commenters, including several Plaintiffs here, commented. Plaintiffs have no plausible ground for saying that the comment period was inadequate—and, notably, they point to no prejudice from the comment period's length. Their federalism argument fails too, because Executive Order No. 13132 does not provide Plaintiffs a cause of action. And the RFA claim fails as well. The Rule evinces a reasonable, good-faith effort to comply with the RFA. No more is required.

*Finally*, Plaintiffs cannot show that the balance of harms warrants drastic and immediate injunctive relief based on the alleged risk that these organizations may need to adapt to a new Rule. Mot. 24-25. The Executive has a paramount sovereign interest in maintaining the integrity of the United States borders, in enforcing the immigration laws, and in ensuring that the discretionary benefit of asylum is not awarded to dangerous criminals. Against those interests, Plaintiffs have not brought before this Court a single individual who claims harm. The United States and the public, by contrast, would be harmed by enjoining a Rule that ensures that aliens who "have engaged in certain criminal conduct" do not receive asylum. 85 Fed. Reg. at 67,225. Last, Plaintiffs fail to confront the reality that they have provided no basis to enjoin the Rule universally. Plaintiffs' lead arguments—on the INA and on vagueness—fault only parts of the Rule; limited faults with the Rule would provide no basis to enjoin the Rule as to everyone.

The Court should deny the motion. And if the Court grants any relief, it must be limited to those portions of the Rule found unlawful, as applied to Plaintiffs or their bona fide clients.

## BACKGROUND

<u>Legal Background</u>. Congress has empowered the Attorney General and Secretary of Homeland Security to decide who may be admitted to this country as a refugee. 8 U.S.C. §§ 1101(a)(42), 1158, 1225. Aliens generally have a right to apply for asylum. "Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival ... ), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, [8 U.S.C. § 1225(b), which governs expedited removal]." *Id*. § 1158(a)(1). But a grant of asylum is discretionary. Asylum "*may* [be] grant[ed] to an alien who has applied," *id*. § 1158(b)(1)(A) (emphasis added), if the alien satisfies certain standards and is not subject to an application or eligibility bar, *id*. § 1158(a)(2), (b)(1)(B), (b)(2).

As part of this discretion, the Attorney General and Secretary "may by regulation establish additional limitations and conditions, consistent with this section [§ 1158], under which an alien shall be ineligible for asylum." *Id*. § 1158(b)(2)(C). Separate from the discretionary authority to grant asylum, the United States has a mandatory duty to provide two forms of protection from removal: withholding of removal (when an alien faces probable persecution on a protected ground in another country), *id*. § 1231(b)(3)(A), and protection under the Convention Against Torture (CAT) (when an alien faces probable torture in another country), 8 C.F.R. § 1208.16(c).

The Rule. On December 19, 2019, the Departments published a Notice of Proposed Rulemaking (NPRM) notifying the public of their intention "to amend their respective regulations to bar asylum eligibility," "clarify the effect of criminal convictions," and "remove their respective regulations governing the automatic reconsideration of discretionary denials of asylum applications." *Procedures for Asylum and Bars to Asylum Eligibility*, 84 Fed. Reg. 69,640 (Dec. 19, 2019). The NPRM proposed to render ineligible for asylum aliens who were convicted of: "alien harboring, alien smuggling, and illegal reentry"; "crime[s] ... committed in support, promotion, or furtherance of the activity of a criminal street gang"; "an offense for driving while intoxicated or impaired"; "a second or subsequent offense for driving while intoxicated or impaired ... in which such impaired driving was a cause of serious bodily injury or death of another person"; "stalking," "child abuse, child neglect, or child abandonment," or "domestic assault or battery"; "any felony"; or "any misdemeanor ... that involves" certain instances of identity fraud, "the receipt of Federal public benefits," or "the receipt of similar public benefits from a State, tribal, or local entity, without lawful authority," or "possession or trafficking of a controlled substance or controlled substance paraphernalia, other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 85 Fed. Reg. at 67,202-03. The NPRM also proposed to bar from asylum aliens "for whom there are serious reasons to believe have engaged in acts of battery or extreme cruelty." *Id*. at 67,203. The NPRM further proposed to "provide[] relevant definitions and other procedural instructions for the implementation of the proposed bars to eligibility." *Id*. at 67,204. And the NPRM proposed to eliminate the "automatic reconsideration of discretionary denials of asylum applications" where an alien is later granted "withholding of removal." *Id*.

On October 20, 2020, the Departments issued the final version of the Rule, effective November 20, 2020. 85 Fed. Reg. at 67,202. In doing so, the Departments considered 576 unique public comments, including several from Plaintiffs in this case. *See id.* at 67,204 n.3; AR.8356-11063. After considering and responding to the many comments, the Rule adopted "the provisions of the NPRM as final," subject to "minor edits for clarity." *Id.* at 67,255. The Rule also included a determination, in accordance with the RFA, that it "will not have a significant economic impact on a substantial number of small entities" because it "would not regulate 'small entities' as that term is defined in 5 U.S.C. § 601(6)." *Id.* at 67,255. Consistent with Executive Order 13132, the Rule provided that it "will not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government," and so "does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement." *Id.* at 67,257.

This Lawsuit. On November 2, 2020, four organizations that provide services to aliens filed this suit. Plaintiffs allege that the Rule unlawfully "curtail[s] the availability of asylum to people fleeing persecution." Compl. ¶ 1. Plaintiffs' own alleged injuries are different, however, because none of them is an alien: Plaintiffs allege that they must "divert resources" to "address the impact of the Rule," *id.* ¶¶ 15-18, "update [their] client database and intake process," *id.* ¶ 101, and "analyze the new Rule" to "revise their training materials, and create new curricula," *id.* ¶ 102, and that the Rule could mean fewer cases and less "funding," *id.* ¶ 106. As relevant to this motion, Plaintiffs bring four APA claims and a constitutional claim. First, they claim that the Rule conflicts with INA's "statutory eligibility bars," 8 U.S.C. § 1158(b)(2)(A) and so is contrary to law. Mot. 5-6; Compl. ¶¶ 122-27; *see* 5 U.S.C. § 706. Second, Plaintiffs claim that the Rule is not based on reasoned decisionmaking and so is arbitrary and capricious. Compl. ¶¶ 128-34; *see* 5 U.S.C. § 706(2)(A). Third, Plaintiffs allege that the Rule was issued with insufficient time to comment. *Id.* ¶¶ 135-38. Fourth, Plaintiffs allege that Rule violates the RFA. *Id.* ¶¶ 149-59; *see* 5 U.S.C. § 601. Fifth, Plaintiffs allege that the Rule is unreasonably vague, in violation of the Due Process Clause. *Id.* ¶¶ 160-64. Plaintiffs moved for a TRO preventing the Rule from taking effect anywhere, against anyone. Mot. 5-25.

1

**ARGUMENT**

2      The Court should deny a TRO. All injunctive factors weigh strongly against a TRO.

3  **I.   Plaintiffs Are Not Likely to Succeed on Their Claims.**

4      **A.  The Rule Is Consistent with the INA**

5          Plaintiffs' lead argument is that the Rule establishes an asylum-eligibility bar that conflicts

6  with the INA. Mot. 5-13. That argument fails.

7          Unless "Congress has directly spoken to the precise question at issue," the agency's

8  application of the statute must be upheld if "based on a permissible construction of the statute."

9  *City & Cty. of San Francisco v. USCIS*, 944 F.3d 773, 790 (9th Cir. 2019). The Rule meets that

10  standard: it is consistent with the INA. The asylum statute provides that a grant of asylum is a

11  matter of discretion: asylum "may [be] grant[ed] to an alien" who satisfies all governing

12  requirements—it never must be granted to an alien. 8 U.S.C. § 1158(b)(1)(A); *see INS v. Aguirre-*

13  *Aguirre*, 526 U.S. 415, 420 (1999). The statute further provides that certain aliens are categorically

14  ineligible for asylum, either because they "pose a threat to society" (aliens who: have persecuted

15  others, have been convicted of particularly serious crimes, have committed serious non-political

16  crimes outside the United States, or may be terrorists or a danger to the security of the United

17  States, 8 U.S.C. § 1158(b)(2)(A)(i)–(iv)) or because they "do not need the protection of asylum in

18  the United States" (aliens who may be removed to a safe third country and aliens who have firmly

19  resettled in another country, *id.* § 1158(a)(2)(A), (b)(2)(A)(vi)). *East Bay Sanctuary Covenant v.*

20  *Barr*, 964 F.3d 832, 846 (9th Cir. 2020). The statute expressly authorizes the Executive to establish

21  further, categorical "limitations and conditions" on asylum eligibility, on top of those already

22  provided by statute, 8 U.S.C. § 1158(b)(2)(A), so long as those limitations and conditions are

23  "consistent with" the asylum statute, *id.* § 1158(b)(2)(C).

24          The Rule here is well within those grants of authority over asylum. To start, the Rule is

25  consistent with the discretionary nature of asylum and the authority to adopt new eligibility bars.

26  In the Rule, the Departments determined that aliens who are convicted of specified crimes, or who

27  there is a serious reason to believe have committed certain criminal acts, should not be eligible for

28  the discretionary benefit of asylum, because granting "such individuals [relief] would encourage

lawless behavior, subject the United States to certain dangers, and otherwise undermine the policies underlying the statutory framework for asylum." 85 Fed. Reg. at 67,225. The broad delegation of authority to establish additional eligibility bars requires only that regulatory asylum-eligibility bars be "consistent with" section 1158. 8 U.S.C. § 1158(b)(2)(C). That describes the Rule. The Rule bars asylum eligibility for aliens who have engaged in conduct that, the agencies determined, categorically undermines any claim they should have to asylum—a significant benefit that can provide a pathway to U.S. citizenship and benefits to an asylee's family members. Nothing in section 1158 precludes such a Rule. To the contrary: Section 1158(b)(2) allows the Departments to adopt additional asylum bars for aliens "considered not to be deserving of international protection," *East Bay*, 964 F.3d at 846—including those who may pose a danger to "the safety of those already in the United States." *East Bay*, 950 F.3d at 1275-76. The Rule targets conduct that, the Departments determined, endangers the security, safety, and welfare of the United States, *compare* 85 Fed. Reg. at 67,528-29 *with* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (iv)-(v); forecloses discretionary relief for those who flout important immigration laws, *compare* 85 Fed. Reg. at 67,528 *with* 8 U.S.C. § 1231(a)(5) (reinstatement bar to relief for aliens previously ordered removed); and bars relief for classes of aliens who, the Departments determined, are not worthy of the benefit of asylum given the nature of their conduct, *compare* 85 Fed. Reg. at 67, 528 *with* 8 U.S.C. §§ 1158(b)(2)(A)(i), (iii), (v)-(vi). The Rule is also consistent with background principles governing the agency's ultimate exercise of discretion. "The ultimate consideration when balancing factors in the exercise of discretion is to determine whether a grant of relief ... appears to be in the best interest of the United States." *Matter of D-A-C-*, 27 I&N Dec. 575, 578 (BIA 2019) (citations omitted). The Departments determined that the commission of certain crimes, or the likelihood that an applicant has committed such an offense based on relevant evidence, renders a grant of relief not to be in the "best interest[s] of the United States." *Id.* Nothing in section 1158 forecloses that view, and securing the best interests of the country is a reasonable policy goal under section 1158. Although the Rule does adopt a categorical bar, that too is consistent with the asylum statute and precedent. The statute itself provides for new eligibility requirements promulgated "by regulation." 8 U.S.C. § 1158(b)(2)(C). And even without that provision, if the Attorney General

and the Secretary may take account of criminal activity in individual cases, administrative-law principles dictate that they may do so categorically too. *See Lopez v. Davis*, 531 U.S. 230, 243-44 (2001); *Fook Hong Mak v. INS*, 435 F.2d 728, 730 (2d Cir. 1970) (upholding INS's authority to "determine[] certain conduct to be so inimical to the statutory scheme that all persons who have engaged in it shall be ineligible for favorable consideration").[1]

Plaintiffs make several arguments that the new eligibility bars are not "consistent with" the asylum statute, but those arguments lack merit. Mot. 5-15.

*First*, Plaintiffs contend that the various asylum-eligibility bars set out in section 1158(b)(2)(A) establish that a categorical eligibility bar adopted under section 1158(b)(2)(C) establishes a "core principle" that bars must be limited to only what Plaintiffs call "the most serious offenses": "Terrorists, war criminals, and people who are explicitly a danger to domestic or national security." Mot. 6; *see* Mot. 5-12. Plaintiffs misunderstand both provisions. Section 1158(b)(2)(A) does not provide that asylum is definitely available for criminals who do not fall within one of that provision's bars. Rather, that provision bars from asylum eligibility categories of aliens who Congress thought *clearly* "not to be deserving of international protection," *East Bay*, 964 F.3d at 846, because they may pose a threat to "the safety of those already in the United States," *East Bay*, 950 F.3d at 1275-76. Under 8 U.S.C. § 1158(b)(2)(C), Congress left it to the Executive Branch, however, to decide whether *other* conduct should render someone categorically ineligible for asylum. Put differently, Congress generally made asylum a matter of Executive discretion—except that in section 1158(b)(2)(A) it *eliminated* the discretion to *grant* asylum for (among others) certain categories of criminals who *obviously* do not merit it. Congress then expressly authorized the Executive Branch to issue bars to cover additional categories of such aliens. 8 U.S.C. § 1158(b)(2)(C). Fatal for Plaintiffs' view, section 1158(b)(2)(C) nowhere says

---

[1] The Ninth Circuit has suggested that *Lopez*'s endorsement of categorical rules may not apply if "Congress spoke to the precise issue." *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 772 n.13 (9th Cir. 2018). There, the court explained that section 1158(b)(2)(C) did not authorize categorical bars based on an alien's unlawful entry into the United States because "Congress spoke to the precise issue when it stated that aliens may apply [for asylum] 'whether or not' they arrived at a designated port of entry." *Id.* Here, Congress did not directly speak to the permissibility of additional criminal bars to eligibility—other than its express grant of authority to adopt additional eligibility bars by "regulation," 8 U.S.C. § 1158(b)(2)(C)—so *Lopez* applies fully.

that new eligibility bars are reserved only for a particular level of crime or must parrot the level of seriousness that Plaintiffs attribute to those statutorily listed grounds. *Cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2411-12 (2018) (concluding that the INA's express provisions regarding the entry of aliens "did not implicitly foreclose the Executive from imposing tighter restrictions"—even when the Executive's restrictions addressed a subject that is "similar" to one that Congress "already touch[ed] on in the INA"). Section 1158(b)(2)(A)'s bars do not foreclose the Executive from imposing more eligibility bars based on criminal convictions and activity, even if those bars address subjects that are similar to those that Congress already touched on in the asylum statute.[2]

*Second*, Plaintiffs argue that the Rule conflicts with section 1158(b)(2)(A) because the new bars are a poor "proxy for dangerousness," since it sweeps in purportedly minor offenses, and is thus "inconsistent" with the asylum statute. Mot. 7 (cleaned up); *see* Mot. 8-12. That is also wrong. To start, the statute already renders ineligible any alien convicted of an "aggravated felony." 8 U.S.C. §§ 1101(a)(43); 1158(b)(2)(A)(iii), (B)(i). But that covers "comparatively minor offenses [such] as operating an unlawful gambling business, and possessing a firearm not identified by a serial number," as well as "offenses targeting nonviolent activity such as receiving stolen property, or forging documents." *Torres v. Lynch,* 136 S. Ct. 1619, 1628 (2016). So Plaintiffs are simply wrong that Congress limited bars to crimes like "blowing up a passenger plane" or "wanton killing in a public place." Mot. 7. And, again, section 1158 permits new eligibility bars for aliens not "deserving of international protection." *East Bay*, 964 F.3d at 846. Such aliens include those who are a danger to "the safety of those already in the United States" because they have committed "serious crimes." *East Bay*, 950 F.3d at 1275-76. The Rule fits comfortably within that principle. The safety of the United States' population is clearly safeguarded by denying a safe haven to those who would commit felonies, those who undertake gang-related activities, individuals with multiple DUI convictions, and those who engage in domestic violence. *Contra* Mot. 7-12. So, too, is the safety and integrity of the United States protected by targeting those who would engage in

---

[2] Plaintiffs argue that the Rule is inconsistent with the United States' international obligations. *E.g.*, Mot. 6, 7, 8, 12. That is wrong. The Rule concerns only *asylum* eligibility and does not affect an alien's eligibility for *withholding of removal*; there is thus no violation of any non-refoulement obligations that the United States has. *See, e.g.*, *INS v. Stevic*, 467 U.S. 407, 421-22 (1984) (U.S. non-refoulement obligation has been implemented through withholding of deportation (removal)).

document fraud or violate the immigration laws. *Cf., e.g.*, 8 U.S.C. § 1231(a)(5). Plaintiffs' contrary arguments are just disagreements with the policy determinations made by those who Congress entrusted make those determinations. Plaintiffs do not dispute that the Rule covers categories of dangerous aliens, *e.g.*, Mot. 7 (by implication recognizing many felonies are inherently dangerous), 10-11 (similar, for domestic-violence offenses), but simply argue that these dangers are not sufficiently *severe* to warrant a bar to asylum eligibility. That is no basis to invalidate the Rule in whole or in part: The Departments were entrusted to make judgments about what crimes "subject the United States to certain dangers," "disregard ... the societal values of the United States," and undermine "American ideals of the rule of law and a commitment to public safety" to the point where asylum is categorically inappropriate. 85 Fed. Reg. at 67,225, 67,249. Disagreement with those judgments is not a basis for invalidating the Rule. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2571 (2019) (courts should not "second-guess[ ]" agencies' "weighing of risks and benefits").

Plaintiffs' more specific objections to the Rule (Mot. 7-12) fail for the same reasons: Again, Congress chose to specify certain offenses as disqualifying in the asylum statute, but also permitted the Departments to specify "additional" crimes as disqualifying based on the judgment that such criminal conduct reflects a danger that makes someone unsuitable for asylum, U.S.C. § 1158(b)(2)(C)—one of the greatest benefits that a foreign national can receive from the United States. This choice foreclose Plaintiffs' contentions that: the Departments may not erect a bar on those convicted of felonies because Congress already specified that certain "aggravated felony" offenses are disqualifying (Mot. 7-8); illegal-reentry offenses cannot be disqualifying as a general matter, because Congress construed those as "aggravated felony" offenses (and thus necessarily disqualifying) only where the alien was previously removed based on a conviction for an aggravated felony (Mot. 9-10); that drug offenses other than "drug-trafficking" may not be disqualifying, since only the latter qualify as aggravated felonies; and certain alien-smuggling and harboring crimes (8 U.S.C. § 1324(a)) cannot be disqualifying because Congress exempted them from aggravated-felony treatment (Mot. 9 (citing 8 U.S.C. § 1101(a)(43)(N)). As noted: section 1158(b)(2)(A) makes clear that some offenses are so serious that Congress decided that the

Executive Branch should have *no discretion* to grant asylum for aliens who committed them. That decision did not limit the Executive Branch from exercising its law-enforcement and immigration-enforcement judgment to treat other offenses as also meriting a categorical eligibility bar. That authority is especially important with aggravated felonies, as that case law systematically downplays the seriousness of those crimes for immigration purposes. 85 Fed. Reg. at 67,209; *see Torres*, 136 S. Ct. at 1628. The Rule addresses that feature by "establishing a bright-line rule that is both easy to understand and will apply uniformly to all applicants who have been convicted of felonies, which the Departments believe to be significant offenses." *Id.* at 67,216.

Equally unavailing is Plaintiffs' contention that the Departments may not make illegal-reentry offenses a bar to asylum because doing so would constitute a bar based on the manner of entry, despite section 1158(a)(1)'s statement that an alien can apply for asylum despite manner of entry. *See* Mot. 9. The Rule does not bar eligibility based on manner of entry; it bars it based on a criminal *conviction*—a felony for recidivists. Indeed, Congress has *already* construed certain illegal-reentry offenses as disqualifying, 8 U.S.C. §§ 1101(a)(43)(O), 1158(b)(2)(A)(ii), (B)(i), and so Congress itself rejected the view that a manner-of-entry bar can never be imposed. And, as already explained, Congress's explicit inclusion of *certain* illegal-reentry offenses as categorical bars does not foreclose the Executive's authority to include *additional* offenses—particularly based on a felony that effects repeated disregard for the law, like illegal *re*entry.

Plaintiffs similarly challenge the Rule's use of a "reason to believe" standard in assessing whether an alien has committed or been convicted of a disqualifying offense; according to Plaintiffs, that standard does not ensure that the conduct involved is serious enough to warrant a bar on asylum. Mot. 10-11. But Congress employed a similar standard in statutory bars to asylum. *See* 8 U.S.C. § 1158(b)(2)(A)(iii) ("serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States"), (iv) ("reasonable grounds for regarding the alien as a danger to the security of the United States"); *contra* Mot. 12. The Rule's use of such language can hardly be inconsistent with the statute. Plaintiffs similarly object to the Rule's use of the phrase "involves conduct amounting to" to define disqualifying offenses relating to stalking and domestic violence, arguing that asylum cannot be barred based on "unadjudicated conduct."

Mot. 11. But nothing in the asylum statute limits asylum bars to criminal convictions: to the contrary, five of the six statutory eligibility bars have *no* conviction requirement.

Taking up the bars addressing modified or vacated convictions, Plaintiffs argue that "[n]othing in the INA allows" the Rule's "presumption" that a "criminal conviction," "even if vacated, expunged, or modified ... to correct constitutional or substantive defects," still triggers asylum ineligibility. Mot. 13-14. That is wrong too. The Ninth Circuit, along with every other court of appeals to have addressed the question, has held that a conviction that is expunged, vacated, or modified for rehabilitative purposes or to ameliorate the immigration consequences of the conviction remains a valid predicate offense for removal. *See Reyes v. Lynch*, 834 F.3d 1104, 1107 & n.15 (9th Cir. 2016) (collecting cases). The basis for any modification to a conviction is thus important to assessing whether that conviction is still valid for immigration purposes. As a general matter, the applicant for asylum has the burden of proof, *see* 8 U.S.C. § 1158(b)(1)(B)(i), which includes establishing both statutory eligibility for relief and that he merits a favorable exercise of discretion, *id.* §1229a(c)(4)(A); 8 C.F.R. § 1240.8(d). In cases where "the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply," such as where an alien has a conviction that would bar asylum eligibility, "the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d). The Rule's presumption simply applies this burden of proof: An applicant must establish eligibility for asylum, which includes demonstrating that he has no conviction that would disqualify him from eligibility. If he has a conviction, he must show that it is not the type that would bar relief, *or*, if it was later vacated, modified, or expunged, that this action was undertaken because of substantive or constitutional defects in the criminal proceeding. Plaintiffs raise the specter of an adjudicator "ignor[ing]" the basis for the court action, Mot. 14, but these determinations are governed by long-standing administrative interpretations of what constitutes a "conviction" for immigration purposes, which have focused on the statute under which the expungement or vacatur occurred as well as the court's rationale in granting relief. *See, e.g.*, *Matter of Marroquin-Garcia*, 23 I&N Dec. 705, 713 (A.G. 2005).

Finally, Plaintiffs also contend that the Rule encroaches on state judicial prerogatives. Mot.

14-15. That is unfounded. The uniform opinion of the courts of appeals, based on the statutory definition of "conviction" that Congress enacted for this context, *already allows* a vacated conviction to be used for immigration purposes where the vacatur was for rehabilitative or other non-substantive reasons. *See Reyes,* 834 F.3d at 11 & n.15; *see also* 8 U.S.C. § 1101(a)(48)(A). The Rule reflects that sound legal interpretation, while recognizing that the applicant for relief bears the burden to establish his eligibility, including that any potentially disqualifying conviction has been vacated for constitutional or other substantive reasons. The Rule operates in a fundamentally federal forum, and the sole question is what a conviction means in that forum. Given that focus, there is no encroachment on state criminal or judicial proceedings.

**B. The Rule Is Not Unconstitutionally Vague**

Plaintiffs contend that the phrases "reason to believe" coupled with "support, promotion, or furtherance" in the street-gang bar and the phrase "involves conduct amounting to" in the domestic-offense bar "[a]re unconstitutionally vague." Mot. 15; *see* Mot. 15-16. That is wrong.

These challenges fail at the threshold. Vagueness challenges "that do not involve First Amendment violations must be examined as applied" to the individual bringing the challenge. *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019). The Ninth Circuit has recognized an exception for "exceptional circumstances," such as when a categorical interpretation of a criminal statute "might be vague even as applied to challengers." *Id.* at 377. But Plaintiffs cannot raise any such as-applied challenge to the Rule: they are organizations not regulated by the Rule. 85 Fed. Reg. at 67202-03, 67257. The constitutional rights of aliens actually affected by the Rule "are personal and may not be asserted vicariously," *Kashem*, 941 F.3d at 376; *see East Bay*, 909 F.3d at 1240 (organizations may not rely on injuries to non-party aliens). Even if Plaintiffs could rely on injuries to non-party aliens, they still lack a vagueness claim because the Rule does not deprive aliens "of a life, liberty, or property interest sufficient to trigger protection of the Due Process Clause in the first place." *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000). Aliens lack a constitutionally protected liberty interest in the discretionary relief of asylum. *E.g.*, *Tovar-Landin v. Ashcroft*, 361 F.3d 1164 (9th Cir. 2004). Nor do aliens have a substantive interest in the process for determining their eligibility for discretionary relief. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 823 n.8 (9th

Cir. 2003). Because "deportable alien[s] with an interest only in discretionary relief ... may not bring [a] void-for-vagueness challenge under the Due Process Clause," *Tomasczuk v. Whitaker*, 909 F.3d 159, 164 (6th Cir. 2018), *a fortiori*, neither can the Plaintiff organizations here.

In any event, the Rule's challenged standards pass constitutional muster. The "reason to believe" standard has long been clearly understood as equivalent to the "probable cause standard." *See Matter of U-H-*, 23 I&N Dec. 355, 356 (BIA 2002). And even uncertain or imprecise standards are "almost certainly" not unconstitutionally vague where, as they will be here, "those standards are applied to real-world facts." *Guerrero v. Whitaker*, 908 F.3d 541, 545 (9th Cir. 2018); *see United States v. Davis*, 139 S. Ct. 2319, 2326 (2019) ("[A] case-specific approach would avoid [] vagueness problems"). The "reason to believe" standard to determine whether a conviction "was committed in support, promotion, or furtherance of the activity of a criminal street gang," and the domestic-offense bar's language on convictions for crimes that "involves conduct amounting to," require a fact-based inquiry based on all reliable evidence. 85 Fed. Reg. at 67,209, 67,225, 67,229, 67231. They accordingly satisfy any vagueness concerns. *See Guerrero*, 908 F.3d at 545.

## C. The Rule Is Not Arbitrary and Capricious

Plaintiffs argue that the Rule is arbitrary and capricious. Mot. 16-21. This too is wrong.

To begin, arbitrary-and-capricious review is limited and "highly deferential, presuming the agency action to be valid," *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010), and courts may not substitute their "judgment for that of the agency." *Gill v. U.S. Dep't of Justice*, 913 F.3d 1179, 1187-88 (9th Cir. 2019). It is "reasonable for the [agency] to rely on its experience" to arrive at its conclusions—even if those conclusions are not supported with "empirical research." *Sacora*, 628 F.3d at 1068-69. The agency need only articulate "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). In cases like this one, which does not concern a statutory gap but rather the express grant of authority to prescribe rules and standards, the "agency's promulgations are entitled to more than mere deference or weight; rather, they are entitled to legislative effect." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1177 (9th Cir. 2019).

The Rule satisfies these standards. The Departments adopted the Rule based on their

determination that "[a]warding the discretionary benefit of asylum to individuals" subject to the Rule's new criminal bars "would encourage lawless behavior, subject the United States to certain dangers, and otherwise undermine the policies underlying the statutory framework for asylum." 85 Fed. Reg. at 67,225; *see also id.* at 67,222. *See, e.g.,* AR.7731-74, 7912-75, 7992-97, 8032-34. The Rule thus bars from asylum those who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States" and "clarif[ies] the effect of criminal convictions on asylum eligibility." *Id.* at 67,242-43, 67,249, 67,252. The Rule is reasonably related to these objectives. The Rule explains the Departments' determination that it is not in the best interests of the United States to grant a major benefit— asylum—to aliens who have committed the crimes covered by the Rule. *Id.* at 67,225. To illustrate: As to felonies, the Rule explains that "[t]reating a felony conviction as disqualifying for purposes of obtaining the discretionary benefit of asylum ... would reflect the serious social cost of such crimes" and also promote predictability and efficiency in adjudications. 84 Fed. Reg. at 69,647; *see* 85 Fed. Reg. at 67,209, 67,216-17, 67,220, 67,242, 67,245-46, 67,248. The Rule further explains that barring asylum to those convicted of alien smuggling furthers the goal of not providing asylum to those who "display[] a serious disregard for U.S. immigration law," 84 Fed. Reg. at 69,648, and whose "offenses present a danger to the community," 85 Fed. Reg. at 67,219. Likewise, barring asylum for aliens convicted of illegal reentry "harmonizes the treatment of most aliens who have illegally reentered the United States after being removed," 84 Fed. Reg. at 69,648; 85 Fed. Reg. at 67,222, and is aimed at conduct that "undermines th[e] goal" of "maintaining the orderly and lawful admission of aliens into the United States," 85 Fed. Reg. at 67,222. The Rule also explains that barring asylum for aliens convicted of gang crimes or domestic violence protects the American public from aliens who represent "particular dangers to society," 84 Fed. Reg. at 69,650; 85 Fed. Reg. at 67,224-26, or commit acts that are "particularly reprehensible because the perpetrator takes advantage of an 'especially vulnerable' victim," 84 Fed. Reg. at 69,652; 85 Fed. Reg. at 67,229, 67,231, 67,247. The Rule further explains that barring aliens convicted for repeated and serious offenses of driving while under the influence from asylum eligibility protects the community from aliens who "threaten[] community safety" by repeatedly engaging in an

"extremely dangerous crime." 84 Fed. Reg. at 69,651; 85 Fed. Reg. at 67,227-28. Further, the Rule discourages document fraud and public-benefit offenses that pose "a significant affront to government integrity" and public safety. 84 Fed. Reg. at 69,653; 85 Fed. Reg. at 67,233-34. The Rule also promotes public health and safety against the harmful effects of controlled substance offenses. 84 Fed. Reg. at 69,654; 85 Fed. Reg. at 67,236. And the Rule's clarification of when post-conviction relief will render a conviction invalid for immigration purposes codifies agency precedent (*Matter of Thomas and Thompson*, 27 I&N Dec. 674, 680 (A.G. 2019)) while also dissuading "gamesmanship and manipulation in the drafting of orders vacating a conviction or modifying a criminal sentence," delineating the burden allocation, and "promot[ing] finality in immigration proceedings by encouraging an alien to act diligently if there is a legitimate basis to challenge a conviction or sentence." 84 Fed. Reg. at 69,655-56; 85 Fed. Reg. at 67,211. The Rule thus articulates "a rational connection between the facts found and the choice made." *Motor Vehicle*, 463 U.S. at 43. And the Rule reasonably explains any new policy choices because it "is permissible under the statute," *supra*, "there are good reasons for it, and [] the agency believes it to be better" than the prior policy, "which the conscious change of course adequately indicates." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009); *contra* Mot. 16-17.

Plaintiffs' contrary arguments lack merit. Mot. 16-21. First, Plaintiffs contend that the "Rule does not articulate a satisfactory explanation" because it relies on "promot[ing] adjudicative efficiency." Mot. 16; *see* Mot. 16-17. But as just explained, the Rule has multiple goals and justifications, including promoting regard for the societal values of the United States, 85 Fed. Reg. at 67,242, efficiency and predictability in adjudications, 84 Fed. Reg. at 69,647; 85 Fed. Reg. at 67,209, 67,216-17, 67,220, 67,242, 67,245-46, 67,248, and protecting the United States from those who have committed or been convicted of crimes showing dangerousness, *see* 84 Fed. Reg. at 69,647 (discussing the disabilities arising from felony convictions representing the "serious social cost of such crimes"); *id.* at 69,648 (discussing recidivism statistics); *id.* at 69,650 (discussing the dangerousness of street gangs); 85 Fed Reg. at 67,225 (same); *id.* at 67,227 (discussing case law recognizing "gravity of" drunk driving offenses); 84 Fed. Reg. at 69,652 (discussing Congress's determination that offenses against women and children and domestic-violence offenses are

reprehensible); 85 Fed. Reg. at 67,229 (same). Plaintiffs' focus on one justification for one bar—convictions for alien smuggling or harboring—without addressing the Rule's multiple other goals provides no basis to deem the Rule unreasoned. In any event, there is nothing unreasonable in pursuing efficiency as one of several goals, and Plaintiffs provide no basis to "second-guess[ ]" the Rule's "weighing of risks and benefits." *Dep't of Commerce*, 139 S. Ct. at 2571.

Second, doubling down on their assumption that the Rule's sole purpose is efficiency, Plaintiffs contend that that the Rule irrationally adopts a "rule-based approach[]" over "case-by-case determinations." Mot. 17. But there is nothing unreasonable about relying on rules rather than case-by-case adjudication. *Lopez*, 531 U.S. at 243-44. That some of the bars may require an individualized determination of a bar's applicability does not undermine the reasoned policy choice to rely on rules rather than a totality-of-the-circumstances, case-by-case analysis. Indeed, the Departments addressed these claims, responding that the new bars employ factual inquiries similar to those adjudicators already use and that adjudicators are already "adequately trained and equipped to conduct such analyses." 85 Fed. Reg. at 67,245; *see id.* at 67,225-26 (explaining that the "reason to believe" and "all reliable evidence" standards used in the bar based on gang-related offenses are used in other analyses); *id.* at 67,231 (acknowledging that adjudicators will have to engage in a fact-based inquiry that accounts for state law when determining whether an offense is related to domestic violence and that adjudicators already do so). Thus, even if efficiency was the Rule's only stated goal—which, again, it is not, *supra* 16-17—those additions do not defeat the Rule's goal of streamlining the asylum process. In any event, the Rule does not claim that the purpose of such individual determinations is to streamline processing of asylum claims.

Third, Plaintiffs assert that the "rule fails to consider important aspects of the problem." Mot. 17; *see* Mot. 18-21. They assert that the Departments did not "respond to significant comments." Mot. 18. That is incorrect. In over 50+ single-spaced, multi-columned pages, the Departments addressed 576 comments. *See* 85 Fed. Reg. at 67,204-55. The responses address all "significant comments, a category limited to those which raise relevant points, and which, if adopted, would require a change in the agency's proposed rule." *Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992). The Departments declined to address some comments but explained

their reasons for doing so, *e.g.*, 85 Fed. Reg. at 67,214, 67,219, 67,223, 67,226, 67,228, 67,230, 67,233-34—because all "had no bearing on 'relevant factors' to the rulemaking, nor any bearing on the final rule."[3] *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1082 (9th Cir. 2019). Moreover, "[a]n agency's failure to respond to any particular comment or point put forward by a rule's opponents is not a ground for finding per se arbitrary-and-capricious action." *City and Cty. of San Francisco*, 944 F.3d at 800. And none of the comments that Plaintiffs now identify would require a change in the Rule. Mot. 18. One comment that Plaintiffs identify was based on faulty premises and thus the Departments reasonably declined to address it. 85 Fed. Reg. at 67,222; Mot. 18 ("current administrative practices prevent asylum seekers from lawfully presenting themselves at the border"). Several comments discussed systemic concerns regarding the criminal-justice system (such as disparate policing practices) and the immigration system (such as English-language proficiency, access to counsel, and obstacles to obtaining evidence) that the Departments reasonably concluded were beyond the narrow asylum issues addressed by the Rule. 85 Fed. Reg. at 67,226, 67,230, 67,247, 67,249, 67,232-33, 67,237, 67,239; *see Altera Corp.*, 926 F.3d at 1082 (agency did not err by not considering "comments that proved irrelevant to its decision making process"). Plaintiffs further fault the Departments for not adequately responding to comments on "'humanitarian concerns for asylum seekers,'" Mot. 18 (quoting 85 Fed. Reg. at 67,243), and the "'complex "web" of asylum laws and regulations,'" Mot. 18 (quoting 85 Fed. Reg. at 67,244), but do not identify any relevant or significant points that should have been considered. Plaintiffs also fail to explain how other comments were relevant, such as "suggestions regarding treatment, support, and services for children who have experienced trauma," 85 Fed. Reg. at 67,244, the "dangerous conditions in Mexico, the effects of the [Migrant Protection Protocols], and the third-country transit bar," *id.* at 67,245, and allegations that the rule will "decrease the ability of asylum seekers to access to healthcare, food, and housing," *id.* at 67,245. Plaintiffs identify no relevant, significant comments the Departments did not address, and the

---

[3] Plaintiffs incorrectly argue that the Departments did not respond to comments asserting that the offenses barred are not similar to "particularly serious crimes." Mot.. at 17. The Departments explained why the crimes are grave enough, even if not rising to the level of "particularly serious crimes," to warrant a bar on asylum. *See, e.g.*, 85 Fed. Reg. at 67,225, 67,227, 67,229.

agencies' responses were sufficient to "enable [the Court] to see what major issues of policy were ventilated and why the agency reacted to them as it did." *Del. Dep't of Nat. Res. And Envtl. Control v. EPA*, 785 F.3d 1, 15 (D.C. Cir. 2015).

Fourth, Plaintiffs contend that the Departments "did not consider problems that arise from the Rule's interactions with [two] other rules." Mot. 19; *see* Mot 19-22. But this argument challenges the *process* the Departments used (or are using) in issuing *other* rules—not this Rule. Mot. 19. And Plaintiffs' arguments are misplaced for further reasons. The first rule, *Asylum Application, Interview, and Employment Authorization for Applicants*, issued as an NPRM on November 14, 2019, 84 Fed. Reg. 62,374 (Nov. 14, 2019), and as a final rule on June 26, 2020, 85 Fed. Reg. 38,532 (June 26, 2020), alters the eligibility criteria that asylum applicants must satisfy to obtain work authorization while their asylum applications are pending. Plaintiffs are correct that the final version of that rule adopted the bars set forth in the Rule here. Mot. 19-20. But the bars to work authorization there are not related to asylum eligibility, and the rules, other than containing the same bars and dealing with asylum applicants, do not overlap or otherwise interact. Also, Plaintiffs' challenges to the procedure for promulgating the criminal bars in the work-authorization rule are not challenges to this Rule. The second rule, still only an NPRM, *Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review*, 85 Fed. Reg. 36,264 (June 15, 2020), proposes to apply the statutory or regulatory eligibility bars to asylum during the credible-fear process. *Id.* at 36,296. An alien who is subject to one of those bars would receive a negative fear determination and would then be screened for eligibility for withholding of removal and protection under the CAT. *Id.* If the alien seeks to challenge the application of the bar, he may do so before an immigration judge. *Id.* at 36,304-05. The prospect of these bars being incorporated into the credible-fear and reasonable-fear processes is relevant to the NPRM incorporating the bars—not this Rule. Plaintiffs had ample opportunity to comment on the NPRM between June 15 and July 15, 2020.[4]

---

[4] Indeed, all Plaintiffs commented on that rule: https://beta.regulations.gov/comment/EOIR-2020-0005-1514 (Pangea Legal Services); https://beta.regulations.gov/comment/EOIR-2020-0005-1607 (Catholic Legal Immigration Network); https://beta.regulations.gov/comment/EOIR-2020-0005-1705 (Dolores Street Community Services); https://beta.regulations.gov/comment/EOIR-2020-0005-1746 (Capital Area Immigrants' Rights Coalition).

Plaintiffs contend that these other rules are "interdependent" and will have "collateral impacts" on this Rule that the Departments failed to consider. Mot. 20 (citing *Portland Cement Ass'n v. EPA*, 665 F.3d 177, 187 (9th Cir. 2011)). But Plaintiffs do not explain how the other two rules will "disrupt" this Rule, and fail to identify any basis to conclude that either rule has "changed [the] regulatory posture" of this Rule. *Portland Cement*, 665 F.3d at 187. If Plaintiffs have concerns about the interaction of this Rule and the other two rules, the proper venue for airing those concerns would have been through *commenting* on the NPRM or a challenge to either other rule if and when the Plaintiffs have any basis to do so. *Id.* at 185. And even in the rare instance where a challenger wielding the subject-matter expertise of these Plaintiffs can plausibly argue that they "could not have reasonably anticipated" a rule's impact on a separate rulemaking, the plaintiff's remedy is to petition for "reconsideration of the rule," not to attempt to bootstrap its challenges to other rulemakings to this case. *Id.*

**D. The Rule Is Procedurally Valid**

The Rule is procedurally valid. Plaintiffs' contrary arguments (Mot. 21-23) are meritless.

Length of Comment Period. Plaintiffs argue that the Rule was adopted without sufficient opportunity for public comment. Mot. 21. But the APA has no minimum-length requirement for notice and comment. Title 5 U.S.C. § 553 sets forth the procedures for informal rulemaking: the agency must provide notice of the proposed rulemaking and "give interested persons an opportunity to participate ... through submission of written data, views, or arguments." The APA "mandates no minimum comment period." *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1484 (9th Cir. 1992). Some "opportunity to participate is all that the APA requires," *Phillips Petroleum Co. v. EPA*, 803 F.2d 545, 559 (10th Cir. 1986); *see Riverbend Farms*, 958 F.2d at 1484 (noting with approval the "usual[]" practice to allow "thirty days or more" for comment).[5] Thus, the time for comment is left to an agency's reasonable discretion. *See, e.g.*, *Vt. Yankee Nucl. Power Corp. v. NRDC*, 435 U.S. 519, 543 (1978). And it is clear that the 30-day period provided here

---

[5] Plaintiffs' reliance on Executive Order Nos. 12866 and 13563 is misplaced. Mot. 21. Those orders are "intended only to improve the internal management of the Federal Government and do[] not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States." EO 12866, § 10; *see* EO 13563, § 7(d).

gave the public sufficient opportunity to comment, given that 576 comments were received, *see* 85 Fed. Reg. at 67204. *See* 5 U.S.C. § 553; *Riverbend Farms*, 958 F.2d at 1484; AR.8356-11063.

Even if a longer comment period were required, there was no prejudice to Plaintiffs. *See* 5 U.S.C. § 706. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). A failure to afford adequate opportunity for comment is harmless "where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220 (9th Cir. 2004). Here, three of the four Plaintiffs, and counsel from the National Immigration Project of the National Lawyers' Guild, submitted comments during the 30-day period, so no prejudice can be shown.[6] Plaintiffs nevertheless complain that they were not "fairly apprise[d]" of other rules. Mot. 22. Plaintiffs appear to claim that they were unable to comment on these *other rules* during the comment period for the Rule. *Id.* But any complaint about Plaintiffs' alleged inability to comment about the impact of this Rule on *other* proposed rules is relevant only to a challenge to those other rules. Asking this Court to address those challenges in this case (which does not concern employment authorization or credible-fear or reasonable-fear procedures), rather than waiting for a case when those other rules are finalized or injure Plaintiffs, is an improper request for a "premature" advisory opinion. *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1324-25 (9th Cir. 1992) (rejecting similar claim). And Plaintiffs' claim about confusion over "which authority the Departments relied on in promulgating" the Rule, Mot. 22, is belied by the fact commenters commented on that exact issue. 85 Fed. Reg. at 67,207-08.

The Federalism Certification. Plaintiffs claim that the Departments violated the federalism-certification requirements of Executive Order No. 13132, § 1(a), 64 Fed. Reg. 43,255 (Aug. 4, 1999). Mot 22-23. But that order does not create a private right of action. Section 11 of that order, labeled "Judicial Review," provides that "[t]his order is intended only to improve the internal management of the executive branch, and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or

---

[6] *See* AR.8956-71 (Catholic Legal Immigration Network); AR.9999-10024 (National Immigration Project of the National Lawyers' Guild); AR.10095-10135 (Capital Area Immigrants' Rights Project); AR.10487-508 (Dolores Street Community Services).

any person." 64 Fed. Reg. at 43,259. Thus, by its terms, the Executive Order precludes judicial review of an agency's compliance with its directives. *See Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 14 F.3d 429, 445 (9th Cir. 1993) (holding that court had no authority to review claim that USDA did not follow directives of regulation that contained substantially similar language precluding private right of action); *Valentine Prop. Assocs., LP v. U.S. Dep't of Housing & Urban Dev.*, 785 F. Supp. 2d 357, 368 (S.D.N.Y. 2011) (concluding that current and prior federalism executive orders, Nos. 12866 and 13132, do not create private rights of action). Regardless, the agencies reasonably addressed federalism concerns. 85 Fed. Reg. 67,211, 67,216.

Regulatory Flexibility Act. Plaintiffs also contend that the Rule violates the RFA, because it did not analyze the Rule's impact on "small entities." Mot. 23. That is meritless.

First, Plaintiffs lack a cause of action to enforce the RFA, 5 U.S.C. § 604, because Plaintiffs are not "small entities" that are "directly regulated by" the Rule, and, thus, Plaintiffs "do not have an injury contemplated within the zone of interest of the RFA." *US Citrus Science Council v. U.S. Dep't of Agriculture*, 312 F. Supp. 2d 884, 912 (E.D. Cal. 2018); *see Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) (the RFA concerns only a rule's effect on small entities that are directly regulated by the rule and does not require an agency to consider downstream economic effects). The Rule explains that it "would not regulate 'small entities' as that term is defined in 5 U.S.C. 601(6). Only individuals, rather than entities, are eligible for asylum, and only individuals are eligible to apply for asylum or are otherwise placed in immigration proceedings." 85 Fed. Reg. at 67255. Plaintiffs thus lack any RFA claim. And Plaintiffs' claim would fail on the merits. "The RFA imposes no substantive requirements on an agency; rather its requirements are purely procedural in nature." *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1101 (9th Cir. 2005). "To satisfy the RFA, an agency must only demonstrate a 'reasonable, good-faith effort' to fulfill its requirements." *Id.* Plaintiffs identify no basis to dispute that Defendants made such a "reasonable, good-faith effort" with this Rule: Defendants "certif[ied] that the proposed rule will not have a 'significant economic impact on a substantial number of small entities' and provid[ed] a factual basis for that certification." *Envtl. Def. Ctr. v. EPA*, 344 F.3d 832, 878 (9th Cir. 2003) (citing 5 U.S.C. § 605); *see* 85 Fed. Reg. at 67,255.

## II. Considerations of Irreparable Harm and the Equities Favor the Government.

A TRO would irreparably harm the United States and the public. *Contra* Mot. 24-25. It is always in the public interest to protect the country's borders and enforce its immigration laws. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Executive Branch issued the Rule after notice and comment to ensure that dangerous criminal aliens and threats to public safety do not receive asylum. 85 Fed. Reg. at 67,225; 67,242-43, 67,249, 67,252. Preventing such criminals from endangering our national community is "an urgent objective of the highest order." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2088 (2017). And an injunction allowing such aliens to circumvent the considered judgment of the Executive Branch that they are a danger to our nation and to procure legal "status" irreparably harms the government and the public. *City & Cty. of San Francisco*, 944 F.3d at 806. Against this, Plaintiffs fail to show any "immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). They do not identify a single alien who would be affected by the Rule. Mot. 24. Even if they had, aliens ineligible for asylum lose only a discretionary benefit to which they are never entitled. And the rule does not "return people to persecution," Mot. 13, as aliens remain eligible for mandatory protections from removal, including withholding of removal and CAT protection. And Plaintiffs may not invoke third-party harms to non-party aliens, as they assert their own legal rights. *See East Bay*, 932 F.3d at 764. Plaintiffs are organizations and the *only* harms they allege to themselves are speculations about funding and the need of familiarizing themselves with new law. *See* Mot. 24; Compl. ¶¶ 92-108. But those harms do not support standing, let alone irreparable injury.[7] "[U]ntold numbers of organizations regularly voice dissatisfaction with public laws and actions that may affect their ordering of priorities in some way" but those "are not cognizable organizational injuries." *CASA de Md., Inc. v. Trump*, 971 F.3d 220, 239 (4th Cir. 2020). And these "purported injuries [are] not the product of the Rule's dictates, but of [Plaintiffs'] own priorities and choices. This is not 'irreparable harm' in any judicially-cognizable sense." *Id.* at 255. Even if credited, those

---

[7] Defendants acknowledge that the Ninth Circuit in *East Bay* concluded that organizations may assert standing based on diversion-of-resource harms. 950 F.3d at 1267. Defendants disagree with that decision, critical here, *East Bay* does not hold that the limited speculation Plaintiffs advance is sufficiently irreparable to warrant nationwide injunctive relief.

1    inconveniences do not outweigh the harm imposed by undermining the "efficient administration
2    of the immigration laws." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019).
3    **III. Any Relief Must Be Sharply Limited.**
4            Even if this Court were to grant relief, universal relief would be inappropriate, and any
5    relief must be tailored to the specific organizational Plaintiffs here.
6            First, any TRO must be narrowly tailored to portions of the Rule, if any, actually ruled
7    unlawful. Plaintiffs fault only parts of the Rule, and so even if the Court were to hold those parts
8    unlawful, that is no basis to enjoin the parts of the Rule that remain unchallenged. The Rule erects
9    numerous, distinct asylum eligibility bars, clarifies when a conviction can be deemed vacated or
10   expunged, and eliminates certain reconsideration. And Plaintiffs fail to identify a single actual
11   human being who will imminently be subject to the Rule. That is important, because many of the
12   eligibility bars the Rule establishes require assessment of specific facts in the concrete
13   circumstances in an aliens' removal proceedings. Plaintiffs nevertheless demand that this Court
14   enjoin the Rule as to every alien that may have the Rule applied to them. Relief to such aliens
15   should come, if at all, in an individual alien's removal proceedings, 8 U.S.C. §§ 1229a(b)(4)(A)-
16   (B), (c)(1)(A), (c)(4)(B), and in later petitions for review in the federal courts of appeals, 8 U.S.C.
17   § 1252(a)(5), (b)(9); *see J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032-38 (9th Cir. 2016) ("*any* issue—
18   whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through
19   the [petition-for-review] process"). So any injunction cannot extend to aliens whose asylum
20   eligibility must be adjudicated first in immigration court and then in the courts of appeal.
21           Second, under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's
22   particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). And the rule in equity is that
23   injunctions "be no more burdensome to the defendant than necessary to provide complete relief to
24   the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Those restrictions
25   are especially important at the TRO stage, where relief must be "as narrow as possible to prevent
26   the irreparable injury" of Plaintiffs—and *only* Plaintiffs. *Cal. Hosp. Ass'n v. Maxwell-Jolly*, 2011
27   WL 464008, *1 (E.D. Cal. Feb. 4, 2011). Here, any relief must be tailored to remedying Plaintiffs'
28   alleged resource-allocation harms. *See L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664

(9th Cir. 2011); *accord, e.g.*, *Nat'l Ass'n of Mfrs. v. DHS*, — F. Supp. 3d —, 2020 WL 5847503, at *15 (N.D. Cal. Oct. 1, 2020) (holding that in organizational-standing case, preliminary relief properly limited to the organizations or their members). Indeed, the Ninth Circuit has repeatedly narrowed nationwide injunctions involving organizations even when the challenges to statutes were facial because "all injunctions—even ones involving national policies—must be narrowly tailored to remedy the specific harm shown." *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019); *see California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018); *City and Cty. of San Francisco*, 897 F.3d at 1244. Plaintiffs barely attempt to argue that nationwide relief is necessary to remedy their harms, merely noting that one of the organizations has "affiliates in 48 states and the District of Columbia" and that nationwide relief maintains "uniformity in immigration enforcement." Mot. 25. That paltry argument cannot overcome the weighty Article III concerns with nationwide injunctions.

Finally, the APA does not require injunctive relief. The APA provides only that a court may "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). Nothing in § 706(2)'s text specifies whether challenged agency action should be set aside on its *face* or *as applied* to the plaintiffs. In the absence of a clear statement in the APA that it displaces traditional equity rules, the Court should adopt the narrower view, particularly given the preliminary posture of this case. *See Va. Soc'y for Human Life v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) ("Nothing in the language of the APA ... requires us to exercise such far-reaching power."). Indeed, the Ninth Circuit has repeatedly rejected Plaintiffs' view that universal relief follows automatically in an APA case, including immigration cases. *See Azar*, 911 F.3d at 584 (narrowing nationwide preliminary injunction in APA case to apply "only to the plaintiff[s]" as that would "provide complete relief to them"); *East Bay*, 934 F.3d at 1029 (similar); *City and Cty. of San Francisco*, 897 F.3d at 1244 (similar). Here, a TRO running to the organizations and their bona fide clients, and only as to parts of the Rule the Court finds unlawful, would provide "complete relief." *Azar*, 911 F.3d at 584.

## CONCLUSION

The Court should deny the TRO motion.

1    Respectfully submitted,

2                                    JEFFREY BOSSERT CLARK
                                    Acting Assistant Attorney General
3
                                    WILLIAM C. PEACHEY
4                                    Director

5                            By: /s/ Erez Reuveni
6                                    EREZ REUVENI
                                    Assistant Director
7                                    Office of Immigration Litigation
                                    U.S. Department of Justice, Civil Division
8                                    P.O. Box 868, Ben Franklin Station
                                    Washington, DC 20044
9                                    Tel: (202) 307-4293
                                    Email: Erez.R.Reuveni@usdoj.gov
10
11                                    PATRICK GLEN
12                                    CHRISTINA GREER
                                    Senior Litigation Counsel
13
                                    CRAIG NEWELL
14                                    Trial Attorney

15
16   Dated: November 9, 2020         *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on November 9, 2020, I electronically filed the foregoing document

3  with the Clerk of the Court for the United States Court of for the Northern District of California

4  by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will

5  be accomplished by the CM/ECF system.

6

7                                By: */s/ Erez Reuveni*
                                      EREZ REUVENI
8                                      Assistant Director
                                      United States Department of Justice
9                                      Civil Division

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28