Naomi A. Igra, SBN 269095
naomi.igra@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Sabrineh Ardalan (*pro hac vice*)
sardalan@law.harvard.edu
Philip L. Torrey (*pro hac vice*)
ptorrey@law.harvard.edu
HARVARD LAW SCHOOL
HARVARD IMMIGRATION AND REFUGEE
CLINICAL PROGRAM
6 Everett Street, WCC 3103
Cambridge, MA 02138
Telephone: +1 617 384 7504
Facsimile: +1 617 495 8595

Sirine Shebaya (*pro hac vice*)
sirine@nipnlg.org
NATIONAL IMMIGRATION PROJECT OF
THE NATIONAL LAWYERS GUILD
2201 Wisconsin Avenue N.W., Suite 200
Washington, D.C. 20007
Telephone: +1 202 656 4788
Facsimile: +1 617 227 5495

Leila Kang (*pro hac vice*)
leila@immdefense.org
IMMIGRANT DEFENSE PROJECT
40 W. 39th Street, Fifth Floor
New York, NY 10018
Telephone: +1 646 762 8428

*Attorneys for Plaintiffs*                    (Additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| PANGEA LEGAL SERVICES, *et al.*, | Case No. 3:20-cv-7721-SI |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*, | Assigned to Hon. Susan Illston |
| Defendants. | Date:          November 18, 2020 |
| | Time:          2:00 pm |
| | Courtroom:  1, 17th Floor (via Zoom) |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................2

       A.     Plaintiffs are likely to succeed on the merits. ............................................2

              1.     The rule conflicts with the INA. ......................................................2

                     a.     Defendants lack the authority to adopt categorical bars that are
                            not "consistent with" the statutory framework. ......................2

                     b.     Defendants lack authority to adopt a presumption that creates
                            severe due process and federalism concerns without a clear
                            statement from Congress.........................................................4

              2.     Some of the Rule's categorical bars are unconstitutionally vague. ...................5

              3.     The Rule is arbitrary and capricious. ...............................................6

                     a.     The Rule does not articulate a satisfactory explanation for its
                            departure from decades of agency and court precedent.......................6

                     b.     The Rule fails to meaningfully address important comments and
                            data.................................................................8

              4.     The Rule is procedurally invalid.......................................................9

                     a.     The Rule was adopted without sufficient chance for public
                            comment...................................................................9

                     b.     The Rule does not properly analyze its impacts on federalism. ..........10

                     c.     The Rule does not comply with the Regulatory Flexibility Act. .........10

       B.     Circuit precedent forecloses Defendants' irreparable harm arguments. ......................11

       C.     The equities and public interest factors tip sharply in Plaintiffs' favor. ......................11

       D.     The Court should enjoin the entire Rule nationwide. ...................................13

III.   CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alim v. Gonzales,*
    446 F.3d 1239 (11th Cir. 2006) ..................................................................... 5

*All. for Nat. Health U.S. v. Sebelius,*
    775 F. Supp. 2d 114 (D.D.C. 2011) ........................................................ 5, 15

*Alphonsus v. Holder,*
    705 F.3d 1031 (9th Cir. 2013) ................................................................. 2, 3

*Am. Fed'n of Labor v. Chertoff,*
    552 F. Supp. 2d 999 (N.D. Cal. 2007) .......................................................... 11

*Andriasian v. INS,*
    180 F.3d 1033 (9th Cir. 1999) ..................................................................... 6

*Bare v. Barr,*
    975 F.3d 952 (9th Cir. 2020) ....................................................................... 7

*Brown v. Gardner,*
    513 U.S. 115 (1994)....................................................................................... 3

*Cal. Wilderness Coal. v. Dep't of Energy,*
    631 F.3d 1072 (9th Cir. 2011) ..................................................................... 9

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) ..................................................................... 14

*City & Cnty. of San Francisco v. Trump,*
    897 F.3d 1225 (9th Cir. 2018) ................................................................... 14

*Coffin v. United States,*
    156 U.S. 432 (1895)....................................................................................... 5

*Doe v. Trump,*
    957 F.3d 1050 (9th Cir. 2020) ................................................................... 13

*E. Bay Sanctuary Covenant v. Barr,*
    934 F.3d 1026 (9th Cir. 2019) ................................................................... 14

*E. Bay Sanctuary Covenant v. Barr,*
    964 F.3d 832 (9th Cir. 2020) ("*EBSC III*")............................................*passim*

*E. Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018) ("*EBSC I*") ............................................. 4, 13

ii

*E. Bay Sanctuary Covenant v. Trump,*
   950 F.3d 1242 (9th Cir. 2020) ("*EBSC II*") ....................................................*passim*

*FCC v. Fox Tel. Stations, Inc.,*
   556 U.S. 502 (2009)..................................................................................... 7

*FCC v. Sanders Bros. Radio Station,*
   309 U.S. 470 (1940) ..................................................................................... 5

*Gonzales v. ICE,*
   975 F.3d 788 (9th Cir. 2020) ......................................................................... 14

*Guerrero v. Whitaker,*
   908 F.3d 541 (9th Cir. 2018) ......................................................................... 2

*Haitian Refugee Ctr. v. Smith,*
   676 F.2d 1023 (5th Cir. 1982) ....................................................................... 6

*Immigrant Leg. Res. Ctr. v. Wolf,* Case No. 20-cv-05883-JSW,
   2020 WL 5798269 (N.D. Cal. Sept. 29, 2020) ("*ILRC*") ....................... 8, 9, 14

*J.E.F.M. v. Lynch,*
   837 F.3d 1026 (9th Cir. 2016) (Opp. 24) ....................................................... 14

*Johnson v. Mississippi,*
   486 U.S. 578 (1985).................................................................................... 4

*Kashem v. Barr,*
   941 F.3d 358 (9th Cir. 2019) ...................................................................... 5, 6

*Kolender v. Lawson,*
   461 U.S. 352 (1983).................................................................................... 6

*Matter of Frentescu,*
   18 I. & N. Dec. 244 (BIA 1982) ..................................................................... 2

*Matter of Pula,*
   19 I. & N. Dec. 467 (BIA 1987) ..................................................................... 7

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
   138 S. Ct. 617 (2018)................................................................................... 3

*Nat'l Ass'n of Mfrs. v. Dep't of Homeland Sec.,*
   No. 20-cv-04887-JSW, 2020 WL 5847503 (N.D. Cal. Oct. 1, 2020) ("*NAM*")........... 14

*Nath v. Gonzales,*
   467 F.3d 1185 (9th Cir. 2006) ....................................................................... 4

*Nken v. Holder,*
   556 U.S. 418 (2009).................................................................................... 13

*Phillips Petroleum Co. v. EPA,*
    803 F.2d 545 (10th Cir. 1986) ............................................................................................ 9

*Preminger v. Principi,*
    422 F.3d 815 (9th Cir. 2005) ............................................................................................ 13

*Reyes v. Lynch,*
    834 F.3d 1104 (9th Cir. 2016) ........................................................................................... 5

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. Dep't of Agric.,*
    415 F.3d 1078 (9th Cir. 2005) ......................................................................................... 11

*Riverbend Farms, Inc. v. Madigan,*
    958 F.2d 1479 (9th Cir. 1992) ........................................................................................... 9

*Solid Waste Agency of N. Cook. Cnty. v. U.S. Army Corps of Eng'rs,*
    531 U.S. 159 (2001) ........................................................................................................... 5

*United States v. Davis,*
    139 S. Ct. 2319 (2019) ....................................................................................................... 6

*US Citrus Sci. Council v. United States Dep't of Agric.,*
    312 F. Supp. 3d 884 (E.D. Cal. 2018) ............................................................................. 11

*Valentine Properties Assocs., LP v. HUD,*
    785 F. Supp. 2d 357 (S.D.N.Y. 2011) (cited at Opp. 22) ................................................ 10

**Statutes**

5 U.S.C. § 611(a)(1) .............................................................................................................. 11

5 U.S.C. § 706(2)(D) ....................................................................................................... 10, 11

5 U.S.C. § 706(2)(B) .............................................................................................................. 5

8 U.S.C. § 1158(a)(1) ......................................................................................................... 4, 6

8 U.S.C. § 1158(b)(2)(A)(ii) ................................................................................................... 4

8 U.S.C. § 1158(b)(2)(B)(i) ................................................................................................. 3, 4

8 U.S.C. § 1158(b) .................................................................................................................. 1

8 U.S.C. § 1158(b)(2)(C) ..................................................................................................... 1, 2

8 U.S.C. § 1252(a)(5) ............................................................................................................ 13

8 U.S.C. § 1252(b)(9) ............................................................................................................ 13

**Other Authorities**

Convention Against Torture ("CAT") ................................................................ 12

Immigration and Nationality Act ("INA") ........................................................ *passim*

Procedures for Asylum and Bars to Asylum Eligibility,
    85 Fed. Reg. 67202-67260 (Oct. 21, 2020) ................................... 5, 6, 8, 10

Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 ................................... 3

Regulatory Flexibility Act ("RFA") ............................................................. 10, 11

## I.    INTRODUCTION

Defendants' opposition confirms the Rule's invalidity. Ignoring the Ninth Circuit's holding that "regulations imposing additional limitations and conditions under § 1158(b)(2)(C) must be consistent with the core principle" of the statutory eligibility bars, *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 848 (9th Cir. 2020) ("*EBSC III*"), Defendants see no limiting principle at all in the statute. They believe they are free to ignore the specific boundaries Congress drew, for example, by overriding the carve-outs Congress wrote into the aggravated-felony statute. *See* Mot. 9. They also feel free to bar eligibility based on sweeping categories of mostly minor offenses—or suspected conduct—that does not "serve as a useful proxy," *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1276 (9th Cir. 2020) ("*EBSC II*"), for identifying people "who pose a threat to society," *EBSC III*, 964 F.3d at 846. Indeed, Defendants do not try to argue that categorically barring asylum-seekers for, *e.g.*, minor drug-possession convictions (*see* Mot. 8) is "consistent with" Congress's statutory approach. Instead, they double down on the Rule's assertion that they can categorically exclude anyone who supposedly shows "a disregard for the societal values of the United States." Opp. 1, 2, 10, 15, 16. But the statute says no such thing. And Defendants' view clashes with the international obligations codified in the INA and the Ninth Circuit's directive to construe § 1158(b) "with lenience toward migrants." *EBSC II*, 950 F.3d at 1275. Defendants' opposition simply fails to grapple with the Ninth Circuit's binding construction of 8 U.S.C. § 1158(b)(2)(C). The Rule's interpretation of the INA is therefore impermissible, and some of the categorical bars also violate due process, all in violation of the APA.

The Rule is also arbitrary and capricious, both because it fails to acknowledge and justify its startling departure from decades of agency precedent, and because it fails to support its assertions and conclusions with logic or evidence. Defendants' opposition fails to rebut these flaws. And the Rule is procedurally invalid for several reasons.

The Court should therefore enjoin the entire Rule nationwide. The Ninth Circuit has held nationwide injunctions proper in APA cases where the plaintiffs can show that it is necessary to provide complete relief. That is the case here. Plaintiffs work with asylum-seekers across the country. Indeed, this case is materially indistinguishable from multiple others where the Ninth Circuit affirmed such

relief. And while Defendants urge the Court to leave some part of the Rule intact, there is no basis to do so: The entire Rule is invalid, both substantively and procedurally. The motion should be granted.

## II.   ARGUMENT

### A.   Plaintiffs are likely to succeed on the merits.

#### 1.   The rule conflicts with the INA.

##### a.   *Defendants lack the authority to adopt categorical bars that are not "consistent with" the statutory framework.*

Plaintiffs showed that "Congress went out of its way" to limit the scope of Defendants' authority under 8 U.S.C. § 1158(b)(2)(C). *EBSC III*, 964 F.3d at 849. Their contrary arguments lack merit. To start, Defendants' heavy reliance on their discretion to ultimately grant or deny individual asylum claims (*e.g.*, Opp. 7) confuses the issues. "Discretion to deny asylum to eligible [noncitizens] . . . is different from discretion to prescribe criteria for asylum eligibility . . . . [T]he discretion to prescribe criteria for eligibility is constrained by § 1158(b)(2)(C)." *EBSC III*, 964 F.3d at 849. Indeed, the Ninth Circuit emphasized "the importance Congress attached to the constraints on the Attorney General's discretion to prescribe criteria for asylum eligibility." *Id.* Section 1158(b)(2)(C)'s delegation of authority is thus "constrained" to rules that follow the "core principle" of the statutory eligibility bars. *See id.* at 848–49.

Defendants' repeated references to "the societal values of the United States" or "American ideals of the rule of law," Opp. 1, 2, 10, 15, 16, thus confirm the Rule's invalidity. A core statutory principle, which in turn reflects our international commitments, is to protect "the safety of those already in the United States," *EBSC II*, 950 F.3d at 1275, by excluding those "who pose a threat to society," *EBSC III*, 964 F.3d at 846. For that reason, Defendants are wrong to claim that they can categorically exclude people without regard to the "level of crime" or "level of seriousness" of their conduct. Opp. 9. As the Ninth Circuit has held, Congress focused on "*very grave punishable act[s].*" *Alphonsus v. Holder*, 705 F.3d 1031, 1038 (9th Cir. 2013) (quoting *Matter of Frentescu*, 18 I. & N. Dec. 244, 246 (BIA 1982)), *abrogated on other grounds*, *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018). While Defendants suggest that our "international obligations" are irrelevant because withholding of removal, not asylum, implements the United States' "non-refoulement obligations,"

1   Opp. 9 n.2, that misses the point: Congress drew the statutory asylum bars in part from the Refugee

2   Convention, so the Convention informs Congress's intent. *See* Mot. 3 (explaining that the Refugee

3   Act conforms U.S. law to the Convention); *id.* at 6–7 (explaining the provisions Congress incorpo-

4   rated).

5       Defendants also make much of the statutory eligibility bar for aggravated felonies, 8 U.S.C.

6   § 1158(b)(2)(B)(i), by cherry-picking a few seemingly less serious aggravated felonies and relying on

7   them to deride Plaintiffs' assertion that bars to asylum eligibility are typically limited to grave offenses

8   like "blowing up a passenger plane" or "wanton killing in a public place." Opp. 9–10. But they ignore

9   that those examples come straight from the Ninth Circuit's opinion in *Alphonsus*, 705 F.3d at 1037

10  n.6.  They also neglect that *Alphonsus* addressed the aggravated felony bar and *still* concluded that the

11  statutory bars create high thresholds of danger and seriousness. *Id.* at 1047–49.  In any event, all ag-

12  gravated felonies require a conviction, while some of the Rule's bars do not. And even the least serious

13  aggravated-felony conviction is still different in kind from simple drug possession, unlawfully export-

14  ing fish, driving with a suspended license, making a prank phone call, graffiti with a supposed gang

15  link, or simply being *suspected* of domestic violence—all of which could categorically bar asylum

16  eligibility under the Rule. *See* Mot. 7–8. Indeed, Defendants simply ignore the motion's many exam-

17  ples of the minor, non-dangerous offenses the Rule covers, *see id.* at 7–12, which show that its sweep-

18  ing and unprecedented categorical bars are not consistent with the INA.

19      Nor can Defendants justify their choice to exclude asylum-seekers based on convictions Con-

20  gress specifically carved out in the aggravated-felony definition—for example, a "harboring" convic-

21  tion for assisting one's own child, Mot. 9. A basic principle of statutory interpretation, which applies

22  fully at *Chevron* step one, requires courts and agencies to "give effect to Congress' express inclusions

23  and exclusions, not disregard them." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018);

24  *Brown v. Gardner*, 513 U.S. 115, 120 (1994). When Congress says that a particular conviction bars

25  asylum eligibility only in certain circumstances, Defendants are not free to say otherwise—especially

26  when their departure from the statutory regime clashes with the core statutory principle.

27      Likewise, Defendants' contention that the Rule "does not bar eligibility based on manner of

28  entry," because it requires "a criminal *conviction*" for illegal reentry, Opp. 11, is mistaken. This bar

3

flouts the Ninth Circuit's holding that denying eligibility "because of [the] method of entry" is "inconsistent with the INA," *see EBSC II*, 950 F.3d at 1261, 1276, and the underlying treaty obligations incorporated into the INA. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 772–74 (9th Cir. 2018) ("*EBSC I*"); 8 U.S.C. § 1158(a)(1) ("Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ) . . . may apply for asylum. . . ."). Defendants also try to turn this point around by arguing that "Congress itself rejected the view that a manner-of-entry bar can never be imposed." Opp. 11. But the fact that Congress can do something by statute does not mean an agency can do it by regulation, and in any event the Rule obliterates the careful distinction Congress wrote into the statute. Mot. 9.

Defendants' contention that the Rule can appropriately bar eligibility based on unadjudicated conduct is equally contrary to the INA. They say convictions are not a necessary predicate to additional eligibility bars because "five of the six statutory eligibility bars have *no* conviction requirement." Opp. 12. But only two of the bars relate to criminal conduct in the United States, and—consistent with basic due process principles—both require a conviction. *See* 8 U.S.C. § 1158(b)(2)(B)(i); 8 U.S.C. § 1158(b)(2)(A)(ii). The Rule's categorical bars are not consistent with the "core principle" underlying the statutory bars in Section 1158(b). The Rule is contrary to law.

> **b.   Defendants lack authority to adopt a presumption that creates severe due process and federalism concerns without a clear statement from Congress.**

Defendants say the Rule's novel presumption that certain vacated or modified convictions remain valid—even if vacated or modified for substantive or constitutional defects—"simply applies" the principle that "where [a noncitizen] has a conviction that would bar asylum eligibility," that person bears "the burden of proving . . . that such grounds do not apply." Opp. 12. That misses the point. A conviction vacated for substantive or constitutional reasons is not a conviction at all, and so should not trigger any consequences. *See Johnson v. Mississippi*, 486 U.S. 578, 585 (1985) (noting that after a "conviction has been reversed, unless and until [the defendant] should be retried, he must be presumed innocent of that charge"); *Nath v. Gonzales*, 467 F.3d 1185, 1187–89 (9th Cir. 2006) ("[A] conviction vacated because of a procedural or substantive defect is not considered a conviction for immigration purposes"). Rather than recognize the implications of this "axiomatic and elementary"

principle, *Coffin v. United States*, 156 U.S. 432, 453 (1895), Defendants have promulgated a Rule that—as they freely admit, *see* Opp. 12—requires an asylum-seeker whose conviction has been "erased" to bear a burden, as though it were still valid. Further still, the Rule grants asylum adjudicators the ability to impose consequences based on a nonexistent conviction if the adjudicator, after an unbounded inquiry to determine the "purposes" for which a conviction was vacated or modified, disagrees with the state court's express basis for the ruling. 85 Fed. Reg. at 67259–60. In other words, the Rule impermissibly authorizes a presumption of guilt where a conviction's erasure demands a presumption of innocence. There is no evidence that Congress has "spoken very clearly" to authorize that startling result. *See Alim v. Gonzales*, 446 F.3d 1239, 1249 (11th Cir. 2006).

Defendants also miss Plaintiffs' point about federalism. None of the authorities they cite—the INA's definition of "conviction" or *Reyes v. Lynch*, 834 F.3d 1104, 1107 & n.15 (9th Cir. 2016)—suggests that the INA authorizes the agency to *presume* that a state court's *constitutional* ruling is without effect. That the Rule "operates in a fundamentally federal forum" does not somehow avoid any federalism implications. Opp. 13. To presume that a state court's exercise of its traditional power over the definition and prosecution of crimes is voided the instant it reaches federal hands is undoubtedly an "administrative interpretation [that] alters the federal-state framework by permitting federal encroachment upon a traditional state power." *Solid Waste Agency of N. Cook. Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–73 (2001). Again, there is no "clear indication" that Congress intended this result. *Id.*

### 2.      Some of the Rule's categorical bars are unconstitutionally vague.

Defendants say Plaintiffs cannot raise a due-process vagueness argument because vagueness challenges must be adjudicated "as applied" to the person bringing the challenge. Opp. 13. But that principle does not apply here. The APA requires a reviewing court to "hold unlawful and set aside" agency action that is "contrary to constitutional right." 5 U.S.C. § 706(2)(B). And a party with standing to challenge agency action may "raise … any relevant question of law" that affects its validity. *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 477 (1940); *see, e.g.*, *All. for Nat. Health U.S. v. Sebelius*, 775 F. Supp. 2d 114, 130 (D.D.C. 2011) (addressing a vagueness challenge in a pre-enforcement APA action). Defendants rely on inapposite authority; in *Kashem v. Barr*, the Ninth Circuit specifically

1  "treat[ed] vagueness as an independent challenge under the Due Process Clause" and *not* as an APA

2  claim. 941 F.3d 358, 370 n.5 (9th Cir. 2019).

3       Defendants also say that asylum-seekers lack a due process interest in asylum eligibility be-

4  cause the decision to grant or deny asylum is discretionary. Again, asylum *eligibility* is not discretion-

5  ary, and asylum-seekers have a statutory right to apply for it. 8 U.S.C. § 1158(a)(1); *see also* Opp. 3.

6  The Due Process Clause protects that right. *See, e.g.*, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir.

7  1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply

8  for asylum . . . violates both INS regulations and the constitutional right to due process."); *Haitian*

9  *Refugee Ctr. v. Smith*, 676 F.2d 1023, 1038 (5th Cir. 1982) ("Congress and the executive have created,

10  at a minimum, a constitutionally protected right to petition our government for political asylum.").

11  The eligibility criteria must thus provide the applicant "fair notice of what the law demands." *United*

12  *States v. Davis*, 139 S. Ct. 2319, 2325 (2019).

13       Defendants also fail to meaningfully engage with the merits of Plaintiffs' arguments. Defend-

14  ants briefly respond that the "reason to believe" standard in the street-gang bar is permissible because

15  it is "clearly understood as equivalent" to probable cause. Opp. 14. But Plaintiffs' argument—which

16  Defendants ignore— is that the street-gang bar is impermissibly vague because it *combines* the mal-

17  leable "reason to believe" standard with the indeterminate "committed in support, promotion, or fur-

18  therance of" language in the Rule. 85 Fed. Reg. at 67258–59. Defendants do not address the undefined

19  phrase "in support, promotion, or furtherance," which appears nowhere else in federal law. *See* Mot.

20  15–16. Defendants' only other response is that the two bars "satisfy any vagueness concerns" simply

21  because they "require a fact-based inquiry based on all reliable evidence." Opp. 14. But the problem

22  is the lack of clear standards the relevant facts will be measured against. *See Kolender v. Lawson*, 461

23  U.S. 352, 358 (1983).

24          **3.**      **The Rule is arbitrary and capricious.**

25             *a.*     *The Rule does not articulate a satisfactory explanation for its depar-*
                      *ture from decades of agency and court precedent.*

26

27       The Rule's unexplained departure from agency and court precedent makes it arbitrary and ca-

28  pricious. To start, the Rule's effect is not to weed out applicants "who may pose a danger to the 'safety

1    of those already in the United States.'" Opp. 7. That is because, even without the Rule, dangerous

2    crimes may support a discretionary denial of asylum. *E.g.*, *Bare v. Barr*, 975 F.3d 952, 961 (9th Cir.

3    2020). Rather, the effect of the Rule is to *eliminate* immigration judges' and the BIA's discretion to

4    grant asylum where the refugee does *not* present a meaningful risk or danger. Even if the INA allowed

5    it, this elimination of discretion in favor of a categorical, single-factor bar represents a monumental

6    departure from the decades-old policy articulated in *Matter of Pula* and echoed in many BIA and court

7    opinions over the past three decades, which hold that "the danger of persecution should generally

8    outweigh all but the most egregious of adverse factors." *E.g.*, *Pula*, 19 I. & N. Dec. 467, 474 (BIA

9    1987).

10        Thus, eliminating the "totality of the circumstances review" in favor of categorical bars that

11    "deny relief in virtually all cases," *id.* at 473, is not supported by general assertions about certain

12    categories of crimes. Rather, the change in policy must be supported by a rationale for *requiring* denial

13    of asylum even where the Immigration Judge or BIA finds that the refugee does not represent a danger,

14    including a justification for rejecting the agency's prior, contrary approach. But neither the Rule nor

15    Defendants' brief tries to explain this departure. Indeed, Defendants do not even acknowledge it. The

16    Rule thus violates the principle that an agency must "display awareness that it *is* changing position"

17    and explain why its prior reasoning no longer holds. *FCC v. Fox Tel. Stations, Inc*., 556 U.S. 502, 515

18    (2009).

19        Likewise, the policy explained in *Pula* reflected a series of factual findings, including "the

20    unusually harsh consequences which may befall [a noncitizen] who has established a well-founded

21    fear of persecution," that each applicant's circumstances may reflect differently on his or her fitness

22    for the exercise of discretion, and that some refugees who meet their burden of proving persecution

23    could be barred from asylum by discretionary factors and be unable to meet the higher burden for

24    withholding of removal. *See Pula,* 19 I. & N. Dec. at 474. But the Rule does not include "a reasoned

25    explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior

26    policy." *Fox*, 556 U.S. at 516.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    **b.  *The Rule fails to meaningfully address important comments and data.***

   Defendants assert that "the Departments addressed 576 comments." Opp. 17. Where Defend-

ants declined to address certain comments, they say, they "explained their reasons for doing so." *Id.*

at 17–18. But Defendants disposed of countless substantive comments with conclusory assertions that

failed to address their substance. The motion set forth—and Defendants failed to meaningfully ad-

dress—many examples where Defendants simply asserted without basis that the comment was "out-

side the scope" of the rulemaking or "reiterate[d] their statutory authority to limit and condition asylum

eligibility." Mot. 18. Some additional examples: Commenters submitted well-reasoned, evidence-

based comments asserting that the gang-related crime provision is "overly broad and alarmingly

vague." 85 Fed. Reg. at 67223. They referenced the proven inaccuracy of gang member databases, the

recognized effect that such inaccuracies have on racial minorities, and the due process rights that are

likely to be violated as a result. Commenters pointed to other aspects of the Rule that are legitimately

questionable, including the presumed seriousness of trivial crimes and the disparate effect on econom-

ically distressed neighborhoods. In response, the Departments never addressed these concerns but

simply reiterated that they believe all gang-related crime is dangerous and that, in any event, the De-

partments have the authority to enact regulations. *See* 85 Fed. Reg. at 67224–26.

   Similarly, in response to concerns about the overbreadth of the DUI provisions, the final Rule

simply declines to tailor the bar to serious misconduct, and notes that eliminating immigration judges'

discretion is "well within the Departments' authority." 85 Fed. Reg. at 67227. It offers a similar ra-

tionale in response to comments suggesting that the domestic violence provision will harm victims of

domestic violence, responding, among other things, that "the Departments are also authorized to es-

tablish additional limitations or conditions on asylum." *Id.* at 67231. Similar responses recur through-

out the final Rule. But authority to enact regulations does not constitute the required "sufficient expla-

nation for its action including a rational connection between the facts found and the choice made."

*Immigrant Leg. Res. Ctr. v. Wolf*, Case No. 20-cv-05883-JSW, 2020 WL 5798269, at *12 (N.D. Cal.

Sept. 29, 2020) ("*ILRC*"). In rejecting these comments and instead resting on their authority to make

rules, Defendants failed to "disclose the thinking that has animated the form of [the] proposed rule and

the data upon which that rule is based," "failed to consider [] important aspect[s] of the problem," and

"offered [] explanation[s] for [their] decision[s] that run[] counter to the evidence" and are "so implausible that [they] could not be ascribed to a difference in view or the product of agency expertise." *Id.*

### 4.   The Rule is procedurally invalid.

#### a.   *The Rule was adopted without sufficient chance for public comment.*

Defendants argue that they have unfettered discretion to determine notice and comment periods and may disregard Executive Orders 12866 and 13563, which state that "a meaningful opportunity to comment" is generally 60 days. Opp. 20–21. But the cases they cite simply show that sufficient notice can be accomplished in multiple ways—none of which were used here. *See Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479 (9th Cir. 1992) (agency published notices and conducted regular public comment meetings); *Phillips Petroleum Co. v. EPA*, 803 F.2d 545 (10th Cir. 1986) (proposed change was contemplated publicly, with notice to affected parties, for several years before an NPRM was issued allowing an addition 30 days to comment). In contrast, the proposed Rule, with no prior notice to stakeholders, suddenly and drastically upended decades of settled law and practice and gave interested parties just 30 days to comment, spanning the year-end holidays.

Defendants also misunderstand the prejudice inquiry, arguing that "no prejudice can be shown" because some Plaintiffs were able to comment. Opp. 21. But the Ninth Circuit strictly enforces the APA's notice-and-comment requirements. An "agency could always claim that it would have adopted the same rule even if it had complied with APA procedures"; thus, to "avoid gutting the APA's procedural requirements . . . failure to provide notice and comment is harmless only where the agency's mistake '*clearly had no bearing* on the procedure used or the substance of decision reached.'" *Cal. Wilderness Coal. v. Dep't of Energy*, 631 F.3d 1072, 1090 (9th Cir. 2011) (emphasis added). The "procedure used" here was a too-short comment period that prevented commenters from gathering more data or marshaling different legal arguments, and that plainly prevented many others from commenting at all. *See* Mot. 21 (noting thousands more comments on asylum rule with 60-day window). Defendants also misunderstand Plaintiffs' claim. Plaintiffs do not complain that they were unable to comment on separate NPRMs. Nor do Plaintiffs seek a "'premature' advisory opinion" about separate rulemakings. Plaintiffs' claim is about *this* Rule.

By dividing notice of how the Rule affects asylum-seekers into separate rulemakings, Defendants withheld crucial information about the how the Rule would be applied and prevented a full consideration of its impact on asylum-seekers. Although Defendants could have considered the interaction of the Rule with these other NPRMs, they apparently chose not to. The administrative record does not include them, although it includes another NPRM, released on August 26, 2020, that introduced limitations on administrative appellate and immigration court procedures. AR 00307. Defendants thus did not consider the impact on asylum-seekers and the overall regulatory scheme of incorporation of the Rule into collateral contexts, and Plaintiffs were prevented from advising them, because of their failure to provide sufficient notice of the proposed changes.

### b. The Rule does not properly analyze its impacts on federalism.

Defendants claim the executive order requiring a federalism certification provides no private right of action. Opp. 21. But again, these are APA claims, and the APA requires a reviewing court to set aside agency action "found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Plaintiffs do not need a separate cause of action. That fact distinguishes *Valentine Properties Assocs., LP v. HUD*, 785 F. Supp. 2d 357, 367 (S.D.N.Y. 2011) (cited at Opp. 22). Nor can Defendants show that they complied with the federalism-certification requirement. The Rule raises significant federalism concerns by presuming asylum ineligibility based on state convictions that have been vacated, expunged, or modified. 85 Fed. Reg. at 67259–60. It thus attaches significant consequences to state criminal dispositions that a state court has held unconstitutional or substantively defective. And states have good reasons to vacate or modify convictions. For example, such actions facilitate reintegration, which improves the state's tax base, diminishes the strain on public benefits, and prevents prison overcrowding. The Rule's cursory pronouncement that it "does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement," 85 Fed. Reg. at 67257, is therefore inaccurate, making the Rule procedurally deficient under the APA.

### c. The Rule does not comply with the Regulatory Flexibility Act.

The Rule entirely failed to analyze its impact on Plaintiffs and other immigration service provider "small entities." Mot. 23. In response, Defendants say "Plaintiffs lack a cause of action to enforce the RFA" because they "are not 'small entities' that . . . have an injury contemplated within the zone

of interest of the RFA." Opp. 22. Not so. Again, this is an APA claim under 5 U.S.C. § 706(2)(D). And the RFA provides that "a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance with [its] requirements." 5 U.S.C. § 611(a)(1). Contrary to Defendants' claim, a small entity need not be directly regulated to fall within this class. Indeed, the Ninth Circuit has "assumed that indirectly affected small entities [have] standing to challenge an agency decision under the RFA." *US Citrus Sci. Council v. United States Dep't of Agric.,* 312 F. Supp. 3d 884, 912 (E.D. Cal. 2018) (citing *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. Dep't of Agric.*, 415 F.3d 1078, 1101 (9th Cir. 2005)); *see EBSC II*, 950 F.3d at 1270 (holding immigration service providers within the "zone of interest" of APA claim). And Defendants' claim that they made a "reasonable, good-faith effort" to comply with the RFA, Opp. 22, has no merit. They made no effort at all to assess the Rule's impact on small entities like Plaintiffs. *Cf. Am. Fed'n of Labor v. Chertoff*, 552 F. Supp. 2d 999, 1013 (N.D. Cal. 2007) (finding "serious questions whether DHS violated the RFA by refusing to conduct a final flexibility analysis").

### B.   Circuit precedent forecloses Defendants' irreparable harm arguments.

Plaintiffs' unrebutted evidence of irreparable harm aligns with the proof the Ninth Circuit held sufficient in *EBSC II*, 950 F.3d at 1280; *see* Mot. 24. Defendants effectively concede as much, though they assert that they "disagree" with *EBSC II*. Opp. 23 n.7. Regardless, the Ninth Circuit's decision controls here. Defendants also try to confuse the issue by arguing that "considerations of irreparable harm . . . favor the government," and contending that alleged harm to "non-party aliens" is the harm asserted by Plaintiffs themselves. Opp. 23. These arguments miss the mark. Plaintiffs articulated organizational harm on top of harm suffered by the populations they serve. Mot. 24. They also explained how harm to the populations they serve will frustrate their missions and impair their ability to meet their organizational objectives. *Id*. Plaintiffs also explained how harm to non-parties is part of the public interest analysis, *id*. at 25, but that is a distinct inquiry.

### C.   The equities and public interest factors tip sharply in Plaintiffs' favor.

A wide range of "[r]elevant equitable factors" tip in Plaintiffs' favor, "includ[ing] the value of complying with the APA, the public interest in preventing the deaths and wrongful removal of asylum-

---

11

1  seekers, preserving congressional intent, and promoting the efficient administration of our immigra-

2  tion laws." *EBSC II*, 950 F.3d at 1280; Mot. 25. Most importantly, "the public has an interest in 'en-

3  suring that we do not deliver [refugees] into the hands of their persecutors,' and 'preventing [refugees]

4  from being wrongfully removed, particularly to countries where they are likely to face substantial

5  harm.'" *Id*. at 1281 (citations omitted); *see EBSC III*, 964 F.3d at 854.

6        Defendants' main response contradicts Ninth Circuit precedent. They argue that the Rule does

7  not "return people to persecution" because "aliens remain eligible for mandatory protections from

8  removal, including withholding of removal and [Convention Against Torture] protection." Opp. 23.

9  But neither withholding of removal nor protections under the Convention Against Torture ("CAT")

10  substitute for access to asylum. *EBSC II*, 950 F.3d at 1274. Many asylum-seekers "may be eligible

11  only for asylum and cannot establish the more stringent criteria for withholding-of-removal." *Id*. "The

12  Rule, then, risks the removal of individuals with meritorious asylum claims who cannot [obtain] with-

13  holding of removal or CAT relief. By doing so, it is inconsistent with our treaty commitment to non-

14  refoulement." *Id*. at 1277. And "[t]he INA's withholding-of-removal . . . and [CAT] protections . . .

15  are not as great as those conferred by the INA's asylum provisions." *Id*. Unlike those who obtain

16  withholding of removal, asylees have unique pathways for reuniting with their families and obtaining

17  citizenship, as many commenters explained.[1]

18        Defendants also argue that the Rule serves the public interest by preventing "dangerous crim-

19  inal aliens" from obtaining asylum. Opp. 23. But as already explained, the Rule is vastly overinclusive,

20  and reaches countless people who pose no danger to anyone. In any event, the INA already bars anyone

21  convicted of a particularly serious crime, and (as Defendants note, *see, e.g.*, Opp. 3, 6) adjudicators

22  already enjoy discretion to deny asylum on dangerousness grounds. Thus, enjoining the Rule will not

23  *require* Defendants to grant asylum to even a single person, dangerous or not. By contrast, Defendants

24  identify no mechanism for mitigating the threat to public safety arising from the Rule itself. *See* Igra

---

[1] Igra Reply Decl. Ex. A at AR 10979–83 (describing differences between asylum, withholding of removal, and CAT protections); *Id*. Ex. B at AR 09490–92 (protections afforded by withholding of removal and CAT are limited in scope and harder to obtain than asylum); *Id*. Ex. C at AR 08962-63 (same); *Id*. Ex. D at AR 10560–61 (same); *Id*. Ex. E at AR 10573–74 (same); *Id*. Ex. F at AR 10593–94 (same); *Id*. Ex. G at AR 08837 (describing impact on families of citizen children due to inferior protections of withholding of removal).

1   Reply Decl. Ex. H at AR 10549–50 (also filed at ECF 21-10).

2          Finally, Defendants suggest that Plaintiffs cannot "invoke third-party harms" to show that the

3   equities tip in their favor. Opp. 23. That is wrong. When the government is a party, the equitable and

4   public-interest inquiries merge, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and the "public interest

5   inquiry *primarily* addresses the impact on non-parties," *Preminger v. Principi*, 422 F.3d 815, 826 (9th

6   Cir. 2005) (brackets omitted) (emphasis added). Defendants rely on the Ninth Circuit's discussion of

7   "third-party standing" in *EBSC I*, 932 F.3d at 764, which is irrelevant. Opp. 23. Finally, "maintaining

8   the *status quo*" serves the important public interest in "a stable immigration system." *Doe v. Trump*,

9   957 F.3d 1050, 1068 (9th Cir. 2020).

10          **D.      The Court should enjoin the entire Rule nationwide.**

11          A nationwide injunction that applies to the entire Rule is appropriate. "An injunction may ex-

12   tend 'benefit or protection' to nonparties 'if such breadth is necessary to give prevailing parties the

13   relief to which they are entitled.'" *EBSC I*, 932 F.3d at 779 (citation omitted). Here, Plaintiffs have

14   shown how the harm to populations they serve across the country will impact them. Mot. 24–25.

15   Moreover, "[t]he provisions of the INA that are affected by [this Rule] represent the current 'national

16   immigration policy, and an injunction that applies that policy to some individuals while rescinding it

17   as to others is inimical to the principle of uniformity'" the INA was meant to establish. *Doe*, 957 F.3d

18   at 1070 (citation omitted) (denying the government's motion to stay a nationwide preliminary injunc-

19   tion). And in an APA case, success on the merits—which Plaintiffs have shown is likely—typically

20   means "that the rules are vacated—not that their application to the individual [plaintiffs] is pro-

21   scribed." *EBSC II*, 950 F.3d at 1283; *see EBSC III*, 964 F.3d at 856–57 ("Vacatur of an agency rule

22   prevents its application to all those who would otherwise be subject to its operation").

23          Defendants' responses lack merit. First, they say "any injunction cannot extend to aliens whose

24   asylum eligibility must be adjudicated first in immigration court and then in the courts of appeal[s]."

25   Opp. 24 (citing 8 U.S.C. § 1252(a)(5), (b)(9)). *EBSC II* forecloses that argument. There, the Ninth

26   Circuit addressed the same provisions Defendants cite here, which "govern judicial review of removal

27   orders or challenges inextricably linked with actions taken to remove migrants from the country."

28   *EBSC II*, 950 F.3d at 1269. It held these "jurisdiction-stripping provisions . . . were not intended to

1    apply at all to challenges to asylum eligibility rules," and thus affirmed a nationwide injunction that

2    included individuals in removal proceedings. *Id.* at 1269, 1284.[2]

3         Second, Defendants cite distinguishable cases to urge a narrow injunction. For example, they

4    cite Judge White's decision in *Nat'l Ass'n of Mfrs. v. Dep't of Homeland Sec.*, No. 20-cv-04887-JSW,

5    2020 WL 5847503 (N.D. Cal. Oct. 1, 2020) ("*NAM*"), to argue that preliminary relief should be limited

6    to an organization or its members. Opp. 25. But there, "Plaintiffs [sought] to enjoin application of the

7    Proclamation against their members" only; they did "not seek . . . a 'nationwide' injunction." *NAM* at

8    *15. By contrast, just two days earlier, Judge White enjoined an entire rule in an APA case brought

9    by a coalition of non-profit organizations. *See ILRC*, 2020 WL 5798269, at *20. In that case, Judge

10   White considered the government's request to narrow the injunction, but explained that an injunction

11   "need not . . . 'affect only the parties in the suit.'" *Id.* at *19 (citation omitted). Because the plaintiffs

12   had submitted declarations showing the breadth of their operations, and had also shown that the rule

13   was likely invalid, the Judge concluded that enjoining the entire rule was warranted. *Id.* So too here.

14   When the evidence reflects harm to non-profit organizations that "do not operate in a fashion that

15   permits neat geographic boundaries" for an injunction, a universal injunction is necessary to provide

16   the parties with "[c]omplete relief." *EBSC III*, 964 F.3d at 856.[3] Thus, Plaintiffs do not argue that

17   "universal relief follows automatically in an APA case," *contra* Opp. 25; they argue that such relief is

18   justified here.

19        The Ninth Circuit has confirmed that non-profit organizations that "represent 'asylum seekers'

20   broadly" may properly seek a universal injunction in an APA case where even just "[o]ne fewer asy-

21   lum client" causes "a frustration of purpose." *EBSC II*, 950 F.3d at 1282–83. Because that is true here,

22   and because Plaintiffs collectively operate across the entire country, the Court should enjoin the Rule

23   nationwide.

24

25   [2] Defendants cite *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016) (Opp. 24), but that case is no longer good law. *See Gonzales v. ICE*, 975 F.3d 788, 810 (9th Cir. 2020).

26   [3] The other cases to which Defendants cite are  similarly inapposite. For example, *California v. Azar* involved plaintiff states that had not developed the record as to harms beyond their borders. 911 F.3d

27   558, 574 (9th Cir. 2018); *see* Opp. 25. And in both *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019), and *City & Cnty. of San Francisco* v. *Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018), the Court found only that the record and district court's findings did not establish harm beyond

28   the plaintiffs.

1    Finally, Defendants say "any TRO must be narrowly tailored to portions of the Rule, if any,

2  actually ruled unlawful," asserting that "Plaintiffs fault only parts of the Rule." Opp. 24. But they

3  cannot identify a single aspect of the Rule that remains unchallenged. *All* of the Rule's new categorical

4  bars are contrary to law, and some are unconstitutional; the vacatur presumption of validity is contrary

5  to law; the entire Rule reflects a dramatic and unexplained shift in agency policy; and commenters

6  were not given enough time to comment on any aspect of the Rule. Indeed, all of the procedural defects

7  apply to the whole Rule. The Court should thus enjoin the entire Rule.

8  **III.    CONCLUSION**

9    For these reasons, the Court should enjoin or stay the Rule's effectiveness.

10                                          Respectfully submitted,

11  DATE:  November 13, 2020                  */s/ Naomi A. Igra*

12  Sirine Shebaya (*pro hac vice*)            Naomi A. Igra, SBN 269095
    sirine@nipnlg.org                          naomi.igra@sidley.com
13  Cristina Velez*                            SIDLEY AUSTIN LLP
    *Not admitted in DC; working remotely from  555 California Street, Suite 2000
14  and barred in New York                     San Francisco, CA 94104
    cristina@nipnlg.org (*pro hac vice*)       Phone: +1 415 772 1200/Fax: +1 415 772 7400
15  NATIONAL IMMIGRATION PROJECT OF
    THE NATIONAL LAWYERS GUILD                 Tobias S. Loss-Eaton (*pro hac vice*)
16  2201 Wisconsin Avenue N.W., Suite 200      tlosseaton@sidley.com
    Washington, D.C. 20007                     Chike B. Croslin (*pro hac vice*)
17  Phone: +1 202 656 4788/Fax: +1 617 227 5495  ccroslin@sidley.com
                                               Alice A. Wang (*pro hac vice*)
18  Sabrineh Ardalan (*pro hac vice*)          alice.wang@sidley.com
    sardalan@law.harvard.edu                   SIDLEY AUSTIN LLP
19  Philip L. Torrey (*pro hac vice*)          1501 K Street, N.W.
    ptorrey@law.harvard.edu                    Washington, D.C. 20005
20  Sameer Ahmed, SBN 319609                   Phone:  +1 202 736 8000/Fax: +1 202 736 8711
    sahmed@law.harvard.edu
21  HARVARD LAW SCHOOL                         Jack W. Pirozzolo (*pro hac vice*)
    HARVARD IMMIGRATION AND REFUGEE            jpirozzolo@sidley.com
22  CLINICAL PROGRAM                           Kenyon C. Hall (*pro hac vice*)
    6 Everett Street, WCC 3103                 kenyon.hall@sidley.com
23  Cambridge, MA 02138                        SIDLEY AUSTIN LLP
    Phone: +1 617 384 7504/Fax: +1 617 495 8595  60 State Street, 36th Floor
24                                             Boston, MA 02109
    Leila Kang (*pro hac vice*)                Phone: +1 617 223 0300/Fax: +1 617 223 0301
25  leila@immdefense.org
    Nabilah Siddiquee (*pro hac vice*)         *Attorneys for Plaintiffs*
26  nabilah@immdefense.org
    IMMIGRANT DEFENSE PROJECT
27  40 W. 39th Street, Fifth Floor
    New York, NY 10018
28  Phone: +1 646 762 8428