Pages 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan Illston, Judge

| | |
|---|---|
| PANGEA LEGAL SERVICES; DOLORES STREET COMMUNITY SERVICES, INC.; CATHOLIC LEGAL IMMIGRATION NETWORK, INC.; and CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, | ) ) ) ) ) ) ) |
|           Plaintiffs, | ) ) |
|   VS. | )  **NO. C 20-07721 SI** ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) |
|           Defendants. | ) ) |

San Francisco, California
Wednesday, November 18, 2020

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
>                         SIDLEY AUSTIN LLP
>                         1501 K Street, N.W.
>                         Washington, D.C. 20005
>             BY:    **CHIKE B.W. CROSLIN**
>                    **ATTORNEY AT LAW**
>
>                         SIDLEY AUSTIN LLP
>                         555 California Street
>                         San Francisco, California 94104
>             BY:    **NAOMI A. IGRA**
>                    **ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported Remotely By:  Ana M. Dub, RMR, RDR, CRR, CCRR, CRG
                       CSR No. 7445, Official U.S. Reporter

 1   **APPEARANCES**:   (CONTINUED)

 2   For Defendants:
                           OFFICE OF IMMIGRATION LITIGATION
 3                         U.S. DEPARTMENT OF JUSTICE
                           CIVIL DIVISION
 4                         Post Office Box 868
                           Ben Franklin Station
 5                         Washington, D.C. 20044
                    BY:   **SCOTT G. STEWART**
 6                        **DEPUTY ASSISTANT ATTORNEY GENERAL**
                          **EREZ R. REUVENI, ASSISTANT DIRECTOR**
 7                        **CHRISTINA P. GREER, TRIAL ATTORNEY**

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   **Wednesday - November 18, 2020**                              **2:11 p.m.**

2                        **P R O C E E D I N G S**

3                            **---o0o---**

4        **THE CLERK:**  Please come to order.

5        This District Court is now in session.  The Honorable

6   Susan Illston presiding.

7        Calling Civil Action 20-cv-7721, Pangea Legal Services,

8   et al. versus U.S. Department of Homeland Security, et al.

9        Counsel, beginning with plaintiffs' counsel, state your

10  appearances now.

11       **MR. CROSLIN:**  Chike Croslin for the plaintiffs

12  alongside Naomi Igra, serving as local counsel.

13       **THE COURT:**  Good afternoon.

14       **MR. CROSLIN:**  Thank you, Your Honor.

15       **MR. STEWART:**  Good afternoon, Your Honor.  Scott

16  Stewart for the United States.

17       **THE COURT:**  Good afternoon.

18       **MR. STEWART:**  Thank you, Your Honor.

19       **THE COURT:**  Well, welcome.

20       We are here today to consider a request by the plaintiffs

21  for a temporary restraining order which would restrain the

22  effectiveness of the new rule titled "Procedures for Asylum and

23  Bars to Asylum Eligibility" which, absent judicial action, will

24  go into effect on November 20th.

25       The plaintiffs are seeking a nationwide TRO and,

1    ultimately, a preliminary injunction to maintain the status quo

2    until the validity of the rule can be finally ascertained.

3        And I have read your papers and I've read the papers of

4    the amicus, and I will be happy to hear from you all this

5    afternoon.

6        I'll tell you, my preliminary view is that I preliminarily

7    think I will grant the TRO.  I think the plaintiffs have

8    established a likelihood of success on the merits of

9    determining that the rule is both substantively and

10   procedurally defective.  So that's where I'm starting, and I

11   will allow you each to address that.

12       But, first, I had a couple of specific questions that I'd

13   like to ask.  And you can answer them right now or as you see

14   fit in the course of your arguments.  But my first couple of

15   questions go to the defense, and then I have a third question

16   which will go back to the plaintiff, which is kind of the

17   inverse of my question to the defense, and that is this:

18       Originally, the rule cited to both -- I'm concerned about

19   the consistency of the rule with the statute which governs

20   asylum.  And originally, you suggested -- the Government

21   suggested that the rule was being promulgated under both

22   1158(b)(2)(B)(ii) and 1158(b)(2)(C).  And this is where my

23   first questions come up.

24       And to the Government, it seems to me that if Congress

25   intended the department to be able to designate additional

```
 1   offenses as making someone categorically ineligible under

 2   1158(b)(2)(C), which is what you're now saying, there would

 3   have been no reason for 1158(b)(2) -- 1158(2)(B)(ii), which

 4   provides authority to designate offenses that will be

 5   considered particularly serious crimes or serious non-political

 6   crimes.  If you can do that, then it would seem to me that the

 7   subsequent and independent provision about all other -- let's

 8   see.  What's the language? -- additional limitations and

 9   conditions must be intended to be different in kind.  So it

10   seems to me that it's inappropriate to try to categorize this

11   rule under additional limitations and it really ought to go

12   back under offenses.

13        So that's my first question to the Government.

14        And my inverse question to the plaintiff will be:  What

15   kinds of things -- if it were correct that it can't be other

16   offenses, what kinds of things should be included under

17   additional limitations?

18        But if the Government could go first on this question,

19   please.  It seems to me that your interpretation makes the

20   other offenses provision surplusage.

21        MR. STEWART:  Yes, Your Honor.  I understand the

22   question, Your Honor.

23        What I would say is that there are two reasons that

24   that -- that using 1158(b)(2)(C), the additional conditions or

25   limitations provision, to adopt crime or criminal conduct-based
```

bars is permissible and doesn't render the "particularly

serious crime" designation authority superfluous.

One, Your Honor, is that I think particularly serious

crimes, it really is going at a kind of category of, as its

name suggests, just greater seriousness or gravity or

dangerousness, that kind of a thing.  And I think that's borne

out also by a similar use of the term in the withholding of

removal statute in 8 U.S.C. 1231, where there is also an

exception for withholding of removal protection for

particularly serious crimes.

I think it's reasonable for the departments to take the

approach that that category is really one for more serious

crimes, crimes that reach a minimum level of severity, because

making a "particularly serious crime" designation under the

asylum statute, it could have effects for -- perhaps for that

other provision, Your Honor.  And that other provision does

embody and implement the non-refoulement international

obligation, and therefore, carving out exceptions does have --

does potentially have broader ramifications for that obligation

which doesn't apply in the same way under the asylum statute,

Your Honor.

So I think it's reasonable, therefore, instead of to go

out and use that "particularly serious crime" designation

authority, which could have ramifications and impacts beyond

the asylum statute, to instead home in and rely on the

1    Section 1158(b)(2)(C) authority, Your Honor.  And that really

2    is -- that's why it's consistent.

3         I think also, Your Honor --

4              **THE COURT:**  But it's not --

5              **MR. STEWART:**  -- in view of the second --

6              **THE COURT:**  That doesn't -- how can that make it

7    consistent?  I mean, consistency is that for the last many

8    decades, particularly serious offenses has been an area that

9    will exclude applicants from asylum; but there's never been any

10   such provision for misdemeanors:  the second marijuana

11   conviction, a speeding conviction.  I don't see how that's

12   consistent.

13             **MR. STEWART:**  Well, that's the nature of the authority

14   to establish additional bars, Your Honor, is that it would --

15   the -- when -- the departments -- the existing bars are largely

16   adopted or adopted from what -- from previous regulatory bars.

17   And I think what Congress made a judgment on is that it says:

18   Look, for these bars, these crimes are so bad that we

19   definitely don't want to give these -- give agencies any

20   discretion to grant asylum for folks who have engaged in this

21   conduct, been convicted of these kinds of things.

22        What it then did, though, was say, like:  Look, there may

23   be other categories of conduct that maybe doesn't hit this

24   standard, maybe implicates other considerations that could lead

25   the agencies reasonably to think:  Hey, under similar

1    rationales for similar reasons, these folks, too, don't

2    warrant or are unsuitable for asylum.

3         I think that's the rationale, Your Honor.  The

4    1158(b)(2)(C) doesn't say that they have to be tailored to a

5    certain way, to one of the existing (b)(2)(A) bars.  It just

6    says "consistent with."

7         And as the departments explained in this rulemaking, this

8    rule goes after conduct that is inimical to the nature of the

9    asylum benefit.  It gets -- it's serious, dangerous conduct,

10   bad conduct that wouldn't already be covered:  threats to

11   public safety; things that show serious disregard for others;

12   those kinds of things.  So that's why it's consistent with

13   that, Your Honor, even if in all cases the bars don't meet a

14   certain qualitative level of dangerousness that everyone might

15   think might be needed for a particularly serious crime bar.

16        THE COURT:  And you don't think that because one --

17   you don't think that because the statute specifically provides

18   for offenses in (b)(1) and (2), that (C), which is additional

19   limitations, it can also be offenses but just lesser offenses

20   or whatever offenses you feel like it?  Is that --

21        MR. STEWART:  It can be --

22        THE COURT:  -- your view?

23        MR. STEWART:  It can be other offenses.  That's right,

24   Your Honor.

25        One bar is really the particularly serious crime bar.  As

1    I've said, a potential implication of calling something a

2    serious crime is that it reverberates across the Immigration

3    and Nationality Act.  And, you know, that's a term that appears

4    elsewhere in the withholding statute; and thus, putting

5    something in that category, you know, could -- could affect

6    that and the withholding obligation and all that.

7         And I don't think you have a similar thing if the -- the

8    departments instead do what they did here, you don't have

9    similar risks, and just say:  Look, we're using this additional

10   limitation and condition authority.  We're not -- we're not

11   relying on the particularly serious crime bar.

12        One other point I'd add, though, Your Honor, is that even

13   with respect to the particularly serious crime bar, just

14   what -- the offenses covered are not always offenses that

15   everyone would regard as the most extreme and most severe kinds

16   of offenses.  We cited a number of these.  The Supreme Court in

17   *Torres* -- in *Torres* cited a number of offenses that I believe

18   the Court described as relatively minor:  operating a

19   gambling business, possessing -- I believe possessing a firearm

20   that lacks a serial number.  These don't hit the level that

21   many would think are on par with, say, blowing up a passenger

22   plane.  But Congress has already said:  Look, those are

23   categorical bars from asylum.

24        So I think using a similar parity of reasoning analysis,

25   you know, an analogous, harmonious approach here, the

1   departments reasonable adopted these other crime- or

2   conduct-based bars.

3         **THE COURT:**  Thank you.

4         **MR. STEWART:**  Thank you.

5         **THE COURT:**  Mr. Croslin, what do you think?  And what

6   do you think it should cover in this additional limitations

7   provision?

8         **MR. CROSLIN:**  Absolutely, Your Honor.  And I'd like to

9   start with your question.  I'll answer it directly.

10        An example of what could be added pursuant to that

11  provision might be a biometrics requirement for eligibility.

12  That requirement would be crime related, and it would be

13  consistent with the core principles -- a high level of

14  seriousness and dangerousness -- and it would permit the agency

15  to better screen applicants for the particularly serious crime

16  bar.  So there's perfect consistency with that, Your Honor, and

17  it's an example of an additional limitation that could be

18  added.  That could consist of background check and

19  fingerprinting, just to be clear about what I mean by

20  "biometrics."

21        In terms of consistent with language and consistency with

22  the statute, Your Honor, *East Bay III* has already determined

23  that the core principle of the statute is seriousness and

24  dangerousness, protecting the safety of those already in the

25  United States by excluding those who pose a threat to society.

1          And we already know from *Alphonsus*, also a Ninth Circuit

2     decision, that by "serious," we mean a very grave, punishable

3     act.  Notably, "very, very punishable act" language was

4     referring to serious non-political crime.  "Particularly

5     serious" is, therefore, higher.

6          And we have examples from Note 6:  blowing up a plane

7     for life insurance, wanton killing in a public place.  These

8     are the kinds of crimes that Congress was trying to get at, and

9     Congress did specifically get at those crimes and did not allow

10    for any additional crime that would not be consistent with the

11    core principle of the statute as defined by the Ninth Circuit.

12         And so the defendants' position here is really attempting

13    to disregard Congress's express language and the Ninth Circuit

14    precedent construing that language on which it cannot stand.

15         With respect to the cherry-picking that the Government

16    engages in in its opposition brief and that it's now doubled

17    down on with respect to the aggravated felony bar, Your Honor,

18    there are multiple reasons why that rationale can't prevail

19    here.

20         Number one, *Alphonsus* has already dealt with the

21    aggravated felony bar at 1048 and 1049 and determined that the

22    threshold remains very high.  Obviously, that bar was also in

23    place when *East Bay III* was decided.  Seriousness and

24    dangerousness remains the core principle of the statute.  So

25    there still must be consistency with those things,

1  notwithstanding the aggravated felony bar.

2      I'll also note that *East Bay III* specifically determined

3  that the "consistent with" language was not intended as a broad

4  grant of discretion.  Instead, it was intended to ensure that

5  the original intent of the Refugee Act of 1980 was not lost and

6  is, therefore, a limited -- a limitation on the agency's

7  ability to make changes.  That is what it is intended to be,

8  and that's at *East Bay III*, 8.9.

9      With respect, again -- and this is a slightly different

10  but related point to the aggravated felony bar.  Your Honor,

11  you'll notice that Congress made specific carve-outs in the

12  aggravated felony bar addressing certain conduct that it did

13  not believe to be very serious and did not want to be a part of

14  this statute.  And you can find examples of that if you look --

15      **THE COURT:**  Mr. Croslin, you're kind of cutting in and

16  out.  Can you maybe slow down --

17      **MR. CROSLIN:**  Forgive me.

18      **THE COURT:**  -- and speak right into a mic.

19      **MR. CROSLIN:**  Absolutely.

20      (Reporter interrupts for clarification of the record.)

21      **MR. STEWART:**  Yes.  My apologies.

22      **THE COURT:**  Thank you.

23      **MR. CROSLIN:**  Thank you, Your Honor.

24      A slightly different but related point, Your Honor, is, if

25  you look specifically at the aggravated felony bars that

1    Congress determined to specify particularly, you'll note that

2    Congress made very express carve-outs.  It's really quite an

3    elaborate structure.  And these kinds of carve-outs are

4    entirely ignored by the rule.

5        So Congress did these things in order to avoid infringing

6    international commitments, to avoid including minor crimes.

7    These would be things like for false ID, the rule does not have

8    any express carve-outs for the purposes for which a false ID is

9    used; but if you were to look at the statute itself, you would

10   find that use of a false ID to assist a parent or a sibling or

11   member of one's family is not grounds for a bar to asylum

12   eligibility.  And that's there for a reason, Your Honor.

13   Congress was trying to get at something very specific.  There's

14   an express inclusion and an express exclusion, and the agency

15   is required to give effect to express inclusions and express

16   exclusions.

17       **THE COURT:**  All right.  Thank you.

18       Mr. Stewart, if you want to respond to that, you may, but

19   I also have another question for you when you're done, which

20   will be that you indicate in your briefing that the plaintiff

21   really only faults some of the parts of the regulation and not

22   all of them and that the Court should enjoin only those that

23   the Court agrees with plaintiffs' fault finding.

24       And my question to you is:  Which parts do you think they

25   don't challenge?  It looks to me like they challenge

1  everything.  So I need to know what you think remains

2  unchallenged and, therefore, should not be enjoined.

3          **MR. STEWART:**  Sure, Your Honor.

4      If I can begin by just quick responses to a couple of my

5  friend's observations.

6      First, I'd say just the example of the biometric

7  requirement is not a good one.  I mean, the 1158(b)(2)(C)

8  allows the adoption of additional bars to asylum, and it allows

9  for more than just claim processing rules.

10          **THE COURT:**  Well, it says --

11          **MR. STEWART:**  The next point I'll make --

12          **THE COURT:**  -- "additional limitations and

13  conditions"; it doesn't say "bars."

14          **MR. STEWART:**  Those are bars, Your Honor.  That's

15  what -- I mean, the Court says, Your Honor -- it says -- (audio

16  interference)

17      (Court reporter interrupts for clarification of record.)

18          **MR. STEWART:**  The statute says.  The statute says --

19  I'll re- -- I'll recast.

20      Section 1158(b)(2)(C) allows the Attorney General to

21  establish additional limitations and conditions.  Those are on

22  top of the limitations and conditions in Section 1158(b)(2)(A),

23  Your Honor, and those are all express bars to asylum

24  eligibility.  So "conditions and limitations" is referring to

25  substantive -- the authority to establish substantive bars and

1    not just claim processing rules.

2        With respect to the Ninth Circuit's decision in *Alphonsus*,

3    Your Honor, I would emphasize that my friend's discussion of

4    that focuses only on a portion of what the Ninth Circuit says.

5    The Ninth Circuit went through the history of the aggravated

6    felony provision and -- or the particularly serious crime

7    issue, and it said:  Look -- and this is at page 1040 of that

8    case (reading):

9            "The definition of 'aggravated felony' under the

10           INA did not, however, remain focused on 'very' grave

11           crimes, let alone on 'extreme cases.'"

12       And it talked about how in nineteen- -- in the mid-90s,

13   the Congress substantially expanded the aggravated felony group

14   and -- through adding the -- through -- the way it legislated

15   there to allow a much broader array.  So it is a much broader

16   array than just blowing up a passenger plane or things that

17   people would think are on par with that.

18       To address Your Honor's point, however, what we're saying

19   with respect to the plaintiffs' challenge, Your Honor, is that

20   their main two arguments, their lead arguments on authority and

21   on vagueness, those are the arguments that they're citing

22   particular examples, hypotheticals about how they think the

23   rule would be covering an offense that is inconsistent with the

24   asylum statute.  They give examples.  They are not saying that

25   there would be no -- I don't think that they're really making a

1  case that it could -- that, you know, no felony that's not now

2  an aggravated felony can be a reason for denying asylum.

3      And that's the point we were making.  On those two lead

4  challenges -- their vagueness challenge, in particular, is very

5  targeted on a couple -- or three particular -- I believe,

6  particular phrases in a couple of the bars.

7      So their procedural challenges are potentially different,

8  Your Honor.  Again, I don't know that those would require a

9  nationwide injunction.  I mean, they could warrant -- if

10  the Court thinks that there should be more explanation on

11  federalism or on regulatory, the effect on small businesses,

12  that kind of a thing, I think remand to the agency without

13  vacatur to simply explain itself more would be appropriate.

14      But overall, Your Honor, I think with the possible

15  exception of the procedural argument, they have not shown that

16  the rule, which is a preenforcement challenge claiming that

17  it's just broadly invalid, their facial challenge is just not

18  enough to bring down the rule because there are legitimate

19  applications of their rule.

20      And it's difficult for the Government to kind of be in a

21  position to sort of tick off all the instances or offenses

22  when, under the plaintiffs' theory, the rule would be valid

23  when it's really the plaintiffs' burden, Your Honor.  They're

24  asking for injunctive relief.  They need to show and carry the

25  extraordinarily heavy burden for their preenforcement facial

challenge to knock this rule out nationwide, universally, for

every single alien to whom it could conceivably be applied.

    So that's our point.  That's their burden.  And their

paltry, very, very short addressing of the scope of relief

point just does not carry the burden that this cannot lawfully

be applied to any alien anywhere.

            **THE COURT:**  Mr. Croslin?

            **MR. CROSLIN:**  Yes, Your Honor.

    Our argument is that the entire rule is invalid.  Our

statutory argument, contrary to law argument, the notion that

it is not consistent with the statute does apply to the entire

rule.  My friend has not identified a single provision of the

rule that would not be covered by that argument.  In fact, it

is all inconsistent.

    The same is true of our procedural invalidity arguments.

With respect to the procedure that the agency used, we find

that is it deeply deficient, and those deficiencies go to the

core of the process.

    And I will also note, Your Honor, with respect to remedy,

the traditional remedy in an APA case is vacatur, not the

attempt to resurrect some piece of this rule that would be

potentially hypothetically valid in some circumstance.  And if

you vacate the entire rule, that is -- the end result is

essentially a preliminary injunction nationwide.  The rule

can't be enforced anywhere.  So we're not actually asking for a

1   result that we would not be traditionally asking for if we were

2   simply seeking vacatur at this stage.

3        **THE COURT:**  All right.  Thank you.

4        I have one more question, and then I'll be happy to hear

5   anything else you want to add or argue.

6        And this relates to my last question.  If it were -- if I

7   agreed with you, Mr. Stewart, that the challenge -- the

8   challenge plaintiffs make only goes to some parts of the rule

9   or if I were to agree with you that at least as to some parts

10  of the rule, their challenge does not succeed, are these issues

11  severable in this rule?

12       **MR. STEWART:**  I'm not sure -- if I can just clarify,

13  Your Honor.

14       **THE COURT:**  Sure.

15       **MR. STEWART:**  By "severable," are you saying that

16  suppose you find some legal invalidity --

17       **THE COURT:**  Right.

18       **MR. STEWART:**  -- you could say, you know, parts X, Y,

19  and Z of the rule are vacated but the rest can go into effect?

20       **THE COURT:**  Something like that.

21       **MR. STEWART:**  That kind of a thing?

22       I think that, I mean, a tailored remedy like that is,

23  I think, what we have proposed would be appropriate in our --

24  we say this at, I believe, around page 25 of our brief, where

25  we say -- last couple of pages -- any -- 24, 25 -- any relief

1   that the Court orders needs to be limited to the actual parts

2   of the rule that this Court finds to be unlawful.  And we've

3   also asked for tailoring, given the, you know, organizational

4   nature of the plaintiffs, who their actual clients are, and

5   that kind of a thing.

6       But we would emphasize the point about it makes sense and

7   is legally appropriate to issue any relief only as to those

8   actual pieces the Court finds unlawful.

9           **THE COURT:**  All right.  And then I guess I do have one

10  more question, and this would go primarily to the plaintiffs, I

11  suppose.

12      One of the claims for relief in your papers is that

13  Chad Wolf was not appropriately empowered to act.  And you

14  didn't talk about that in the TRO papers.  So I didn't know if

15  that's an issue you want the Court to consider now or not.

16          **MR. CROSLIN:**  We're not moving on that at this point,

17  Your Honor.

18          **THE COURT:**  All right.  Okay.  Thank you.

19      All right.  Anybody want to add anything else to his

20  arguments?

21          **MR. CROSLIN:**  Your Honor, if you'd like to discuss

22  void for vagueness or vacatur presumption, I'm here and

23  available and happy to do so.

24          **THE COURT:**  You can talk about whatever you want.

25          **MR. CROSLIN:**  Fantastic.  Thank you, Your Honor.

1        In that case, Your Honor, why don't we jump to void for

2   vagueness.

3        So, in the first place, my friend has, in his papers,

4   placed a series of threshold questions out on the table,

5   neither of which should be sufficient to defeat a vagueness

6   claim at this stage.

7        Number one, a threshold question that the notion that --

8   the notion that vagueness must be adjudicated as applied to the

9   person who is bringing the challenge, Your Honor, that doesn't

10  apply here because this is an APA challenge and that permits

11  review of agency action.  It is contrary to constitutional

12  right and permits a party with standing to challenge that

13  action to do so and to raise any relevant question of law

14  affecting its validity.

15       We cite precedent for that proposition in our reply brief.

16  That's Supreme Court precedent and a D.D.C. case addressing a

17  preenforcement vagueness challenge which obviously was not as

18  applied.

19       I'll also note, Your Honor, that *Kashem* is in apposite

20  because it treats vagueness as an independent challenge under

21  the due process clause, and again, we are moving under the APA.

22       **THE COURT:**  You do challenge vagueness -- challenge

23  only portions of it on vagueness grounds; right?

24       **MR. CROSLIN:**  Yes, Your Honor.  With respect to

25  vagueness, we challenge language in the street gang bar, and we

1    challenge language in the domestic violence bar.

2         **THE COURT:** You think I can rule on and grant your

3    motion without considering your vagueness challenges?

4         **MR. CROSLIN:** Yes, Your Honor. I believe that the

5    statutory argument is an independent ground that applies to the

6    entire rule. Same with the procedural invalidity ground.

7         **THE COURT:** All right. Thank you.

8         **MR. CROSLIN:** Thank you, Your Honor.

9         With respect to the second threshold question, the notion

10   that no due process right is involved here, Your Honor, this

11   gets to a fundamental misunderstanding that absolutely pervades

12   the Government's brief, and that is that asylum eligibility and

13   the discretion to grant ultimate asylum relief are somehow the

14   same thing.

15        Asylum eligibility is a due process right that has already

16   been determined by the Ninth Circuit, and that's in *Andriasian*.

17   It's also clearly distinguished in *East Bay III* at page 849.

18   And accordingly, it can be the foundation of a vagueness

19   challenge under the due process clause or under the APA,

20   referencing due process precedent.

21        Finally, I will get to the merits of the challenge,

22   Your Honor. Under *Johnson v. United States*, our argument is

23   that combining two indeterminate standards, even if each of

24   them could potentially be constitutional on their own, can

25   create vagueness. And *Johnson v. United States* involved a

1  malleable evidentiary standard combined with a legal standard

2  for which, quote, the elements necessary were uncertain in

3  nature and degree.  And that's at page 603, Your Honor.

4       So that's also the case here.  And it's especially the

5  case with the street gang bar but also with respect to the

6  domestic violence bar.

7       With respect to the street gang bar, the street gang bar

8  applies to a conviction if the adjudicator knows or has reason

9  to believe it was committed in, quote, support, promotion, or

10  furtherance of gang activity.

11       Your Honor, support, promotion, or furtherance has no

12  standard whatsoever provided in the rule, no examples.  It has

13  no presence in any other federal law or rule.  The rule

14  actually declines to provide any guidance or explanation,

15  leaving the determination -- quote, leaving the determination

16  to adjudicators in the first instance.  And that's at 67225.

17       And there's -- as you can look right at the rule,

18  Your Honor, you can tell that there's no indication what

19  independent meaning each of those words is supposed to have.

20  Clearly, they are supposed to have something.

21       So it says support, promotion, or furtherance.  We don't

22  know what the difference is between support and promotion or

23  either of those two things and furtherance.

24       Additionally, the rule adds the very malleable reason to

25  believe standard, which my friend notes is equivalent to

1    probable cause.  Even assuming that it is, Your Honor, putting

2    those two things together makes clear that the elements that

3    would be necessary in order to trigger this rule are entirely

4    uncertain in nature and degree.  We do not know what those

5    words mean.

6        I would also like to address some of the counterarguments

7    that my learned friend advanced in his opposition.  First of

8    all, that the addition of "reason to believe" and "probable

9    cause" could somehow cure the issue, Your Honor, that is

10   squarely prohibited by *Kolender v. Lawson*, which was a probable

11   cause case, involves probable cause and a standard that was

12   ruled to be vague by the Supreme Court.

13       The other standard was credible and reliable, the

14   requirement to provide credible and reliable identification

15   upon demand.  Your Honor, that was held to be

16   unconstitutionally vague because, quote (reading):

17           "[It] contains no standard for determining what

18       a suspect has to do in order to satisfy the

19       requirement to provide a 'credible and reliable'

20       identification."

21       In other words, there is simply no objective core of

22   criteria that is certain in nature and degree that would allow

23   us to say Suspect A is and Suspect B is not.

24       In the absence of that, the legislature simply -- or in

25   this case, the agency simply has not provided any sort of

1    minimal guidelines to govern law enforcement.  And to hand that

2    off to law enforcement and to hand that off to an adjudicator

3    in this case in order to make the determination in the first

4    instance is just begging the question of the arbitrary

5    decision-making that vagueness is meant to avoid, Your Honor.

6         And with respect to what I expect could be one challenge

7    from my opposition, the fact that you can identify one core --

8    one set -- forgive me -- one set of circumstances -- some

9    conduct, rather, that clearly falls within the provision's

10   grasp does not mean that the provision is not vague.  That's

11   *Johnson* at 602.  Our holdings squarely contradict the theory

12   that a vague provision is constitutional merely because there

13   is some conduct that clearly falls within the provision's

14   grasp; so identifying some small category of conduct to which

15   the provision might apply.  For instance, you can imagine

16   violent gang members specifically -- right? -- perhaps B --

17   right? -- caught up there -- caught up in whatever that

18   language means.  It does not mean that the absence of definite

19   elements against which to measure conduct, against which to

20   measure the evidence -- right? -- is somehow cured.

21        Your Honor, I'd like to jump to the domestic offense bar.

22   Now, the domestic offense bar is also invalid because, again,

23   it is unconstitutionally vague.  The domestic offense bar's

24   language applies to a crime that involves conduct amounting to

25   a crime of stalking or that involves conduct amounting to a

1   domestic assault or battery offense.

2       Your Honor, again, the rule does not attempt to define

3   "involve conduct amounting to."  It only says that the

4   adjudicator consider the underlying conduct.  And that is --

5   the adjudicator is not limited to the facts found in the

6   criminal court or in the underlying record of convictions.  So

7   it is also unclear where these facts will come from.

8       And, Your Honor, "involves conduct amounting to" is,

9   again, not a standard that, to my knowledge and to the

10  knowledge of any of our ability to research, that exists

11  anywhere in federal law, anyplace.  And it's also, similarly,

12  not clear exactly what it involves.  It's plainly not a

13  conviction.  These are provisions that do not apply to

14  convictions, which I will also note is another distinction from

15  the statute itself.  And if it's not a conviction, Your Honor,

16  and there's obviously not reason to believe -- assuming reason

17  to believe it was probable cause, then what is it?  It's

18  entirely unclear, and the rule provides us with no guidance

19  whatsoever.  Accordingly, this provision is unconstitutionally

20  vague.

21      And, Your Honor, if there are no further questions, I

22  would like to move on to procedural invalidity at this point.

23          THE COURT:  Well, let me hear from Mr. Stewart about

24  the things you've just said, and then we can go to procedural

25  issues.

1          **MR. STEWART:**  Thank you, Your Honor.

2      A few quick observations with respect to vagueness.  As

3  just -- I think my friend's presentation overall, Your Honor,

4  really underscores the importance of the need for real-world

5  facts in evaluating a due process-based vagueness challenge.

6  That's what *Guerrero*, out of the Ninth Circuit, emphasizes.

7  Real-world facts will almost always resolve vagueness problems.

8  It's -- the preenforcement nature of this challenge leads to

9  just hypothesizing about how things may be deemed vague or

10  somebody thinks they won't know what's covered.  But really, it

11  just underscores the purpose of having these sorts of issues

12  arise in a concrete setting in immigration proceedings,

13  Your Honor.

14          **THE COURT:**  Do you think that --

15          **MR. STEWART:**  I would state that --

16          **THE COURT:**  Do you think that crossing -- jaywalking

17  in order to put some gang graffiti on a wall would count as the

18  gang-affiliated offenses?

19          **MR. STEWART:**  I'm not sure, Your Honor.  I do want to

20  be careful about prejudging that sort of issue.  I think it is

21  a matter that is entrusted, in the first instance, to the

22  agencies to evaluate, with ultimate review in a federal court

23  of appeals on a petition for review where somebody could make

24  their constitutional challenges.

25      But I'd be careful about prejudging that, Your Honor.

1   It's just -- it's hard to know in advance, and it really

2   requires knowing the facts of the situation.

3          **THE COURT:**  Well, doesn't that mean it's a vague

4   statute if you can't even answer me that question?  Because I'm

5   giving you concrete facts.

6          **MR. STEWART:**  It does not mean that, Your Honor.  It's

7   a matter that's entrusted, in the first instance, to -- to the

8   agency, and it's something that should be liquidated by the

9   entrusted agency in the first instance.

10      And I think it's just important to have the appropriate,

11  correct parsing of that kind of issue with, you know, briefing,

12  whatever else would be considered in an immigration court

13  proceeding.

14      And I'd add, Your Honor, that, again, this is -- my friend

15  repeatedly relied on *Johnson*.  The decision in *Guerrero* makes

16  quite clear that *Johnson* involves a different scenario.  It

17  involves more idealized ordinary crime; whereas here, we're

18  talking about something where there will eventually be

19  real-world facts that can crystallize the issue and enable it

20  to be clarified and resolved.  But now, without -- in a

21  preenforcement challenge, you just don't have that, and that's

22  why it's so hard to bring such a challenge outside of the First

23  Amendment context.

24      I'd say using the APA angle doesn't help my friend because

25  you still have -- it's a due process constitutional-based fault

1    on vagueness grounds, and that still runs right into *Guerrero*

2    and other relevant case law calling for the application of a --

3    of law to real-world facts.

4         I'd also just emphasize, Your Honor, that under my

5    friend's view, it appears that a number of the existing

6    statutory asylum bars would apparently be unconstitutionally

7    vague because they use language like "reasonable grounds,"

8    "serious reasons," that sort of thing.  And, you know, that

9    would be quite an astonishing situation, where -- to say that

10   the agency cannot adopt that and -- not just cannot adopt those

11   kind of formulations, but also that it's unconstitutionally

12   vague when Congress itself has done that and those bars are of

13   long-standing.

14        These are issues, Your Honor, that are appropriate to be

15   dealt with and addressed and liquidated and clarified and

16   sharpened and explained by adjudicators in concrete factual

17   situations.

18        And for all the reasons we've given in our brief, the

19   vagueness challenges here do fail.

20        **THE COURT:**  How do you liquidated this stuff?

21        **MR. STEWART:**  What I mean, Your Honor -- what I mean,

22   Your Honor, is that case law already deals with these kinds of

23   issues, these -- you know, reasons to believe.  That's where

24   the probable cause point -- I mean, probable cause is not,

25   you know, something that can be always identified with

1    mathematical or perfect certainty.  That doesn't mean it's

2    hopelessly vague.

3        And I think adjudication on concrete sets of facts can

4    give -- can just make clear what falls in and what falls out.

5    You need a concrete factual situation.  That's why, under the

6    broader rule from the Supreme Court and similar Ninth Circuit

7    case law following it, you wait, in almost all instances, for a

8    real person with a real factual presentation before claiming --

9    before deeming something vague on due process grounds.

10            **THE COURT:**  All right.  Thank you.

11            **MR. STEWART:**  Thank you, Your Honor.

12            **THE COURT:**  Okay.  Mr. Croslin?

13            **MR. CROSLIN:**  Thank you, Your Honor.  Just some --

14    very brief response to some of those points.

15        With respect to reasonable grounds, serious reasons, or

16    reasonable cause, language that exists like that somewhere in

17    American law, Your Honor, that's, of course, not the focus of

18    our vagueness challenge.

19        Again, as we noted in our opening brief and, again, in our

20    reply, our concern with respect to the gang offense bar is the

21    combination of a malleable standard with another standard, a

22    legal standard that has elements that are uncertain in nature

23    and degree.  That is the concern.  The domestic offense bar, of

24    course, does not involve things like serious reasons.  Instead

25    it says "involves conduct amounting to," which my friend did

1    not address at all.

2        With respect to the attempt to distinguish *Johnson* on the

3    basis of the categorical approach, again, *Johnson* at 603 makes

4    clear that the reason the categorical approach is problematic

5    is the absence of core objective criteria that could be applied

6    to measure evidence -- right? -- across circumstances.  That

7    is, the elements are uncertain in nature and degree.

8        That is true of this provision.  It is true of the

9    provision in *Kolender v. Lawson*, and it is the key principle

10   that links *Kolender v. Lawson* with *Johnson* and that line of

11   cases.

12       Thank you, Your Honor.  That's all that is.

13       Quickly, Your Honor, I'd like to run through, just before

14   we get to procedural invalidity, perhaps arbitrary and

15   capricious.

16       And with respect to that, Your Honor, the agency simply

17   has failed to provide any kind of reasoned decision-making with

18   respect to -- with respect to its choice to adopt these

19   categorical bars.

20       **THE COURT:**  There's no sound.

21       **MR. CROSLIN:**  Forgive me, Your Honor.  I think we've

22   got that worked out again.  Can you hear me?

23       **THE COURT:**  Yeah.

24       **MR. CROSLIN:**  Thank you, Your Honor.

25       Actually, Your Honor, I think we're ready to -- I don't

```
 1   think we need to discuss anything else.  Your Honor, we're done
 2   for today.
 3          THE COURT:  Okay.  Mr. Stewart?
 4          MR. STEWART:  Thank you, Your Honor.
 5       I would just emphasize to the Court, Your Honor, that with
 6   respect to reasoned decision-making, that is a variable bar
 7   under Sacora.  The departments here well explain why they think
 8   that these offenses render somebody categorically unsuitable
 9   for asylum.
10       I'll just briefly note, for felonies, they emphasize the
11   serious social cost of those crimes, where states are
12   recognizing that something is a felony or punishing them with
13   that amount of time.
14       Smuggling is a serious disregard of immigration law.  In
15   many cases, it's already -- it's already a bar.
16       Illegal reentry, a felony that shows recidivism.
17       Gang related --
18          THE COURT:  On the smuggling, how do you square this
19   rule with the carve-out that the statute provides for family
20   members?
21          MR. STEWART:  It goes back to the point, Your Honor,
22   about how the current bar for aggravated felonies are bars that
23   just say:  Look, for this group, definitely no asylum, period,
24   full stop.  It's an open question as to people who are carved
25   out.  It could be a closer call.  It's with the agencies as to
```

```
 1   whether they want to make a categorical carve-out.

 2        And even under the current situation, Your Honor, somebody

 3   who engages in that kind of conduct -- you know, put aside the

 4   rule for a moment -- that can be a negative discretionary

 5   factor weighing against the person.

 6        This rule simply says:  Look, that's categorically so

 7   problematic that we think, similar to the reasoning that

 8   Congress has already said no asylum for similar offenses, we're

 9   going to say no asylum under this rule.

10        So what -- I think the key point, Your Honor, is that when

11   Congress has said:  Hey, these kinds of -- say, smuggling or

12   these kinds of felonies, people are barred from asylum if they

13   have convictions for those, it's not saying:  Look, all the

14   other things that we haven't addressed or things that we've

15   carved out from these, people definitely will always be

16   eligible for asylum for.

17        Instead, what it's saying is:  Look, we're not going to

18   categorically say no, but the departments have authority to

19   adopt additional bars --

20             THE COURT:  Categorically say no.

21        MR. STEWART:  -- and it's up to them.

22             THE COURT:  You can add a categorical --

23        MR. STEWART:  Correct, Your Honor.

24             THE COURT:  -- "no" even to the carve-out that the

25   Congress has made?
```

1          **MR. STEWART:**  That's right, Your Honor.  That's right.

2     And that's consistent with just the nature of asylum.

3     Again, it's discretionary.  No one is ever entitled to it.  And

4     Congress has been very clear that, like -- when it's limited

5     the discretion, it's only limited the discretion to grant it.

6     It says:  Look, these groups, you can't grant it to folks who

7     fall in these -- in these categories, and also you can add

8     other categories of automatic denials.

9          **THE COURT:**  Where does it say that?

10          **MR. STEWART:**  When these other --

11          **THE COURT:**  Where does it say that?

12          **MR. STEWART:**  That's -- I mean, that's the logic of

13     Section 1158(b)(2)(A) combined with Section 1158(b)(2)(C),

14     Your Honor.

15          **THE COURT:**  Okay.  So --

16          **MR. STEWART:**  And I'd also add (b)(1)(A) in there,

17     Your Honor.

18     I can walk through the view of the statute pretty

19     concisely, if that would be useful, Your Honor.

20          **THE COURT:**  Well, I have it right before me.  That's

21     okay.

22          **MR. STEWART:**  So, I mean, I think the key point is,

23     look, in (b)(1)(A), the Congress says:  Look, generally, the

24     secretary or the Attorney General may grant asylum.  He or she

25     has discretion.

1      And (b)(2)(A) says:  Hey, that discretion does not apply

2  to these categories of persons, various people with crimes, all

3  that kind of thing.

4      And then in (b)(2)(C) Congress says:  Hey, on top of

5  those, you can also -- the Attorney General can, by regulation,

6  also establish other limitations or conditions.

7      So that's the logic, Your Honor.  It's just, you know,

8  generally, asylum, you know, can be granted, but not for

9  certain categories.  And, oh, yeah, there are also other

10  categories that can be adopted for whom it can't be granted.

11      And that's all the departments have done here, and that's

12  consistent with Section 1158.

13      Just last couple of observations on arbitrary and

14  capricious, reasoned decision-making, Your Honor.  I'd say,

15  look, drunk driving, the departments identified the extreme

16  dangerousness, the concerns for just hapless, innocent

17  bystanders.  Fraudulent documents, public benefit frauds are a

18  significant affront to government integrity.

19      The bottom-line point -- we've called attention to these

20  in our briefing, Your Honor -- is that these are -- these are

21  the kinds of points of reasoning that readily establish

22  arbitrary and capricious review.  Not everyone, obviously,

23  would agree with the decisions, but that's certainly not the

24  standard.

25      The agency said:  Hey, look, this is our reasoning.  This

1   is our aim.  This is how we view the asylum statute.  And we

2   think that these are really, really crimes that render somebody

3   unsuitable for asylum.  Asylum has huge benefits.  We don't

4   want these benefits going to folks who just disregard the laws

5   in this way, the values that underlie those laws, and just

6   improperly encourage this kind of behavior.

7       So with that claim, Your Honor, the arbitrary and

8   capricious claim falls.

9       I think since my friend, I think, had addressed only

10  arbitrary and capricious, I think I can stop there and be just

11  responsive.

12      **THE COURT:**  Mr. Croslin, did you want to say anything

13  else?  Were you going to tell me about procedural problems or

14  not?

15      I can't hear you.

16      Well, I'm just pleased to know that it was not only I who

17  had electronic problems today.  I had a hard time signing onto

18  this, and it looks like the gremlin has crept over to some of

19  your lines there.  So I apologize if I spread that virus.

20      But I think I do have a complete record from you folks,

21  and I appreciate having heard from you today.

22      And under these circumstances, I think we'll submit the

23  matter, and you will hear from me shortly and, in any event,

24  before the 20th of November.

25      Thank you very much.

1          MR. STEWART:  Thank you, Your Honor.  Have a good

2    night.

3          THE CLERK:  Court is now adjourned.

4               (Proceedings adjourned at 2:57 p.m.)

5                         ---o0o---

6

7                    <u>CERTIFICATE OF REPORTER</u>

8          I certify that the foregoing is a correct transcript

9    from the record of proceedings in the above-entitled matter.

10

11   DATE:  Friday, December 4, 2020

12

13

14   _____

15      Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG
             Official Reporter, U.S. District Court

16

17

18

19

20

21

22

23

24

25