JEFFREY BOSSERT CLARK
*Acting Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
CHRISTINA GREER
*Senior Litigation Counsel*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-598-8770
Email: Christina.P.Greer@usdoj.gov
PATRICK GLEN
*Senior Litigation Counsel*
CRAIG NEWELL
*Trial Attorney*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pangea Legal Services, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Dept. of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No. 3:20-cv-7721 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS TO RELATE CASES**

**INTRODUCTION**

Defendants submit this response in opposition to two sets of plaintiffs' motions to relate cases to the present action. The first was filed by the plaintiffs (the "*Pangea II* plaintiffs") in the present action and is captioned *Pangea Legal Services v. U.S. Department of Homeland Security*, No. 3:20-cv-9253. The other was filed by an entirely different set of organizations: Immigration Equality, Oasis Legal Services, The Translatin@ Coalition, Black LGBTQIA+ Migrant Project, and Transgender Law Center (the "*Immigration Equality* plaintiffs"). That case is captioned *Immigration Equality v. U.S. Department of Homeland Security*, No. 3:20-cv-9258. The motions should be denied. Those cases and this case involve in large part different parties, different claims, different events, and challenges to completely different rules. The cases are not related. The Court should reject Plaintiffs' attempt to misuse the related-case mechanism.

Local Rule 3-12 provides that an "action is related to another" when "(1) the actions concern substantially the same parties, property, transaction or event, and (2) it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a). "The fundamental rationale for the general rule requiring random assignment of cases is to ensure greater public confidence in the integrity of the judicial process. The rule guarantees fair and equal distribution of cases to all judges, avoids public perception or appearance of favoritism in assignments, and reduces opportunities for judge-shopping." *Tripp v. Executive Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000) (discussing D.D.C. Rule 40.3).

Neither of the criteria for related actions under Local Rule 3-12 is satisfied here. *First*, those cases do not concern substantially the same parties, property, transaction, or event as the present action. They involve a challenge under the Administrative Procedure Act ("APA") to a final rule, "Procedure for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review," 85 Fed. Reg. 80,274 (Dec. 11, 2020), which makes changes to the credible fear process and to immigration judges' procedures for reviewing negative credible fear determinations; defines ambiguous terms in the asylum statute that are also relevant to withholding of removal claims including "persecution," "particular social group," and "political opinion;"

clarifies the requirements for protection under the regulations implementing the United Nations Convention Against Torture ("CAT"); sets forth discretionary factors that adjudicators must consider when adjudicating asylum claims; and makes other changes related to the asylum and protection process. The present action does not challenge that new rule or have anything to do with the new rule. Rather, it challenges an entirely different and narrower rule, "Procedures for Asylum and Bars to Asylum Eligibility," 85 Fed. Reg. 67,202 (Oct. 21, 2020), which renders ineligible for asylum aliens who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States." 85 Fed. Reg. at 67,242-43, 67,249, 67,252.

The issues are also distinct. Plaintiffs in this action allege that this rule violates the APA because it: (1) is inconsistent with 8 U.S.C. § 1158(b)(2)(A) (the part of the asylum statute that erects several categorical bars to asylum eligibility) and with 8 U.S.C. § 1158(b)(2)(C) (which authorizes the Departments to adopt more bars that are "consistent with" the asylum statute), (2) is unconstitutionally vague in some parts, (3) is arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A), and (4) is procedurally deficient because it was adopted without sufficient opportunity for public comment, does not analyze its impacts on federalism as required by Executive Order No. 13132, and does not comply with the Regulatory Flexibility Act (RFA). *See* Compl. ¶¶ 122-71. The issues raised in the new suits are different.

Any commonality in the general nature of the claims in the cases is superficial because the two cases involve two completely different rules enacted under different authorities that must be assessed on their own merits. The new rule governs the procedures by which the government reviews claims of credible fear and adjudicates applications for asylum, withholding of removal, and CAT protection for all aliens, while the prior rule involves only substantive bars to asylum eligibility for certain criminal aliens, without implicating withholding or CAT at all. The aliens with a direct interest in the new rule are also broader than those affected by the rule challenged here: the rule in the present action applies to those who have committed certain crimes and so are barred from a grant of asylum, yet the new rule applies not only to criminals, but to all claims of credible fear, asylum, withholding, and CAT determinations. To the extent the records and the

agency reasoning are being challenged, those challenges are entirely different and each rule involves a distinct administrative record. So the two cases involve meaningfully different legal challenges and entirely different record-based challenges. Indeed, the *Pangea II* plaintiffs themselves recognize as much when they assert that the two cases "raise *some* of the same issues," ECF 84 at 1 (emphasis added). We submit there are no identical issues. That some of the claims may be similar in a very generalized sense—involving, for instance, an Appointments Clause challenge—does not render the cases "closely related," as those types of generalized claims can be brought, and indeed have been brought, in disparate actions involving entirely distinct nuclei of operative fact.

Both sets of plaintiffs suggest that the cases are "closely related" based on a description of the challenges at a high level of generality, notwithstanding that the source of statutory authority and administrative record is distinct for each rule. The *Immigration Equality* plaintiffs find similarity in broad strokes: "both cases involve recent changes made to the same sections of Defendants' regulations … which govern the procedures for asylum and bars to asylum eligibility" and "both cases assert that Defendants' asylum rules are arbitrary and capricious under the Administrative Procedure Act." ECF 85 at 2. Asylum is a broad area of the law, and these general statements do not make out relatedness. Meanwhile, the *Pangea II* plaintiffs recognize that they challenge a "different rule … that similarly restricts the availability of asylum." ECF 84 at 2. That concession should be the end of the relatedness inquiry. Plaintiffs argue for relation because one of the discretionary factors that they allege is a "*de facto* bar" attempts to "achieve the same outcome" as the bars in this suit. ECF 84 at 3. This is simply a way of asserting that any rule that plaintiffs allege narrow one of the many aspects of asylum substantive rules and procedure is related, which is obviously not the case. This Court should reject such a boundless approach to deeming cases "related." Thousands of cases could be said to involve challenges directed at Executive action regarding asylum, withholding, and CAT regulations. Both the *Pangea II* and *Immigration Equality* plaintiffs' theories of relatedness would create an end-run around the random assignment of cases in this or any other jurisdiction and render a nullity general rules governing jurisdiction and venue. Were it otherwise, any case involving claims raised by aliens

seeking asylum would be related. For example, a large portion of the petitions to review removal decisions involve these issues surrounding asylum, but they are not assigned to the same appellate panel. And the possibility that both cases involve organizations purporting to speak on behalf of migrants does not mean the cases involve substantially similar property, transactions, or events. *See Nozolino v. Hartford Life & Acc. Ins. Co.*, No. 12-CV-04314-JST, 2013 WL 2468350, at *1 (N.D. Cal. June 7, 2013) (rejecting claim that cases are related because they involve claims brought under a similar statute and have a similar defendant). If anything, that underscores the reality that even though some of the organizations are the same in these cases, they in fact involve interests of different parties in interest. Indeed, the rule in this action involves a far smaller subset of aliens – aliens who have committed certain serious crimes – than the rule that the parties seek to relate to this case.

Both sets of plaintiffs also err in suggesting that the two cases concern substantially the same parties. The *Immigration Equality* plaintiffs are entirely different organizations than the ones that brought this action. *See* ECF 85 at 1. They argue that they are "similarly situated" to the plaintiffs here, but the test is whether the parties are "substantially the same" under Local Rule 3-12, not whether organizational plaintiffs are "similarly situated." *Id.* Therefore, their motion to relate should fail on that ground alone. And the *Immigration Equality* plaintiffs are "nonprofit organizations who serve LGBTQ/H immigrants," Compl. at 1, *Immigration Equality*, No. 4:20-cv-9258, while the plaintiffs here are organizations that serve migrants more generally, Compl. at 6-7. To be sure, *Pangea II* involves similar plaintiffs. But as just explained, their assertions of standing to assert injuries based on their serving the true parties in interest only underscores the reality that different sets of individuals are impacted by the different rules. Thus, the true parties in interest in both cases are different.

As to Defendants, the *Immigration Equality* plaintiffs argue that "the majority … in each case are the same" because "seven of the nine defendants" named in their complaint are "seven of the eleven defendants" in this case. *Id.* That means that there are *six* defendants that do not overlap between the two cases out of thirteen total defendants. In any event, the Department of Justice, the Department of Homeland Security, or their components are defendants in nearly every

immigration case, and their presence obviously does not warrant circumventing the normal, random assignment of cases that applies in this District. To hold otherwise would require every immigration case to be venued in this District and assigned to this Court, which is contrary to the letter and purpose of the local rules. *See* L.R. 3-3(a); *see also* General Order No. 44, A.2.

*Second*, the *Immigration Equality* plaintiffs allege that there will be an "unduly burdensome duplication of labor" because "[t]his Court already heard argument and ruled on the immediate injunctive relief sought" in this action and "there is likely to be substantial overlap between the issues considered there," ECF 85 at 2, while the *Pangea II* plaintiffs argue that "both cases require the Court to understand the mission and operations of the same plaintiffs as evidenced through plaintiffs' declarations" and "analyze the underlying statutory scheme and its purpose." ECF 84 at 2. Again, as noted, the cases involve different policies enacted under different authorities and are challenges based on different statutory provisions, will entail review of different administrative records, and involve factual allegations that are unique to each case. That the rules both touch on the general subject of asylum does not render the cases related, as a court must always learn the general subject matter for a particular type of case. That does not render all cases on that subject "related." The fact that both cases involve APA claims generally or that some aspect of the government is a defendant does not mean litigating the cases separately will be an unduly burdensome duplication of labor. Indeed, the opposite is true: the administrative record in this case will be irrelevant to review in that case, as each APA case must be reviewed on its own administrative record. And that the same *Pangea II* organizations have filed suit and thus have provided similar declarations as to harm does not mean that this Court should always consider cases that they bring because it has examined their harm claims in a separate case. Indeed, standing must be examined independently for each claim, and if their assertions of standing are based on such attenuated harms as to be identical no matter what the substance of the new rule is, that should call into question the propriety of their suit in the first place. Thus, the legal issues and factual background of both cases are different, and suggesting otherwise prejudges the new case on the merits in a manner suggestive of forum shopping.

For these reasons, the government respectfully submits that these cases are not related and that Plaintiffs' motions should be denied.

                              Respectfully submitted,

                              JEFFREY BOSSERT CLARK
                              Acting Assistant Attorney General

                              WILLIAM C. PEACHEY
                              Director

                              EREZ REUVENI
                              Assistant Director

                              */s/ Christina Greer*
                              CHRISTINA GREER
                              Senior Litigation Counsel
                              Office of Immigration Litigation
                              U.S. Department of Justice, Civil Division
                              P.O. Box 868, Ben Franklin Station
                              Washington, DC 20044
                              Tel: 202-598-8770
                              Email: Christina.P.Greer@usdoj.gov

                              PATRICK GLEN
                              Senior Litigation Counsel

                              CRAIG NEWELL
                              Trial Attorney

Dated: December 22, 2020             *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: *<u>/s/ Christina Greer</u>*
CHRISTINA GREER
Senior Litigation Counsel
United States Department of Justice
Civil Division