JEFFREY BOSSERT CLARK
*Acting Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
PATRICK GLEN
CHRISTINA GREER
*Senior Litigation Counsel*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8770
Email: Christina.P.Greer@usdoj.gov
CRAIG NEWELL
*Trial Attorney*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pangea Legal Services, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:20-cv-7721 |
| U.S. Dept. of Homeland Security, *et al.*, | |
| Defendants. | |

**DEFENDANTS' OPPOSED EMERGENCY MOTION**
**TO STAY ORDER PENDING APPEAL**

# INTRODUCTION

Defendants hereby move the Court to stay pending appeal this Court's preliminary injunction barring enforcement of the Departments of Justice's and Homeland Security's rule, *Procedures for Asylum and Bars to Asylum Eligibility*, 85 Fed. Reg. 67202 (Oct. 21, 2020). Defendants also request that the Court enter an order staying its preliminary injunction during the interim period while the Court considers this motion. If upon reviewing this motion the Court does not believe that Defendants have met the requirements for a stay, Defendants request that the Court summarily deny the motion without awaiting a response from Plaintiffs. The government respectfully asks that the Court rule on the motion no later than January 7, 2021, so that the government is able to pursue other relief. Defendants have notified Plaintiffs, and Plaintiffs oppose the stays requested in this motion.

As explained below, the Court should stay its preliminary-injunction order. The balance of harms weighs strongly in favor of a stay and, respectfully, Defendants are likely to prevail on the merits in their appeal. This injunction undermines the Executive's lawful authority to enact new regulations after notice and comment to ensure that asylum is not granted to criminal aliens who endanger our country. And the injunction immediately harms the public by thwarting this Rule, issued in accordance with the Departments' broad and express statutory authority over asylum. The injunction also undermines the Executive Branch's efforts to ensure that those who receive a discretionary benefit have comported themselves with the criminal laws of the United States and incentivize law-following among those seeking a benefit that is in the government's discretion to provide. Defendants acted well within their statutory and constitutional authorities in adopting the Rule, and the Court's injunction irreparably harms the government and jeopardizes important national interests. The organizational Plaintiffs, by contrast, have identified only speculative harms to their abstract missions and to their administrative interests that they claim they would suffer from implementation of the rule.

# STANDARD OF REVIEW

In deciding a motion to stay an order pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## ARGUMENT

### I. The Balance of Harms Weighs Strongly in Favor of a Stay

The serious and irreparable harms to the government and the public from this Court's injunction outweigh any harm that Plaintiffs might suffer if the injunction is stayed. The Supreme Court reached a similar conclusion when it stayed in full the injunctions issued by district courts in *Department of Homeland Security v. New York*, 140 S. Ct. 599 (2020); *East Bay Sanctuary Covenant v. Barr*, 140 S. Ct. 3 (2019); *Trump v. Hawaii*, No. 17A550, 2017 WL 5987406 (U.S. Dec. 4, 2017); and *Trump v. International Refugee Assistance Project (IRAP)*, No. 17A560, 2017 WL 5987435 (U.S. Dec. 4, 2017). The Supreme Court necessarily determined that the government's interests outweighed the plaintiffs' interests in those cases. *See Nken*, 556 U.S. at 434. The government's interests here—in the implementation of a rule seeking to ensure lawful behavior on which it has worked for a year and issued under its lawful authority following consideration of comments—are similarly weighty.

#### A. The Preliminary Injunction Irreparably Harms the Government and the Public

This Court's injunction undermines the Executive Branch's statutory authority to create additional limitations on asylum in order to promote the interests of the American people in ensuring safety and encouraging lawfulness. The Executive Branch's protection of these interests warrants the utmost deference, particularly where, as here, rules "concerning the admissibility of aliens" "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Thus, a stay pending appeal is appropriate where an injunction "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers); *see Heckler v. Lopez*, 463 U.S. 1328, 1330 (1983) (Rehnquist, J., in chambers); *see also Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978) (per curiam). Moreover, the harm to the government is irreparable

because while the lawful rule is blocked a number of aliens will receive the benefit of asylum, which the government will not be able to rescind as a practical matter. The Ninth Circuit has held that when a status "might be irrevocably granted to some aliens" because of an injunction, that injunction causes the government "irreparable harm." *City & Cty. of San Francisco*, 944 F.3d 773, 806 (9th Cir. 2019). That is the case here. Neither the Executive Office for Immigration Review ("EOIR") nor U.S. Citizenship and Immigration Services ("USCIS") have the practical means to track and reconsider prior grants of asylum under the injunction, may not be able to do so, and would expend resources attempting to review prior erroneous grants and apply the rule. *See* Ex. A, Decl. of Jill W. Anderson, General Counsel for the Executive Office for Immigration Review, ¶¶ 8-21 (describing the effect of the injunction on EOIR's adjudications); Ex. B, Decl. of Andrew Davidson, ¶¶ 4-12 (describing the effect of the injunction on USCIS's adjudications). And USCIS would have "no legal basis to pursue termination of asylum for applicants who would have been barred by the final rule, but are otherwise deemed eligible at the time of adjudication." Ex. B ¶ 5. EOIR similarly would have no "existing mechanisms to re-examine or reconsider those applications absent an affirmative motion to reopen and terminate asylum filed by" the Department of Homeland Security. Ex A ¶ 17.

The Court's order enjoining enforcement of the Rule imposes irreparable harm on the government and the public. The United States "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see, e.g.*, *O Centro Espirita Beneficente Uniao de Vegetal v. Ashcroft*, 314 F.3d 463, 467 (10th Cir. 2002). This Court's injunction imposes a similar irreparable injury on the Executive Branch and the public given that the rule rests on the discretion-laden judgments Congress conferred upon two Cabinet members in requiring that the discretionary benefit of asylum only be given to those who have shown respect for this Nation's criminal laws. The Rule explains its rationale and provides a robust evidentiary basis for its conclusions. Policy disagreements with the Executive's considered judgments on what crimes constitute dangers to the safety and best interests of our country are no basis to second-guess the conclusions of the agency heads.

The Departments issued the Rule based on their determination that "[a]warding the discretionary benefit of asylum to individuals" subject to the Rule's new criminal bars "would encourage lawless behavior, subject the United States to certain dangers, and otherwise undermine the policies underlying the statutory framework for asylum." 85 Fed. Reg. at 67,225; *see also* 85 Fed. Reg. at 67,222. Thus, the overarching goals of the Rule are to "narrow[] asylum eligibility" by barring those who "have engaged in certain criminal conduct that the Departments have determined constitutes a disregard for the societal values of the United States" and "clarif[y] the effect of criminal convictions on asylum eligibility." 85 Fed. Reg. at 67,242-43, 67,249, 67,252. The Executive Branch is entitled to use the legal tools that Congress gave them to effect policies that it judges to be in the United States' best interests. The Rule explains the Departments' determination that it is not in the best interests of the United States to grant the discretionary benefit of asylum to aliens who have committed the crimes or engaged in the conduct covered by the Rule. 85 Fed. Reg. at 67,225. As Defendants have explained, TRO Opp. 14-17, the Rule explains why it took the actions that it did to further these interests. That determination is sound and the Court had no basis to reject it. The problems created by the injunction are all the greater given this Court's extension of its order not only to the organizations before the Court, or even to aliens with whom these organizations have an attorney-client relationship, but also to *all aliens*, an action that is beyond this Court's Article III jurisdiction. Op. 45-46.

It is always in the public interest to protect the country's borders and enforce its immigration laws. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Executive Branch has issued a Rule after notice and comment to ensure that dangerous criminal aliens do not receive asylum. 85 Fed. Reg. at 67,225; 67,242-43, 67,249, 67,252. Preventing such criminals from endangering our national community is "an urgent objective of the highest order." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2088 (2017). And an injunction allowing such criminal aliens to nevertheless circumvent the considered judgment of the Executive Branch that they are a danger to our polity and procure legal "status" irreparably harms the government and the public. *City & Cty. of San Francisco*, 944 F.3d at 806. Thus, the United States suffers a separation-of-powers harm in the Court's blocking of the Executive Branch's lawful action, on top

of the harms to the Nation and the public described above and in Defendants' prior briefing.

### B. A Brief Stay Pending Expedited Appeal Would Not Substantially Harm Plaintiffs

As the government argued in its opposition brief, Plaintiffs themselves have not shown that they face irreparable harm on their own account that is tied to the rule, and cognizable under the INA, because expending resources does not constitute irreparable harm. Indeed, they have not even identified an actual client who would in fact be affected by the rule, raising serious questions regarding their standing to pursue this case. Nor can they rely on financial concern. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough.").

Plaintiffs failed to establish irreparable harm sufficient to warrant an injunction, let alone a universal injunction. The balance of harms supports a stay of this Court's injunction pending appeal.

## II.     The Government is Likely to Prevail on the Merits

The government respectfully submits that, notwithstanding this Court's order, the government is likely to succeed on the merits of its appeal.

### A.     APA Claims

This Court held that the Rule is inconsistent with 8 U.S.C. § 1158(b)(2)(C) and § 1158(b)(2)(B)(ii). In the Court's view, reading section 1158(b)(2)(C), which authorizes the Departments to adopt "additional limitations and conditions" on asylum eligibility," to allow the Departments to adopt crime-based bars would render section 1158(b)(2)(B)(ii) "entirely superfluous." Op. 20. That is incorrect. Section 1158(b)(2)(A) does not provide that asylum is definitely available for criminals who do not fall within one of that provision's bars, including a specific designation of a particularly serious crime under section 1158(b)(2)(A)(ii). Rather, section 1158(b)(2)(A) bars from asylum eligibility categories of aliens who Congress thought *clearly* "not to be deserving of international protection," *East Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 846 (9th Cir. 2020), because they may pose a threat to "the safety of those already in the United States," *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1275-76 (9th Cir. 2020). Under 8 U.S.C. § 1158(b)(2)(C), Congress left it to the Executive Branch, however, to decide whether

*other* conduct should render someone categorically ineligible for asylum. Put differently, Congress generally made asylum a matter of Executive discretion—except that in section 1158(b)(2)(A) it *eliminated* the discretion to *grant* asylum for (among others) certain categories of criminals who *obviously* do not merit it. Congress then expressly authorized the Executive Branch to issue bars to cover additional categories of such aliens. 8 U.S.C. § 1158(b)(2)(C). But section 1158(b)(2)(C) nowhere says that new eligibility bars are reserved only for a particular level of crime or must parrot the level of seriousness that Plaintiffs attribute to those statutorily listed grounds. *Cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2411-12 (2018) (concluding that the INA's express provisions on the entry of aliens "did not implicitly foreclose the Executive from imposing tighter restrictions"— even when the Executive's restrictions addressed a subject that is "similar" to one that Congress "already touch[ed] on in the INA"). Section 1158(b)(2)(A)'s bars do not foreclose the Executive from imposing more eligibility bars based on criminal convictions and activity, even if those bars address subjects that are similar to those that Congress already touched on in the asylum statute.

As the government has explained, the rule is consistent with statute. TRO Opp. 6-13. It bars asylum eligibility for aliens who have engaged in conduct that, the agencies determined, categorically undermines any claim they should have to asylum—a significant benefit that can provide a pathway to U.S. citizenship and benefits to an asylee's family members. Section 1158(b)(2) allows the Departments to adopt additional asylum bars for aliens "considered not to be deserving of international protection," *East Bay*, 964 F.3d at 846—including those who may pose a danger to "the safety of those already in the United States." *East Bay*, 950 F.3d at 1275-76. The Rule is also consistent with background principles governing the agency's ultimate exercise of discretion. "The ultimate consideration when balancing factors in the exercise of discretion is to determine whether a grant of relief ... appears to be in the best interest of the United States." *Matter of D-A-C-*, 27 I&N Dec. 575, 578 (BIA 2019) (citations omitted). The Departments determined that the commission of certain crimes, or the likelihood that an applicant has committed such an offense based on relevant evidence, renders a grant of relief not to be in the "best interest[s] of the United States." *Id.* Nothing in section 1158 forecloses that view, and securing the best interests of the country is a reasonable policy goal under section 1158. Although the rule does

adopt a categorical bar, that too is consistent with the asylum statute and precedent. The statute itself provides for new eligibility requirements promulgated "by regulation." 8 U.S.C. § 1158(b)(2)(C). And even without that provision, if the Attorney General and the Secretary may take account of criminal activity in individual cases, administrative-law principles dictate that they may do so categorically too. *See Lopez v. Davis*, 531 U.S. 230, 243-44 (2001). The Rule is consistent with all of these principles.

Respectfully, the Court erred in finding the Rule arbitrary and capricious. Op. 25-30. When changing course, the agency need not explain why the new course is better; "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Here, the Departments explained their reasoning. The Court incorrectly determined that the Departments failed to provide an adequate explanation for the Rule and that they failed to adequately address comments on the rule. Second, the Departments provided multiple explanations for the Rule. 84 Fed. Reg. at 69,647; 85 Fed. Reg. at 67,225, 67,242-43, 67,249, 67,252. The Court improperly focused on one of those justifications—efficiency—and determined that because other aspects of the Rule may require more factual analysis, the reasoning "rings hollow." Op. 25-26. The Court's holding is based on its own efficiency judgments, but the Departments are in the best position to know as the adjudicators of such claims. And the Court's reasoning ignores the current state of the law. For example, Board precedent already requires inquiry into the basis of vacating a conviction to determine whether it remains valid for immigration purposes, *Matter of Thomas and Thompson*, 27 I. & N. Dec. 674 (A.G. 2019), and, adjudicators already engage in the kinds of analyses the Rule prescribes for gang and domestic violence offenses and thus those bars do not undermine the goal of efficiency. 85 Fed. Reg. at 67,245, 67,225-26, 67,231. It also improperly supplanted the Departments' determinations with its own when concluding that the Rule does not "protect this country from those who would disregard the law and hurt our communities" because the Rule covers conduct the Court views as minor and because the Rule would render ineligible for asylum those who "have rehabilitated themselves" and those whose "criminal conduct occurred many

years earlier." Op. at 27. "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Departments considered these assertions, 85 Fed. Reg. at 67,247, but concluded that streamlining adjudications was preferable, 85 Fed. Reg. at 67,248.

The Court also misapprehended withholding of removal when it determined that the Departments' acknowledgment of withholding is "directly at odds with the subsequent rationale" for barring such aliens from asylum. Op. 28. It does not provide a path to permanent status or to citizenship like asylum does, but merely prevents removal to a specific country where the alien will be persecuted. *See* 8 U.S.C. § 1159(b), § 1427, § 1231(b)(3)(1). The alien may still be removed to a third country, 8 C.F.R. § 1208.16(f), and the grant of withholding may be terminated and the removal order executed if there has been a fundamental change in circumstances such that the alien's life or freedom is no longer threatened, 8 C.F.R. § 1208.24(b), (f). This does not undermine the Departments' determination that certain criminal aliens should not be provided the substantially more significant benefit of discretionary asylum. 85 Fed. Reg. at 67,225; *see also id.* at 67,222. *See, e.g.*, AR.7731-74, 7912-75, 7992-97, 8032-34. And the Court erred in so concluding.

Second, the Court erred in ruling that the agencies did not respond to comments (Op. 28-30) that the agency was improperly relying on section 1158(b)(2)(C) instead of section 1158(b)(2)(A)(ii) as authority for promulgating new eligibility bars premised on criminality. Commenters commented on that issue, *see* 85 Fed. Reg. at 67,207-08, and the Rule explained that although the NPRM invoked both provisions as providing authority for the Rule, the final rule was only relying on section 1158(b)(2)(C) because the "the regulatory text itself does not designate any offense ... as specific particularly serious crimes. *Id.* at 67,207. The Rule also responded to comments that "Congress intended for the only criminal bars to asylum to be those contemplated by the particularly serious crime and serious nonpolitical crime bars," *id.*, concluding that nothing in the INA "suggests that Congress intended for the particularly serious crime bar at section 208(b)(2)(A)(ii) of the Act (8 U.S.C. 1158(b)(2)(A)(ii)) or the serious nonpolitical crime bar at

section 208(b)(2)(A)(iii) of the Act (8 U.S.C. 1158(b)(2)(A)(iii)) to be the sole bars to asylum based on criminal activity." *Id.* at 67,208.

Moreover, the Court's holding on the length of time to comment holds the agency to a higher standard than is required by law. Nothing requires more than 30 days for comments under the APA. *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1484 (9th Cir. 1992). The time for comment is left to an agency's reasonable discretion. *See, e.g.*, *Vt. Yankee Nucl. Power Corp. v. NRDC*, 435 U.S. 519, 543 (1978). And it is clear that the 30-day period provided here gave the public sufficient opportunity to comment, given that 581 comments were received. *See* 85 Fed. Reg. at 67204. Even were something more necessary, a failure to afford adequate opportunity for comment is harmless "where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1220 (9th Cir. 2004). Here, 581 commenters, including 3 out of 4 plaintiffs, commented extensively on the Rule, so there can be no serious suggestion of prejudice.

Finally, the Court's injunction imposes particularly sweeping harm because it defies the rule that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Immigration cases are not per se exceptions to this rule, and Plaintiffs' "being inundated with asylum requests from individuals seeking to take advantage of the pre-Rule criteria," Op. 45, is not a cognizable injury—if that were the case, a plaintiff would have standing to challenge any rule that *improved* their business prospects. Needless to say, Article III does not countenance that type of "injury," and it cannot provide the basis for a universal injunction.

## CONCLUSION

For the reasons stated above, the Court should stay the preliminary injunction pending resolution of the government's forthcoming appeal.

//
//
//
//

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 3 | JEFFREY BOSSERT CLARK<br>Acting Assistant Attorney General |
| 5 | WILLIAM C. PEACHEY<br>Director |
| 7 | EREZ REUVENI<br>Assistant Director |
| 8 | */s/ Christina P. Greer* |
| 9 | CHRISTINA P. GREER<br>Office of Immigration Litigation |
| 10 | U.S. Department of Justice, Civil Division<br>P.O. Box 868, Ben Franklin Station |
| 11 | Washington, DC 20044 |
| 12 | Tel: (202) 598-8770<br>Email: Christina.P.Greer@usdoj.gov |
| 14 | PATRICK GLEN<br>CHRISTINA GREER |
| 15 | Senior Litigation Counsel |
| 16 | CRAIG NEWELL<br>Trial Attorney |
| 18 | Dated: December 23, 2020   *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Christina P. Greer*
CHRISTINA P. GREER
Senior Litigation Counsel
United States Department of Justice
Civil Division