UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Francisco)

| | |
|---|---|
| PANGEA LEGAL SERVICES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants* | Case No. 3:20-cv-7721 |

**DECLARATION OF JILL W. ANDERSON,**
**GENERAL COUNSEL, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

I, JILL W. ANDERSON, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. I serve as the General Counsel for the Executive Office for Immigration Review ("EOIR"). In this capacity I manage the Office of General Counsel ("OGC") and provide legal counsel to the Agency on matters pertaining to the Immigration and Nationality Act and other laws and procedures as they relate to EOIR, among other duties. I have served in this position since December 2019.

2. Prior to December 2019, I served as Acting General Counsel beginning in June 2019. From September 2017 to June 2019, I served as Deputy General Counsel. My prior positions in EOIR were Supervisory Attorney for the Board of Immigration Appeals ("BIA") from May 2011 to September 2017, and Attorney Advisor for the BIA from December 2006 to May 2011.

3. I make this Declaration based on my own personal knowledge, on information contained in the records of EOIR, or information provided to me by EOIR employees.

4. On December 19, 2019, the Department of Justice ("DOJ") and the Department of Homeland Security ("DHS") (jointly "the Departments") published a Notice of Proposed Rulemaking (NPRM) notifying the public of their intention "to amend their respective

regulations to bar asylum eligibility," "clarify the effect of criminal convictions," and "remove their respective regulations governing the automatic reconsideration of discretionary denials of asylum applications." *Procedures for Asylum and Bars to Asylum Eligibility*, 84 Fed. Reg. 69,640 (Dec. 19, 2019) (proposing to amend 8 C.F.R. §§ 208.13 and 1208.13 and 8 C.F.R. §§ 208.16 and 1208.16").

5. On October 20, 2020, the Departments issued the final version of the rule that was scheduled to take effect November 20, 2020. 85 Fed. Reg. at 67,202. This litigation followed, which sought immediate injunctive relief in the form of a Temporary Restraining Order.

6. On November 19, 2020, the U.S. District Court for the Northern District of California issued an order granting Plaintiff's motion for temporary restraining order, preventing the rule from taking effect. Presently, EOIR is enjoined nationwide from implementing or applying the rule.

7. At Government's request, the Court converted the TRO into a preliminary injunction (in lieu of additional briefing), which will remain in effect pending the final disposition of this action. This injunction will result in uncertainty and administrative burdens on EOIR.

**Time and Resources Required If Preliminary Injunction Is Not Stayed And Defendants Ultimately Prevail On Appeal**

8. There are two types of asylum processes – defensive and affirmative. The defensive asylum process applies to aliens who appear before EOIR and who request asylum before an Immigration Judge ("IJ"). The affirmative asylum process applies to aliens who initially file an asylum application with USCIS and, subsequently, have that application referred by USCIS to EOIR. See https://www.justice.gov/eoir/file/1198896/download.

9. IJ's within DOJ adjudicate defensive asylum applications filed during removal proceedings and affirmative asylum applications referred to the immigration courts by USCIS within DHS. INA 101(b)(4) (8 U.S.C. 1101(b)(4)); 8 CFR 1003.10(b), 1208.2.

10. In 2019, a total of 213,798 asylum applications were lodged with EOIR, which included both affirmative asylum applications referred to EOIR by USCIS and defensive applications filed with the immigration court. See https://www.justice.gov/eoir/page/file/1106366/download.

11. The total number of applications EOIR received in 2020 dropped slightly to 189,303. See

https://www.justice.gov/eoir/page/file/1106366/download.

12. In 2020, IJ's granted 14,507 asylum applications, which resulted in a 19.12% grant rate. IJ's also denied 41,386 asylum applications—a 54.55% denial rate. See https://www.justice.gov/eoir/page/file/1248491/download. At the end of 2020, EOIR will have approximately 589,276 asylum applications pending. See https://www.justice.gov/eoir/page/file/1106366/download.

13. EOIR presently has a backlog of over one million cases. See https://www.justice.gov/eoir/page/file/1242166/download.

14. EOIR anticipates that one of the effects of the final rule would be an increase in the number of denials for asylum. However, as a consequence of the injunction, EOIR is prohibited from applying the new rule to deny asylum based on additional criminal bars.

15. As such, EOIR believes it will grant asylum to some number of those estimated to be subject to the additional criminal bars who, pursuant to the now-enjoined rule, should be denied. Using the number of total asylum applications received in 2019 and 2020 as benchmarks, EOIR anticipates that between 15,755 and 17,816 cases would need to be evaluated for each month that the preliminary injunction is in place.

16. If the Government prevails on appeal, it will be incumbent upon DHS to reexamine and reopen cases where it believes an asylum grant may have been terminated based on the Rule.

17. If the Government prevails on appeal, EOIR currently has no practical means to revisit asylum applications that were adjudicated pursuant to the old rules. EOIR does not track the underlying basis for granting or denying asylum. At most, EOIR might be able to identify a subset of cases where the alien was charged with a ground of removability that correlates to a ground of ineligibility for asylum under the new rule, but only for those cases where such a ground was charged. DHS is not obligated to charge an alien with every ground of removability that an alien may be subject to, which is a matter of prosecutorial discretion, and not every ground of ineligibility for asylum corresponds to a ground of removability. Moreover, because the rule created new grounds for ineligibility for asylum, lines of inquiry into these grounds of ineligibility may never have been explored on account of the injunction. Ultimately, if the injunction remains in effect, more asylum applications will be filed that require adjudication under the old rules. As a result, EOIR will grant asylum to criminal aliens who should be denied under the now enjoined rule, and EOIR will have no practical way through existing mechanisms to re-examine or reconsider those applications absent an affirmative motion to reopen and terminate asylum filed by DHS.

18. If the Government prevails on appeal, and DHS seeks to reopen and terminate asylum for those criminal aliens subject to the new rule, EOIR will have to divert adjudicatory resources to decide these motions, and where the motions are granted, readjudcate the removal proceedings for these criminal aliens anew. Such efforts will not only put considerable strain on EOIR's already overtaxed resources, it will cause further delays in finalizing proceedings for criminal aliens, allowing them to remain in the United States for longer periods of time, it will cause increased delays in hearing cases for other aliens on the docket, causing a ripple effect throughout the entire system. EOIR is already facing significant staffing and workflow disruptions stemming from the global COVID-19 pandemic.

19. EOIR primarily maintains a paper record of proceedings ("ROP") of each individual's proceedings in immigration court. The record may vary in size from a few pages and a small number of digital audio recordings of hearings to multiple volumes containing hundreds of pages and multiple lengthy audio recordings of hearings, depending on the complexity of the issues involved and the documentation presented in conjunction with the case. As such, where the adjudicator conducts an individualized review of the ROP in deciding the motion to reopen and terminate, such review could take between 6 and 24 employee-hours per case, depending on the individual case.  The ROPs are housed at immigration courts across the country during the pendency of the proceedings, and then sent to the Federal Records Center ("FRC") to be archived once the case is completed. Although EOIR recently began rolling out an electronic filing system available for use by attorneys and accredited representatives of individuals in immigration court proceedings, the system is not available for use by pro se individuals.

20. EOIR utilizes an electronic case management system ("CASE") that captures into an electronic database a subset of data from the ROPs. EOIR's CASE database tracks whether an individual was placed in removal proceedings by DHS, and what applications for relief an individual applied for and the outcome of those applications, but it does not track the underlying basis for the decision to grant or deny an application for relief or protection from removal, including an application for asylum, withholding of removal or protection under the Convention Against Torture.  In order to learn the underlying basis for the decision to grant or deny an application, including whether there is evidence that the individual was subject to the new rule, EOIR would have to undertake a manual review of the physical file.

21. In order to track this information, EOIR would have to make significant changes to its database system to create new data fields to specifically capture whether the individual was subject to any bars of ineligibility for the relief sought. There could be any number of

reasons for denying a particular application for relief, including a number of statutory bars to relief and discretionary determinations. The purpose of the database is to capture high-level information that would assist the components in file management and case tracking. It was not intended to record every aspect of the proceeding, including substantive findings made by the adjudicators that involve complex decision-making and turn on innumerable factors presented in a given case. As such, while the system records a subset of information relating to the substantive determination on an application for relief or finding of removability, the system does not capture other independent reasons for granting or denying an application for relief or removability findings. A manual review of each case would still be required. Moreover, making such changes would not only require a significant financial allocation and resource commitment to accomplish, it would require the agency to conduct training for the users in the field to start capturing this information. This information would only be captured prospectively where such information is affirmatively established on the record. If EOIR were to try and capture the information retrospectively, it would have to conduct a manual review of each file and all of the audio recordings for the hearing associated with each case.

Signed this 23rd day of December, 2020

_____

Jill W. Anderson
General Counsel
Executive Office for Immigration Review