UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Francisco)

PANGEA LEGAL SERVICES, *et al.*,

        *Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

        *Defendants*

Case No. 3:20-cv-7721

**DECLARATION OF ANDREW DAVIDSON**

I, Andrew Davidson, declare as follows:

1. I am employed by the United States Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), as the Chief of the Asylum Division within USCIS. I make this declaration based on my personal knowledge, and review of official documents and records maintained by USCIS.

2. On December 19, 2019, the Department of Homeland Security and the Department of Justice (collectively, "the Departments") jointly published a notice of proposed rulemaking ("NPRM") that would amend regulations governing the bars to asylum eligibility. 84 FR 69640. On October 21, 2020, the Departments published the final rule, Procedures for Asylum and Bars to Asylum Eligibility, which was intended to have an effective date of November 20, 2020. 85 FR 67202. Litigation followed with the filing of the current case challenging the new final rule in the Northern District of California.

3. On November 19, 2020, the district court issued an injunction that halted USCIS's efforts to implement the final rule nationwide. Presently USCIS is enjoined nationwide from implementing or applying the final rule. In addition, the effective date of the final rule is enjoined. These injunctions will result in uncertainty and administrative burdens on USCIS.

4. DHS anticipates that one effect of the final rule would be an increase in the number of applicants barred from asylum based on the new criminal bars. *See* 85 FR 67202, 67256. "Because asylum applications may be denied for multiple reasons and because the proposed bars do not have exact analogues in existing immigration law, there is no precise data on how many otherwise grantable asylum applications would be denied using these bars . . . ." 85 FR 67202 FN 46.

5. As a consequence of the injunction, USCIS is prohibited from applying the new final rule. As such, USCIS believes it may grant asylum to some applicants who, pursuant to the now-enjoined final rule, would be ineligible for asylum. There would be no legal basis to pursue termination of asylum for applicants who would have been barred by the final rule, but are otherwise deemed eligible at the time of adjudication, as those grants of asylum were legally sufficient at the time of adjudication. The preliminary injunction is likely to cause irreparable harm absent a stay because, if the final rule is ultimately upheld, some criminal aliens may receive asylum whom the Secretary of Homeland Security and the Attorney General have determined should be categorically ineligible for asylum.

6. As an operational matter there is no technical mechanism to track or flag potentially impacted asylum grantees whose applications were filed on or after November 20, 2020

and who were convicted of or engaged in disqualifying criminal conduct that also occurred on or after November 20, 2020 that might have barred their asylum grant had the final rule not been enjoined.

7. USCIS does not have a mechanism in place that would screen asylum applications potentially impacted by the final rule. As discussed further below in paragraph 12, the injunction was in place before asylum officers received training on the implementation of the new criminal bars in the final rule. This is particularly relevant because a determination that an applicant is barred from receiving asylum status under applicable law is not made until the asylum interview and the adjudication of the asylum application. It is at that time that the asylum officer will consider the totality of the background checks, testimony provided during the interview, and all other relevant and probative evidence, including but not limited to criminal records and court documents. Because the officer corps are applying the existing law in their determinations, there is no reasonable way to identify asylum applications which might otherwise be barred under the new final rule. The time and resources needed to train asylum officers solely for the purpose of identifying applications potentially impacted by the final rule when such information would not be applied to the adjudications present both practical and operational complications and expenditures that outweigh the utility of such training. As such, if the Government prevails on appeal, USCIS currently has no practical means to revisit which asylum applications granted during the injunction period might have been subject to the bar under the final rule had it not been enjoined.

8. In FY2019 USCIS received approximately 96,000 affirmative asylum applications. In FY2020 that number was approximately 94,000. Based on historical data, USCIS projects that for FY2021 it will receive approximately 95,000 affirmative asylum applications.

9. In the first month since the final rule would have been implemented, 117 asylum applicants who filed on or after November 20, 2020, have been scheduled for asylum interviews due to limited interviewing capacity because of the COVID-19 pandemic. Each successive month that the final rule is enjoined will increase the number of cases, and when operations return to normal, USCIS will be able to schedule interviews on a monthly basis at a much greater number than currently reflected.

10. The data provided in the preceding paragraphs is an approximate reflection of the best information available to USCIS at the time the report was run on the data. While case data may change retroactively due to data corrections and quality review, this data provides a snapshot of the volume of cases potentially impacted by the injunction.

11. In sum, USCIS is likely to grant asylum in favor of persons who would be ineligible under the now-enjoined final rule, and USCIS will have no legal or practical way through existing mechanisms to reexamine or reconsider those applications under the now-enjoined final rule in the future.

12. Additionally, USCIS worked on operational planning and implementation of the final rule before it was enjoined. First, USCIS prepared changes to the asylum case management system to track the application of the regulation. The rollout of those changes was not made available in the live version of the asylum case management system due to the injunction. Second, USCIS updated training materials and adjudicative resources. Each asylum office was asked to identify a training point of contact to attend a

train-the-trainer session on November 19, 2020, which took place. USCIS also was prepared to provide training to all asylum staff on the new regulation, but the rollout of this training was halted due to the injunction. Development and delivery of division-wide training takes extensive planning, budgeting, and logistics to set up. An extended injunction will require USCIS to start that process again when the injunction is lifted. Duplicative effort as well as costs in time and the expenditure of additional funds will be necessary to fully prepare USCIS's personnel to implement the new final rule.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____ , 2020 at Washington, D.C.

_____
Andrew Davidson
Chief of the Asylum Division
U.S. Citizenship and Immigration Services
Washington, D.C.